1  JEFFER, MANGELS, BUTLER & MITCHELL LLP
   MARTA FERNANDEZ (Bar No. 120540)
2  TRAVIS GEMOETS (Bar No. 174365)
   BARBRA A. ARNOLD (Bar No. 235898)
3  TARANEH FARD (Bar No. 268117)
   1900 Avenue of the Stars, Seventh Floor
4  Los Angeles, California 90067-4308
   Telephone:  (310) 203-8080
5  Facsimile:  (310) 203-0567

6  Attorneys for Defendants
   LONG BEACH MEMORIAL MEDICAL CENTER and
7  MILLER CHILDREN'S HOSPITAL LONG BEACH

8

9

10                 UNITED STATES DISTRICT COURT

11               CENTRAL DISTRICT OF CALIFORNIA

12

13  ELIZABETH CASTILLO and CHRIS          CASE NO. _____
    MARKER on behalf of themselves and
14  all others similarly situated and the
    general public,                       DEFENDANTS LONG BEACH
15                                         MEMORIAL MEDICAL CENTER AND
            Plaintiffs,                    MILLER CHILDREN'S HOSPITAL
16                                         LONG BEACH'S NOTICE OF
         v.                                REMOVAL OF CIVIL ACTION TO
17                                         FEDERAL COURT PURSUANT TO 28
    LONG BEACH MEMORIAL               U.S.C. SECTION 1441(B) FEDERAL
18  MEDICAL CENTER, a California          QUESTION
    corporation; MILLER CHILDREN'S
19  HOSPITAL LONG BEACH, a
    California corporation; MEMORIAL
20  CARE HEALTH SYSTEM, a business
    entity unknown and DOES 1 to 100,
21  inclusive,

22          Defendants.

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER
LA 11994639v1

1   TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT

2   FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFFS ELIZABETH

3   CASTILLO AND CHRIS MARKER AND THEIR ATTORNEYS OF RECORD,

4   JOSEPH ANTONELLI AND THE LAW OFFICES OF JOSEPH ANTONELLI:

5

6           PLEASE TAKE NOTICE that Defendants Long Beach Memorial

7   Medical Center and Miller Children's Hospital Long Beach, hereby remove this

8   action from the Superior Court of the State of California for the County of Los

9   Angeles ("Los Angeles County Superior Court") to the United States District Court

10   for the Central District of California. The Complaint is a civil action of which this

11   Court possesses original jurisdiction pursuant to 28 U.S.C. section 1331, and is one

12   which may now be removed to this Court pursuant to 28 U.S.C. section 1441(b)

13   [Federal Question], in that:

14           1.     The claims of plaintiffs ELIZABETH CASTILLO AND CHRIS

15   MARKER ("Plaintiffs") are subject to Section 301 of the Labor-Management

16   Relations Act of 1947 ("LMRA"), 29 U.S.C. section 185, which grants this Court

17   jurisdiction over Plaintiffs' claims. The following is a short and plain statement of the

18   grounds for removal and a listing of pleadings to date:

19           2.     On March 26, 2015, Plaintiffs filed a complaint ("Complaint")

20   against Defendants in Los Angeles County Superior Court. A true and correct copy

21   of the Complaint is attached hereto as Exhibit "A." On May 6, 2015, Plaintiff caused

22   the Complaint to be served on Defendant.

23           3.     All Defendants are represented by the same counsel and hereby

24   join in the instant Removal. One listed defendant, "Memorial Care Health System",

25   is not a legal entity and cannot sue or be sued. As such it is a "sham defendant" and

26   its inability to act in any legal capacity does not prevent Defendants from removing

27   the captioned claim.

28           4.     Plaintiffs allege in their Complaint that Defendants deprived them

PRINTED ON
RECYCLED PAPER
LA 11994639v1

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1   of wages, overtime wages, and education pay, inter alia.  Plaintiffs are both members

2   of the California Nurses Association ("CNA"), a labor organization, and Plaintiff's

3   claims are governed by the collective bargaining agreement between CNA and

4   Defendants Long Beach Memorial Medical Center and Miller Children's Hospital

5   (the "CBA"), including, but not limited to, the grievance procedures set forth in the

6   Article 9 of the CBA and the arbitration procedures set forth in the Article 10 of the

7   CBA.  A true and correct copy of the CBA governing this claim as to the named

8   Plaintiffs is attached as Exhibit B.  Specifically, the following claims are governed by

9   the CBA:

10         a.     In Plaintiffs' Complaint, First Cause of Action, Paragraphs 24

11   through 26, Plaintiffs specifically seek damages for the alleged unpaid overtime

12   wages due to Plaintiffs.  Such claims are governed by Articles 25 and 26 of the CBA.

13         b.     In Plaintiffs' Complaint, First Cause of Action, Paragraph 27,

14   Plaintiffs specifically seek damages for the alleged insufficient staffing of shifts.

15   Such claims are governed by Article 18 of the CBA.

16         c.     In Plaintiffs' Complaint, First Cause of Action, Paragraphs 30-32,

17   Plaintiffs specifically seek damages for the alleged failure to pay overtime based

18   upon alleged rate fluctuations.  Such claims are governed by Articles 25 and 26 of the

19   CBA.

20         d.     In Plaintiffs' Complaint, First Cause of Action, Paragraph 45,

21   Plaintiffs specifically seek damages for the alleged failure to pay wages for

22   "mandatory educational or training programs, in-service, classes or other meetings to

23   establish or maintain the Registered Nurses job status as "RN II, RN III, or RN IV."

24   Such claims are governed by Article 28 of the CBA.

25         e.     In Plaintiffs' Complaint, Second Cause of Action, Paragraphs 54,

26   58, and 62, Plaintiffs specifically seek damages for the alleged unpaid overtime

27   wages due to Plaintiffs.  Such claims are governed by Articles 25 and 26 of the CBA.

28         f.     In Plaintiffs' Complaint, Fifth Cause of Action, Paragraph 78,

PRINTED ON
RECYCLED PAPER
LA 11994639v1

- 3 -

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

1 | Plaintiffs specifically seek damages for the alleged insufficient staffing of shifts.

2 | Such claims are governed by Article 18 of the CBA.

3 | g. Based upon Plaintiffs' Complaint, it is clear that the lawsuit

4 | concerns the alleged violation of the CBA, which constitutes a contract between an

5 | employer (defendants Long Beach Memorial Medical Center and Miller Children's

6 | Hospital Long Beach) and a labor organization (C.N.A.). As such, Plaintiffs' claims

7 | fall under the purview of Section 301 of the LMRA and are properly removable to

8 | this Court.

9 | 5. In addition to the claims raised by the named Plaintiffs, the

10 | Complaint also purports to represent a putative class of "all California hourly non-

11 | exempt employees..." in various subclasses. Plaintiffs' Complaint, Class Action

12 | Allegations, Paragraph 6. Many of these putative class members who are not

13 | members of CNA are instead members of the United Steel, Paper and Forestry,

14 | Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International

15 | Union, Healthcare Workers Council Local 2801 ("USW"), a labor organization, and

16 | as such the putative class claims as to USW members are governed by the collective

17 | bargaining agreement between USW and Defendants Long Beach Memorial Medical

18 | Center and Miller Children's Hospital (the "USW CBA"), including, but not limited

19 | to, the grievance procedures set forth in the Article 9 of the USW CBA and the

20 | arbitration procedures set forth in the Article 10 of the USW CBA. A true and

21 | correct copy of the USW CBA governing this claim as to the named Plaintiffs is

22 | attached as Exhibit C. Specifically, the following claims are governed by the USW

23 | CBA:

24 | a. In Plaintiffs' Complaint, First Cause of Action, Paragraphs 24

25 | through 26, Plaintiffs specifically seek damages for the alleged unpaid overtime

26 | wages due to Plaintiffs. Such claims are governed by Articles 25 and 26 of the USW

27 | CBA.

28 | b. In Plaintiffs' Complaint, First Cause of Action, Paragraphs 30-32,

*JMBM | Jeffer Mangels Butler & Mitchell LLP*

1   Plaintiffs specifically seek damages for the alleged failure to pay overtime based

2   upon alleged rate fluctuations.  Such claims are governed by Articles 25 and 26 of the

3   USW CBA.

4           c.       In Plaintiffs' Complaint, Second Cause of Action, Paragraphs 54,

5   58, and 62, Plaintiffs specifically seek damages for the alleged unpaid overtime

6   wages due to Plaintiffs.  Such claims are governed by Articles 25 and 26 of the USW

7   CBA.

8           d.       Based upon Plaintiff's Complaint, it is clear that the lawsuit

9   concerns the alleged violation of the USW CBA, which constitutes a contract

10  between an employer (defendants Long Beach Memorial Medical Center and Miller

11  Children's Hospital Long Beach) and a labor organization (USW).  As such,

12  Plaintiffs' putative class claims fall under the purview of Section 301 of the LMRA

13  and are properly removable to this Court.

14          Defendants have filed this Notice pursuant to 28 U.S.C. section 1446(b)

15  in a timely fashion, within thirty (30) days from the time Defendants first received

16  Plaintiff's Complaint.  Until May 6, 2015, Defendants had not been served with the

17  Complaint.

18          WHEREFORE, Defendants remove the original action brought by

19  Plaintiffs, now pending in the Superior Court of the State of California for the County

20  of Los Angeles, from that Court to this Court.

21          Plaintiffs served a copy of the Summons, Complaint, Civil Case Cover

22  Sheet, Civil Case Cover Sheet Addendum and Statement of Location, and Notice of

23  Case Assignment by Acknowledgment of Receipt, executed by Defendants on May 6,

24  2015. *See* May 6, 2015 Notice and Acknowledgment of Receipt for both Defendants,

25  attached hereto as Exhibit D.  The Summons, Complaint, Civil Case Cover Sheet,

26  Civil Case Cover Sheet Addendum and Statement of Location, and Notice of Case

27  Assignment, attached hereto as Exhibits A (Complaint) and Exhibit E (other service

28  documents), is the initial pleading that was served on Defendants.

JMBM | Jeffer Mangels Butler & Mitchell LLP

1    1. The Summons, Complaint, Civil Case Cover Sheet, Civil Case

2 Cover Sheet Addendum and Statement of Location, and Notice of Case Assignment,

3 constitute all of the documents that have been filed in this action with the Superior

4 Court.

5    2. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel

6 certifies that a copy of this Notice of Removal and all supporting papers promptly

7 will be served on Plaintiffs' counsel and filed with the Clerk of the Los Angeles

8 County Superior Court.  True and correct copies of the Notice of Removal of Civil

9 Action to Federal Court and the Notice to Adverse Party of Removal of Civil Action

10 are attached hereto as Exhibits F and G, respectively.  Therefore, all procedural

11 requirements under 28 U.S.C. § 1446 have been satisfied.

12    3. This Notice of Removal is effected properly and timely pursuant

13 to 28 U.S.C. § 1441(c).

14    4. All Defendants are represented by the same counsel and have

15 jointly filed this Notice of Removal.  As noted above, one listed defendant,

16 "Memorial Care Health System", is not a legal entity and cannot sue or be sued.  As

17 such it is a "sham defendant" and its inability to act in any legal capacity does not

18 prevent Defendants from removing the captioned claim.

19    5. Venue is proper in this District pursuant to 28 U.S.C. § 1441(a)

20 because the Superior Court where the removed case was pending is located within

21 this District.

22    6. Pursuant to 28 U.S.C. § 1367(a), the Court has supplemental

23 jurisdiction over Plaintiffs' remaining causes of action plead under California state

24 law because they are substantially related to Plaintiffs' first, second, and fifth causes

25 of action under LMRA.  Because plaintiffs' remaining causes of action arise from the

26 same nucleus of operative facts as do the first, second, and fifth causes of action, all

27 should be tried in one action.  *Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d

28 709, 714 (9th Cir. 1990).  Considerations of convenience, judicial economy and

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 11994639v1

- 6 -

1          WHEREFORE, Defendants hereby remove the above-entitled action

2  now pending in the Los Angeles Superior Court to this Court.

3

4  DATED:  June 4, 2015              JEFFER, MANGELS, BUTLER &
                                     MITCHELL LLP
5                                    MARTA FERNANDEZ
                                     TRAVIS GEMOETS
6                                    BARBRA A. ARNOLD
                                     TARANEH FARD
7

8

9  By:
       TRAVIS GEMOETS
10     Attorneys for Defendants LONG BEACH
       MEMORIAL MEDICAL CENTER and
11     MILLER CHILDREN'S HOSPITAL LONG
       BEACH
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER
LA 11994639v1

# EXHIBIT A

RECEIVED
MAR 3 0 2015
BY:

COPY
CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County Of Los Angeles

MAR 26 2015

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

1  Joseph Antonelli, Esq. (Bar No. 137039)
   Janelle Carney, Esq. (Bar No. 201570)
2  LAW OFFICE OF JOSEPH ANTONELLI
   14758 Pipeline Ave., Suite E, 2nd Floor
3  Chino Hills, CA 91709
   Tel.: (909) 393-0223 / Fax: (909) 393-0471
4  Email: JAntonelli@antonellilaw.com
           JCarney@antonellilaw.com
5

6  Attorneys for Plaintiff

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             FOR THE COUNTY OF LOS ANGELES

10
   ELIZABETH CASTILLO and CHRIS          )  Case No.:
11 MARKER on behalf of themselves and all others )                BC 5 7 6 9 3 6
   similarly situated and the general public,  )  CLASS ACTION
12                                          )
13          Plaintiffs,                     )  COMPLAINT FOR DAMAGES FOR:
                                            )
14     v.                                   )  1. Violation of B&PC §17200, et seq.
                                            )
15                                          )  2. Failure to Pay All Wages (Labor Code
   LONG BEACH MEMORIAL MEDICAL             )  §§ 200, et seq., 218, 510, 511, 1194 and
16 CENTER, a California corporation; MILLER )  1198);
   CHILDREN'S HOSPITAL LONG BEACH, a       )
17 California corporation; MEMORIAL CARE    )  3. Failure to Provide Meal Breaks Labor
   HEALTH SYSTEM, a business entity unknown;)  Code §§226.7 & 512, et seq.
18 and DOES 1 to 100, inclusive,           )
                                            )  4. Inaccurate Wage Statements (LC §226)
19          Defendants                      )
                                            )  5. Failure to Provide Rest Periods (Labor
20                                          )  Code §226.7);
                                            )
21                                          )  6. Unpaid Wages Due to Illegal Rounding
                                            )  (Labor Code §§ 204, 218, 510, 1194,
22                                          )  1194.2, 1197, 1198);
                                            )
23                                          )  7. Unpaid Wages Due to Off-the-Clock
                                            )  Work (Labor Code §§218, 510, 1194,
24                                          )  1194.2, 1197, and 1198)
25
26
27
28

                    COMPLAINT FOR DAMAGES

1         Plaintiffs, Elizabeth Castillo and Chris Marker on behalf of themselves and all other

2 persons similarly situated, and the general public, hereby complain against Defendant, Long

3 Beach Memorial Medical Center, a California corporation, Miller Children's Hospital Long

4 Beach, and Memorial Care Health System (hereinafter collectively referred to as "LBMMC"),

5 and DOES 1 to 100, inclusive, and on information and belief allege as follows:

## GENERAL ALLEGATIONS

### JURISDICTION

8     1.     This is a civil action seeking recovery of unpaid wages and waiting time penalties

9 under California Labor Code §§200, et seq., 226, 226.7, 510, 511, 512, 1194, 1194.2, 1197,

10 1198, and 2802. The Plaintiffs for themselves and on behalf of the general public, and all others

11 similarly situated, brings an action for monetary damages for failure to pay wages as well as for

12 injunctive relief, declaratory relief and restitution for Defendants violations of Business and

13 Professions Code (B&PC) §17200, et seq., including full restitution of all compensation retained

14 by Defendants, as a result of its unlawful, fraudulent and unfair business practices. Plaintiffs

15 seek all available relief, including full damages, full restitution and/or disgorgement of all

16 revenues, earnings, profits, compensation and benefits retained by Defendants as a result of its

17 unlawful, unfair business practices. Further, Plaintiffs seek injunctive relief under B&PC

18 §17200, et seq.

### VENUE

20     2.     Venue as to the Defendants is proper in this judicial district pursuant to California

21 Code of Civil Procedure (CCP) §§ 395(a) and 395.5, as at least some of the acts complained of

22 herein occurred in the County of Los Angeles. Defendants own or maintain offices, transacts

23 business, has an agent or agents within the County of Los Angeles, or otherwise is found within

24 the County of Los Angeles, and Defendants are within the jurisdiction of this Court for purposes

25 of service of process.

### PARTIES

27     3.     Elizabeth Castillo is an individual over the age of eighteen (18). At all relevant

28 times herein, Plaintiff Castillo was and currently is a resident of the County of Los Angeles,

1

COMPLAINT FOR DAMAGES

1 │ State of California.

2 │     4.     Chris Marker is an individual over the age of eighteen (18). At all relevant times

3 │ herein, Plaintiff Marker was and currently is a resident of the County of Los Angeles, State of

4 │ California.

5 │     5.     Plaintiffs are informed and believe and thereon allege that all relevant times each

6 │ Defendants were licensed to do business in the State of California, County of Los Angeles, with

7 │ its principal place of business in Los Angeles, California, among other counties throughout the

8 │ State of California.

9 │     6.     Plaintiffs are informed and believe and thereon allege that Defendants and DOES

10 │ 1 to 100, controls and operates business and establishments in locations within the State of

11 │ California, including, but not limited to, the County of Los Angeles, for the purposes of

12 │ providing hospital and healthcare services. Thus, each named Defendant and DOES 1 to 100 are

13 │ subject to B&PC §17200, et seq. (Unfair Competition Law) and the Labor Code as hereinafter

14 │ alleged.

15 │     7.     Plaintiffs do not know the true names or capacities, whether individual, partner, or

16 │ corporate, of Defendants sued herein as DOES 1 to 100, inclusive, and for that reason, said

17 │ Defendants are sued under such fictitious names, and Plaintiffs will seek from this Court leave to

18 │ amend this Complaint when such true names and capacities are discovered. Plaintiffs are

19 │ informed and believe and thereon allege that each Defendant and each fictitious Defendant,

20 │ whether individual, partners, or corporate, was responsible in some manner for the circumstances

21 │ alleged herein, and proximately caused Plaintiffs and all others similarly situated hereinafter

22 │ alleged and the general public to be subjected to the unlawful employment practices, wrongs,

23 │ injuries and damages complained of herein.

24 │     8.     At all times herein mentioned, each of said Defendants participated in the doing

25 │ of the acts hereinafter alleged to have been done by the named Defendants; and furthermore,

26 │ Defendants, and each of them, were the agents, servants, and employees of each and every one of

27 │ the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned

28 │ were acting within the course and scope of said agency and employment. Plaintiffs herein allege

2

COMPLAINT FOR DAMAGES

1     that Defendants and each of them are the joint employer of Plaintiffs and the classes.

2          9.     At all times mentioned herein, Defendants, and each of them, were members of

3     and engaged in a joint venture, partnership, and common enterprise, and acting within the course

4     and scope of and in pursuance of said joint venture, partnership, and common enterprise.

5          10.     At all times herein mentioned, the acts and omissions of various Defendants, and

6     each of them, concurred and contributed to the various acts and omissions of each and every one

7     of the other Defendants in proximately causing the complaints, injuries and damages alleged

8     herein.

9          11.     At all times herein mentioned, Defendants, and each of them, approved of,

10     condoned, and/or otherwise ratified each and every one of the acts or omissions complained of

11     herein. At all times herein mentioned, Defendants, and each of them, aided and abetted the acts

12     and omissions of each and every one of the other Defendants, thereby proximately causing the

13     damages, as herein alleged.

14                    **PRIVATE ATTORNEY GENERAL ALLEGATIONS**

15          12.     Plaintiffs on behalf of themselves and all others similarly situated, filed this cause

16     of action acting as a private attorney general on behalf of the general public to challenge and

17     remedy the business practices of Defendants alleged herein.

18          13.     B&PC §17200, et seq., often referred to as the Unfair Competition Law, prohibits

19     unfair competition, which is defined to include any unlawful, unfair, or fraudulent business act or

20     practices. Defendants have instituted and implemented unlawful wage-and-hour policies, which

21     constitute unfair, unlawful, or fraudulent business acts or practices within the State of California.

22     Any person that has suffered injury may initiate an action to enforce B&PC §17200. The court is

23     authorized to order injunctive relief, declaratory relief, and restitution to affected members of the

24     general public as remedies for any violations of B&PC §17200.

25          14.     Plaintiffs are entitled to an award of attorneys' fees and costs in prosecuting this

26     action as a private attorney general against Defendants under CCP §1021.5 based in part on the

27     following:

28              a.     A successful outcome in this action will result in the enforcement of

1  important rights affecting the public interest by maintaining the integrity of entities that employ
2  employees;

3          b.      This action will result in a significant benefit to the general public by
4  ceasing unlawful, unfair and deceptive activity, and by causing the return of ill-gotten gains
5  obtained by Defendants through its failure to properly pay its employees;

6          c.      Unless this action is prosecuted, members of the general public will not
7  recover monies wrongfully taken from them, and many employees and consumers would not be
8  aware that they were victimized by Defendants wrongful acts and practices; and Unless
9  attorneys' fees and costs are awarded against Defendants, the general public will not be made
10 whole.

11                          **PLAINTIFF CLASSES**

12     15.     The class representative Plaintiffs who worked in the position of non-exempt
13 hourly Nurse employees, while employed by Defendants within the State of California, are
14 Elizabeth Castillo and Chris Marker.

15                          **CLASS ACTION ALLEGATIONS**

16     16.     Plaintiffs bring this action on behalf of themselves and all others similarly situated
17 as a class action pursuant to CCP §382. The Classes which Plaintiffs seek to represent are
18 composed of and defined as follows:

19     **Class 1:**

20     All California hourly non-exempt employees of Defendants who worked at least one (1)
21 day of more than eight (8) hours in a day or more than forty (40) hours in a week during the
22 relevant time period to be determined. ("Regular Rate/Overtime Class");

23          **Subclass 1:** All Califomia 12-hour shift non-exempt employees of Defendants
24 who worked at least one (1) day of more than eight (8) hours in a day or more than forty (40)
25 hours in a week from September 14, 2005 through the date of class certification order.
26 ("Equitable Tolling Class")

27     **Class 2:**

28     All California-based non-exempt hourly employees who worked for Defendants during

4

COMPLAINT FOR DAMAGES

1   the relevant time period to be determined who were not provided legally-compliant meal periods.

2   ("Meal Break Class");

3            **Subclass 1**: All hourly California non-exempt employees of Defendants who

4   were paid for a missed meal or rest break at a "reduced" rate of pay during the relevant time

5   period to be determined (Meal Reduced Rate Subclass);

6        **Class 3:**

7        All California-based non-exempt hourly employees who worked for Defendants from one

8   (1) year before the filing of this action through the date of class certification order who were

9   provided a paystub (a.k.a. wage statement) from Defendants ("Pay Stub Class").

10       **Class 4:**

11       All California hourly non-exempt employees of Defendants who were subject to

12   Defendants' rounding policy and pay practice from during the relevant time period to be

13   determined (Rounding Class).

14       **Class 5:**

15       All California hourly non-exempt employees of Defendants at any time during the

16   relevant time period to be determined, who were not provided with 10 minute rest periods for

17   each 4 hours of work or major fraction thereof. (Rest Break Class)

18       **Class 6:**

19       All California hourly employees of Defendants during the relevant time period to be

20   determined, who suffered and/or permitted to work without compensation paid at minimum

21   wage. (Off the Clock)

22       The members of the classes are so numerous that joinder of all members would be

23   unfeasible and not practicable. The membership of the classes is unknown to Plaintiffs at this

24   time; however, it is estimated that the classes number greater than 500 individuals. The identity

25   of such membership is readily ascertainable via inspection of Defendants' employment records.

26       17.    There are common questions of law and fact as to Plaintiffs and all others

27   similarly situated which predominate over questions affecting only individual members

28   including, without limitation to:

COMPLAINT FOR DAMAGES

i.     Whether Defendants violated the applicable Labor Code provisions including §510 and 1194 by requiring substantial overtime work and not paying for said work according to the overtime laws of the State of California without exemption;

ii.    Whether Defendants failed to pay the appropriate straight time and premium overtime compensation to the non-exempt hourly employees;

iii.   Whether Defendants improperly retained, appropriated or deprived Plaintiffs of the use of monies or sums to which Plaintiffs were legally entitled;

iv.   Whether Defendants engaged in unlawful, unfair, and/or fraudulent business practices;

v.    Whether Defendants, and each of them, was/were participants in the alleged unlawful conduct;

vi.   Whether Defendants' conduct was willful or reckless;

vii.   The effect upon and the extent of injuries suffered by Plaintiffs and all others similarly situated and the appropriate amount of compensation;

viii.   The appropriate amount of monetary penalties allowed by Labor Code §§201, et. seq. and 226;

ix.   Whether Defendants paid and continue to pay for a meal break violations and/or rest break violations at an allegedly "reduced" rate of pay in violation of Section 11 and 12 of the applicable Wage Orders;

x.    Whether Defendants violated Labor Code §226 and relevant IWC Wage Orders by failing to, among other violations, accurately report total hours worked by Plaintiffs and the members of the Plaintiffs' class;

xi.   Whether Defendants knowingly and intentionally failed to maintain records for Plaintiff and members of the Plaintiffs' class as required by Labor Code § 1174 and §7 of the IWC Order 5-2001 and its successors;

xii.   Whether Defendants willfully violated provisions of the California Labor

6

COMPLAINT FOR DAMAGES

1                  Code;

2        xiii.   Whether Defendants' rounding policy results in systematic losses to

3                  Plaintiffs and the classes;

4        xiv.   Whether Defendants fails to provide regularly compliant meal periods;

5        xv.    Whether Defendants fails to authorize and permit legally compliant rest

6                  period breaks;

7        xvi.   Whether Defendants' rounding policy systematically results in losses to

8                  Plaintiffs and the class members; and

9        xvii.   Whether Defendants failed to pay and continues to fail to pay at least

10                 minimum wage for time that the class members are suffered and/or

11                 permitted to work.

12     18.   Plaintiffs' claims are typical of the claims of all members of the classes and

13 subclasses mentioned herein. Plaintiffs, as representative parties, will fairly and adequately

14 protect the interest of the classes by vigorously pursuing this suit through her attorneys who are

15 skilled and experienced in handling matters of this type. Plaintiffs have no claim or interest that

16 is antagonistic to any class member.

17     19.   The nature of this action and the nature of laws available to the members of the

18 classes and subclasses identified herein make use of the class action format a particularly

19 efficient and appropriate procedure to afford relief to Plaintiffs for the wrongs alleged herein.

20 Further, this claim involves large corporate employers, Defendants, and a large number of

21 individual employees (Plaintiffs and all others similarly situated) with many relatively small

22 claims with common issues of law and fact. If each employee were required to file an individual

23 lawsuit, the corporate Defendants would necessarily gain an unconscionable advantage since it

24 would be able to exploit and overwhelm the limited resources of each individual Plaintiff with its

25 vastly superior financial and legal resources. Requiring each class member to pursue an

26 individual remedy would also discourage the assertion of lawful claims by employees who

27 would be disinclined to pursue an action against their present and/or former employer for an

28 appreciable and justifiable fear of retaliation and permanent damage to their careers at present

1   and/or subsequent employment. Proof of a common business practice or factual pattern, of
2   which the named Plaintiffs experienced, is representative of the class mentioned herein and will
3   establish the right of each of the members of the named class to recovery on the causes of action
4   alleged herein.

5        20.    The prosecution of separate actions by the individual class members, even if
6   possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with
7   respect to the individual class members against Defendants herein; and which would establish
8   potentially incompatible standards of conduct for Defendants; and/or (b) legal determinations
9   with respect to individual class members which would, as a practical matter, be dispositive of the
10  interest of the other class members not parties to adjudications or which would substantially
11  impair or impede the ability of the class members to protect their interests. Further, the claims of
12  the individual members of the class are not sufficiently large to warrant vigorous individual
13  prosecution considering all of the concomitant costs and expenses attending thereto.

14       21.    Plaintiffs and all others similarly situated are entitled to the wages and other
15  monies unlawfully withheld. This action is brought for the benefit of the public.

16                              **FIRST CAUSE OF ACTION**

17                          **(Violation of B&PC §17200, et seq.)**

18       22.    Plaintiffs re-allege and incorporate by reference herein the allegations of all
19  preceding paragraphs as though fully set forth herein.

20       23.    Beginning on an exact date unknown to Plaintiffs but believed to have occurred at
21  least since four (4) years before the filing of this action, Defendants have engaged in a pattern
22  and practice of acts of unfair competition in violation of B&PC §17200, including the practices
23  alleged herein.

24              **FAILURE TO PAY PROPER WAGES AND OVERTIME COMPENSATION**

25       24.    Plaintiffs are informed and believe and thereon allege that as part of Defendants'
26  ongoing unfair business practice since at least September 14, 2005, Defendants' employees were
27  and are employed and scheduled as a matter of established company policy to work, and in fact,
28  worked twelve (12) hour shifts. The hours worked by Defendant's employees is in excess of

8

COMPLAINT FOR DAMAGES

1   eight (8) hours per day, and in excess of forty (40) hours per week without receiving the proper
2   overtime premium. The Defendants are in violation of Labor Code §§ 510 and 1194, and the
3   relevant California Industrial Welfare Commission Orders 5-2001, et seq.

4       25.    Under Labor Code §1194, an employee is not fully compensated for the unpaid
5   balance of their overtime compensation unless the employee is paid all unpaid compensation for
6   the regular hours and overtime hours worked during an overtime shift.

7       26.    While Defendants' policy is to pay time-and-a-half for all hours worked in excess
8   of eight (8) hours per day, Defendants fail to pay members of the class proper premium overtime.
9   The mathematical result of this practice is that employees are underpaid their earned wages.
10  Defendants' employees are not paid proper overtime compensation.

11      27.    Defendants, and each of them, consistently administered a corporate policy
12  regarding, both staffing levels, duties and responsibilities of Defendants' employees, which
13  required that the entirety of the employees work overtime without proper premium overtime pay.
14  Further, the Plaintiffs and the class are entitled to restitution of these wages obtained by
15  Defendants, and each of them.

16      28.    This corporate policy and pattern of conduct is accomplished with the advance
17  knowledge and designed intent not to pay the employees at a premium rate for all overtime
18  hours. Further, the Plaintiffs and the members of the class are entitled to restitution of these
19  wages obtained by Defendants, and each of them.

20      29.    Further, the Plaintiffs and the members of the classes are entitled to restitution of
21  all unpaid wages obtained by Defendants, and each of them. Plaintiffs, and the class, may seek
22  restitution for unpaid straight time wages under California Business & Professions Code §17200,
23  et seq. ("Section 17200"). Any business act or practice that violates the Labor Code through a
24  failure to pay wages is by definition an unfair business practice under §17200. Section 17200
25  provides an action to recover wages as restitution, even if such recovery might be barred if
26  brought pursuant to the Labor Code, if the failure to pay constitutes a business practice.
27  Defendants' failure to properly pay all wages, including straight time and the overtime premium
28  at the correct regular rate, constitutes an unfair business practice because it is a failure to pay the

9

COMPLAINT FOR DAMAGES

1  full amount of earned overtime compensation pursuant to Labor Code §§510 and 1194; Unpaid
2  straight time wages and unpaid overtime wages are recoverable as restitution under Section
3  17200 based on Defendants' subterfuge which constitutes an unfair business practice that fails to
4  pay earned wages in violation of the Labor Code. Defendants have continuously concealed their
5  subterfuge business practices, as herein alleged.

6       30.     Plaintiffs are informed and believe and thereon allege that as part of Defendants'
7  ongoing unfair business practice, Defendants' 12-hour shift non-exempt employees, including
8  but not limited to, nurses, LVNs, and CNAs as well as other employees were and are employed
9  and scheduled as a matter of established company policy to work, and in fact, worked twelve
10  (12) hour shifts. The hours worked by Defendants' hourly employees is in excess of eight (8)
11  hours per day, and in excess of forty (40) hours per pay period without receiving the proper
12  straight time or overtime compensation for such excess hours worked in violation of Labor Code
13  §§510 and 1194, and the relevant California Industrial Welfare Commission orders.

14       31.     Defendants have established a practice of paying each employee a differing base
15  rate of pay that varies depending solely on the number of hours the employee works in a day. If
16  an employee works an eight (8) hour shift, he or she is compensated at one rate of pay (e.g.,
17  $35.00 per hour). However, if that same employee works a twelve (12) hour shift, Defendants
18  reduce the employees' base rate of pay (e.g., to $30.00 per hour). While Defendants' policy is to
19  pay time-and-a-half for all hours worked in excess of eight (8) hours per day, both straight time
20  (first eight (8) hours) and overtime (last four (4) hours) pay is based on the lower rate of pay
21  (e.g., $30.00 per hour). The mathematical result of this practice is that employees are paid the
22  same average rate of pay (e.g., $35.00 per hour) regardless of whether they work eight (8) hours
23  or twelve (12) hours in a given day. Defendants' mathematical scheme is in violation of the
24  Labor Code. Defendants' employees are not paid proper overtime compensation. Defendants'
25  employees do not work two (2) different jobs, and therefore, two (2) different regular rates of
26  pay is unlawful.

27       32.     Defendants, and each of them, consistently administered a corporate policy
28  regarding both staffing levels, duties and responsibilities of Defendants' employees, including

1   nurses which required that the entirety of the employees to work overtime without proper

2   premium overtime pay and one (1) regular rate of pay. This corporate policy and pattern of

3   conduct is accomplished with the advance knowledge and designed intent to place the employees

4   at two (2) different regular rates of pay to avoid paying premium overtime. Accordingly, said

5   employees are entitled to one (1) regular rate of pay and overtime compensation under California

6   law. Further, the general public is entitled to the disgorged profits obtained by Defendants, and

7   each of them. Furthermore, the Defendants have failed to properly include items of remuneration

8   when determining the employees' regular rate, this includes but is not limited to the failure to

9   include the shift differentials and non-discretionary bonuses paid to all eligible employees.

10       33.    Plaintiffs and all others similarly situated identified herein were and are employed

11   and scheduled as a matter of established company policy to work and in fact worked as non-

12   exempt hourly employees in excess of eight (8) hours per day. Defendants employed and

13   scheduled all employees without providing overtime compensation for such excess daily

14   overtime hours worked in violation of Labor Code §§ 510, 511, 1194, 1198 and the relevant

15   California Industrial Welfare Commission (IWC) orders, including daily and weekly overtime

16   premiums, including the seventh day premium without exemption. Pursuant to Labor Code §

17   1198, it is unlawful to employ persons for longer than the hours set by the IWC or under

18   conditions prohibited by the applicable IWC Wage Orders. IWC Wage Order No. 5, as

19   amended, applies to Plaintiffs.

20       34.    Plaintiff is informed, and believes, and thereon alleges that Plaintiff's and the

21   putative class members' causes of actions, in this matter, were tolled based on the filing of the

22   Cunningham v. Long Beach Memorial Medical Center and Miller Children's Hospital

23   ("Cunningham Action"), action, originally filed on September 14, 2009, in Los Angeles Superior

24   Court, Case No. BC421688 with summary judgment entered on the individual claims on July 26,

25   2011. "[T]he commencement of a class action suspends the applicable statute of limitations as to

26   all asserted members of the class who would have been parties had the suit been permitted to

27   continue as a class action." "Once the statute of limitations has been tolled, it remains tolled for

28   all members of the putative class until class certification is denied." Two major policy

11

1   considerations apply to the class action "tolling rule," protection of efficiency and economy in

2   litigation as promoted by the class action device; and effectuation of the purpose of the statute of

3   limitations to protect a Defendants from unfair claims. Plaintiffs allege that the Cunningham

4   action tolled the statute of limitations for all Plaintiffs and class members.

5      35.   As such, the class action "tolling rule" is appropriate when a named plaintiff

6   commences a class action suit and (1) "thereby notifies the Defendants not only of the

7   substantive claims being brought against them," and (2) "also of the number and generic

8   identities of the potential plaintiffs who may participate in the judgment.'" Becker v. McMillin

9   Constr. Co., 226 Cal. App. 3d 1493, 1498 (1991); quoting Jolly, 44 Cal.3d at 1121. Accordingly,

10  Plaintiff hereby believes and alleges that based on the filing of the Cunningham Action and its

11  joint employer allegations for wage and hour violations seeking recovery of "All current and

12  former California hourly non-exempt employees" of Defendants, with notice to the same counsel

13  for each Defendants listed in this action, all Defendants were provided notice of (1) the

14  substantive claims brought against them through a joint employer theory against Defendants, and

15  (2) the general number and generic identities of the potential plaintiffs in the form of all current

16  and former California hourly non-exempt employees of Defendants.

17                          **VIOLATION OF MEAL PERIOD PROVISIONS**

18     36.   Defendants' improper meal policies are in violation of California law including,

19  but not limited to Labor Code § 226.7, 512, and IWC Wage Order 5-2001. The Plaintiffs and the

20  members of the class are entitled to a half hour meal period for every five (5) hours of their shift

21  worked. Defendants violated the meal break provisions and did not provide Plaintiff and the

22  class with duty free meal periods for every five (5) hours of their shift worked. Plaintiffs and the

23  class were entitled to one (1) hour of pay for each meal break violation at their regular rate of

24  pay. Defendants and each of them failed and continue to fail to pay for a meal break violation at

25  the employees' regular rate of pay in violation of Section 11 of the applicable Wage Orders.

26  Defendants forced invalid meal waivers on the members of the class thus depriving class

27  members of meal periods for every five (5) hours worked.

28     37.   Defendants failed to provide, impeded and/or discouraged Plaintiffs and others

                                         12
─────────────────────────────────────────────
                            COMPLAINT FOR DAMAGES

1 | from taking timely meal breaks of not less than thirty (30) minutes as required by the Labor

2 | Code during the relevant class period and/or failed to obtain legal waivers waiving the first or

3 | second meal period. Further, Defendants' policy required Plaintiffs and the class to sign on-duty

4 | meal agreements as a condition of employment. Said on duty meal period agreements are

5 | invalid.

6 | **FAILURE TO PAY ALL WAGES DUE TO ILLEGAL ROUNDING**

7 | 38.    Defendants have unlawfully employed a rounding policy that disproportionately

8 | impacts employees, which results in lost wages for hourly employees.

9 | 39.    The conduct of Defendants is inimical to the public welfare since it transgresses

10 | both civil and criminal statutes of this state designed to protect workers from exploitation.

11 | 40.    Defendants' conduct in its rounding of Plaintiffs' and other members of the class'

12 | time and failing to pay all wages due was also unfair within the meaning of Business &

13 | Professions Code §17200 because it was against established public policy and has been pursued

14 | to attain an unjustified monetary advantage for Defendants by creating personal disadvantage

15 | and hardship to their employees. As such, Defendants' business practices and acts have been

16 | oppressive and unfair. Said conduct was also fraudulent within the meaning of Business &

17 | Professions Code §17200 because it was intended by Defendants to deceive employees,

18 | prospective employees and other members of the public into believing that hourly were being

19 | paid properly for all hours worked, a deceit likely to be believed by such persons.

20 | **FAILURE TO PERMIT AND AUTHORIZE REST PERIOD BREAKS**

21 | 41.    Plaintiffs and other members of the Rest Period Class, during their employment

22 | by Defendants, including within the Class Period, were entitled to the benefits of Labor Code §

23 | 226.7 and Order 5-2001 of the Industrial Welfare Commission. Pursuant to Labor Code Section

24 | 226.7 and Wage Order 5-2001, Plaintiffs and the other members of the Rest Period Class were

25 | entitled to separate rest periods of at least 10 minutes for each four hour period of work or major

26 | fraction thereof, and one hour of additional pay for every shift a rest period was not provided in

27 | conformance with this obligation.

28 |

13

COMPLAINT FOR DAMAGES

42.     Plaintiffs are informed and believe, and thereon allege that Defendants consistently compelled Plaintiffs and other members of the Rest Period Class employed for shifts of more than four (4) hours, to take only one (1) rest break during their shifts, instead of three (3) rest breaks required for shifts of that length. Plaintiffs are further informed and believe, and thereon allege, that Rest Period Class members employed for shorter shifts, at times, were systematically denied the opportunity to take all legally compliant rest breaks.

## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

43.     Plaintiffs are informed and believe and thereon allege that as part of Defendants' ongoing unfair business practices, Defendants, and each of them, fails to provide its employees with proper and understandable itemized wage statement, as required by Labor Code § 226.

44.     Plaintiffs are informed, and believes, and thereon alleges, that Defendants, and each of them, fail to provide each employee with an itemized statement which states the actual regular rate paid, the total hours worked by the employee, the net wages earned, and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

## OFF THE CLOCK

45.     Plaintiffs are informed and believe and thereon allege, that at all times herein mentioned, Defendants engaged in unlawful, unfair, and fraudulent business practices prohibited by California B&PC §17200, by failing to pay for mandatory educational or training programs, in-service, classes or other meetings required to establish or maintain the Registered Nurses job status as "RN II, RN III, or RN IV." Further, suffered or permitted non-exempt employees to work off the clock including but not limited to not pay on-call shifts for the fifteen (15) minutes prior to the shift suffered start time for which the employees are required to report and be ready for work. Furthermore, the Defendants suffered or permitted non-exempt employees to work prior to shift commencement and after clocking out from their shift.

46.     Plaintiffs seek restitution and injunctive relief for all the aforementioned violations.

14

COMPLAINT FOR DAMAGES

47.     Defendants, and each of them, have engaged in unfair business practices in California by practicing, employing and utilizing the employment practices complained of herein. Defendants' use of such practices constitutes an unfair business practice, unfair competition, and provides an unfair advantage over Defendants' competitors. Plaintiffs and the putative class seek full restitution of said monies, as necessary and according to proof, to restore any and all monies withheld and/or acquired by Defendants by means of the unfair business practices complained of herein. Plaintiffs seek, on behalf of all current and former employees of Defendants, restitution of said monies. Plaintiffs further seek, on behalf of the Plaintiffs and the putative class, the appointment of a receiver, as necessary, to establish the total restitutionary relief from Defendants. The restitution includes all wages withheld by Defendants as a result of the unfair, unlawful, and/or fraudulent business practices, including interest thereon. Absent a statutory provision specifically governing the type of claim at issue, the prejudgment interest rate is 10 percent. The acts complained of herein occurred, at least in part, within the last four (4) years preceding the filing of the Complaint, or as of September 14, 2005.

48.     Plaintiffs are informed and believe and thereon allege that at all times herein mentioned, Defendants have engaged in unlawful, deceptive, and unfair business practices prohibited by California B&PC §17200, thereby depriving their employees and the putative class the minimum working condition, standards and conditions due to them under the California labor laws and Industrial Welfare Commission wage orders as specifically described herein. Plaintiffs seek an injunction preventing Defendants from continuing its unfair business practice of improperly depriving its employees' overtime pay. Plaintiffs further seek an order requiring Defendants to identify by full name, telephone number, and last known address employees who worked or still work for Defendants from four (4) years preceding the filing of the original Complaint through the date of judgment; Plaintiffs further seek an order requiring Defendants to timely pay restitution to all current and former employees, including back wages, and interest. The acts complained of herein occurred, at least in part, within the last four (4) years preceding the filing of the original Complaint.

-15

COMPLAINT FOR DAMAGES

49. By and through its unfair, unlawful, and/or fraudulent business practices and acts described herein, Defendants have obtained valuable services from Plaintiffs and all persons similarly situated, and has deprived Plaintiffs and all persons similarly situated of valuable rights and benefits guaranteed by law, all to their detriment.

50. Plaintiffs, and all persons similarly situated, and all persons in interest, are entitled to and do seek such relief as may be necessary to restore to them the money and property which Defendants have acquired, or of which Plaintiffs and class members have been deprived by means of the herein described unfair, unlawful, and/or fraudulent business practices.

51. Plaintiffs, and all persons similarly situated, and all persons in interest, are further entitled to and do seek a declaration that the above described business practices are unfair, unlawful, and/or fraudulent, and injunctive relief restraining Defendants from engaging in any of the herein described unfair, unlawful, and/or fraudulent business practices at all times in the future.

52. Plaintiffs request attorney's fees and costs pursuant to Code of Civil Procedure §1021.5 since this action is brought to vindicate important rights of a large class and the public.

## SECOND CAUSE OF ACTION

### RECOVERY OF UNPAID WAGES & PENALTIES

#### (Violation of Labor Code §§ 218, 510, 511, 1194 and 1198)

53. Plaintiffs re-allege and incorporates by reference herein the allegations of all preceding paragraphs as though fully set forth herein.

54. Plaintiffs and all others similarly situated identified herein were and are employed and scheduled as a matter of established company policy to work and in fact worked as non-exempt hourly employees in excess of eight (8) hours per day and/or in excess of forty (40) hours per week. Defendants employed and scheduled all employees without providing overtime compensation for such excess hours worked in violation of Labor Code §§ 510, 511 and 1194 and the relevant California Industrial Welfare Commission (IWC) orders, including but not limited to, daily and weekly overtime payments. The California overtime requirement and wage requirement are non-waivable rights pursuant to LC §219. Defendants and each of them always

16

COMPLAINT FOR DAMAGES

1   had a written and verbal agreement to pay overtime at time and one half for all hours worked in

2   excess of eight (8) per day and/or eighty (80) hours per pay period.

3        55.    Pursuant to Labor Code §§ 218 and 1194(a), Plaintiffs may bring a civil action for

4   overtime wages directly against the employer without first filing a claim with the Division of

5   Labor Standards Enforcement (hereinafter "DLSE") and may recover such wages, together with

6   interest thereon, penalties, attorneys' fees and costs.

7        56.    Pursuant to Labor Code § 1198, it is unlawful to employ persons for longer than

8   the hours set by the IWC or under conditions prohibited by the applicable IWC Wage Orders.

9   IWC Wage Order No. 5, as amended, applies to Plaintiffs.

10       57.    At all times relevant hereto, Plaintiffs are informed and believe and thereon allege

11   that Defendants have treated Plaintiffs and all persons similarly situated, as hourly non-exempt

12   employees. Despite this classification, Defendant has willfully violated the Labor Code with

13   respect to meeting the requirements of paying all wages earned, including minimum wages,

14   straight time pay, overtime, and remuneration when calculating the hourly non-exempt

15   employees regular rate of pay, as herein before alleged.

16       58.    Plaintiffs are informed and believe and thereon allege that the hourly non-exempt

17   class was never paid any premium compensation or paid significantly less premium

18   compensation for work accomplished in excess of forty (40) hours per pay period, and/or eight

19   (8) hours per day, without any valid alternative workweek schedule or other exemption.

20       59.    Plaintiffs are informed and believe and thereon allege that Defendants

21   consistently administered a corporate policy regarding both staffing levels and duties and

22   responsibilities of the members of the class which required the members of the class to work

23   overtime without proper premium pay. This included a uniform corporate policy and practice of

24   requiring the members of the class to work in excess of eight (8) hours a day without paying

25   premium overtime. This corporate policy and pattern of conduct was/is accomplished with the

26   advance knowledge and design of Defendants herein. Thus, Plaintiffs and the members of the

27   class, regularly and customarily performed overtime work. Accordingly, Plaintiffs and all others

28   similarly situated are entitled to overtime compensation under California law. Further,

COMPLAINT FOR DAMAGES

1  Defendants disseminated false information throughout Defendants' facilities and among the

2  employees reciting that all hourly non-exempt employees would receive premium overtime pay.

3      60.    Plaintiffs are informed and believe and thereon allege that the obligations and

4  responsibilities of the class employees are irrelevant because Plaintiff and all others similarly

5  situated merely allege wrongdoing with Defendants' pay plans. Further, the duties of Plaintiff

6  and all others similarly situated are not relevant in certifying any of the classes. Defendants'

7  hourly non-exempt employees work routinely included work in excess of eight (8) hours per day,

8  forty (40) hours per pay period and/or and they were not, and have never been, paid the proper

9  regular rate of compensation nor the proper premium compensation for their overtime work.

10      61.    Defendants, and each of them, in violation of Labor Code §§ 201 and 202, et seq.,

11  respectively, had a consistent and uniform policy, practice and procedure of willfully failing to

12  pay the earned and unpaid wages of all such former employees. Defendants have willfully failed

13  to pay the earned and unpaid wages of such individuals, including, but not limited to, regular

14  pay, straight time pay (pursuant to Labor Code §1194), premium pay, and other wages earned

15  and remaining uncompensated according to amendment, or proof.

16      62.    Plaintiffs and all others similarly situated identified herein were and are employed

17  and scheduled as a matter of established company policy to work and in fact worked as non-

18  exempt hourly employees in excess of eight (8) hours per day without overtime. Defendants

19  employed and scheduled members of the class without providing proper overtime compensation

20  for such excess daily overtime hours worked in violation of Labor Code §§ 510, 1194, 1198 and

21  the relevant California Industrial Welfare Commission (IWC) orders. Pursuant to Labor Code §

22  1198, it is unlawful to employ persons for longer than the hours set by the IWC or under

23  conditions prohibited by the applicable IWC Wage Orders. IWC Wage Order No. 5, as

24  amended, applies to Plaintiffs.

25      63.    Likewise, Defendants have a pattern, practice and uniform administration of

26  corporate policy regarding failure to comply with the required provisions of Labor Code § 226.7,

27  in failing to pay Plaintiffs and the members of the class for missed rest and meal periods at the

28  employee's regular rate of pay. Accordingly, Plaintiffs seek all underpaid wages, wages that

1 | Defendants have failed to pay, which are owing, including interest thereon, willful penalties,

2 | attorneys' fees, and costs of suit according to the mandate of LC §1194, et seq.

### THIRD CAUSE OF ACTION

### FAILURE TO PROVIDE MEAL BREAKS

5      64.     Plaintiffs incorporate by reference as if fully set forth herein, the allegations of

6 | paragraphs above.

7      65.     Labor Code §226.7 requires an employer to pay an additional hour of

8 | compensation for each meal period the employer fails to provide. Plaintiffs allege that

9 | Defendants failed to provide legally compliant meals in addition to impeding, discouraging

10 | and/or dissuading employees from taking legally compliant meal periods. Employees are

11 | entitled to a meal period of at least thirty (30) minutes per five (5) hour work period. Plaintiffs

12 | and the class consistently worked over five (5) hour shifts without meal periods due to

13 | Defendants' policy of discouraging, dissuading and/or impeding Plaintiffs and the class from

14 | taking meal periods. Defendants further required class members to enter into mandatory meal

15 | waivers and failed to provide two (2) uninterrupted thirty (30) minute meal periods on all shifts

16 | of 12 hours or more. Pursuant to the Code, Plaintiffs and the class are entitled to a meal period

17 | of not less than thirty (30) minutes prior to exceeding five (5) hours of employment, and a

18 | second meal period for hours worked over ten (10) in a day.

19      66.     Defendants failed to provide, impeded and/or discouraged Plaintiffs and others

20 | from taking timely meal breaks of not less than thirty (30) minutes as required by the Labor

21 | Code during the relevant class period and/or failed to obtain legal waivers waiving the first or

22 | second meal period.

23      67.     Pursuant to Labor Code §226.7, Plaintiffs are entitled to damages in an amount

24 | equal to one (1) hour of wages per missed meal break, in a sum to be proven at trial.

25      68.     Pursuant to Labor Code §218.5 Plaintiffs request that the court award reasonable

26 | attorney's fees and costs incurred by them in this action.

27

28

## FOURTH CAUSE OF ACTION

### FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS

### PURSUANT TO LABOR CODE §226

#### (Against All Defendants)

69.     Plaintiffs re-allege and incorporate by reference herein the allegations of all preceding paragraphs as though fully set forth herein.

70.     The applicable Wage Order provides:

Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing: (1) all deductions; (2) the inclusive dates of the period for which the employee is paid; (3) the name of the employee or the employee's social security number; and (4) the name of the employer, provided all deductions made on written orders of the employee may be aggregated and shown as one item. Subsection (e) provides: "Any employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) shall be entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and shall be entitled to an award of costs and reasonable attorney's fees."

71.     During the Class Period, Defendants knowingly and intentionally failed to provide Plaintiffs and the class members, including Plaintiffs, with timely and accurate wage statements showing gross wages earned, total hours worked, all deductions made, net wages earned, and all applicable hourly rates in effect during each pay period and the corresponding number of hours worked at each hourly rate by that Class Member.

72.     Defendants thus required the Class Members, including Plaintiffs, to work under conditions prohibited by order of the Industrial Welfare Commission, in violation of those orders.

73.     The Class Members, including Plaintiffs, suffered injury as a result of Defendants' knowing and intentional failure to provide the Class Members, including Plaintiffs, with the wage statements required by law.

74.     Based on Defendants' conduct as alleged herein, Defendants are liable for actual

20

COMPLAINT FOR DAMAGES

1 damages, statutory damages and/or statutory penalties pursuant to California Labor Code §226,

2 including attorney's fees and costs.

3 ### FIFTH CAUSE OF ACTION

4 ### FAILURE TO PERMIT AND AUTHORIZE REST PERIOD BREAKS

5 75. The Plaintiffs and the members of the Class re-allege and incorporate by reference

6 all prior paragraphs, as though fully set forth herein.

7 76. Labor Code §226.7 provides that employers authorize and permit all employees

8 to take rest periods at the rate of ten (10) minutes rest time per four (4) work hours.

9 77. Labor Code §226.7(b) provides that if an employer fails to provide and employee

10 rest periods in accordance with this section, the employer shall pay the employee one (1) hour of

11 pay at the employees regular rate of compensation for each workday that the rest period is not

12 provided.

13 78. Defendants, and each of them, failed and or refused to implement a relief system

14 by which Plaintiffs and aggrieved employees could receive rest breaks and/or work free rest

15 breaks for every four hours worked, or major fraction thereof. Furthermore, due to Defendants'

16 relief system, Plaintiffs and aggrieved employees did not receive their rest breaks within the

17 required statutory time frame. By and through its actions, Defendants intentionally and

18 improperly denied rest periods to the Plaintiffs and aggrieved employees in violation of Labor

19 Code §§226.7 and 512.

20 79. At all times relevant hereto, the Plaintiffs and hourly employees, have worked at

21 least two (2) and one-half (1/2) hours and regularly more than four (4) hours in a workday.

22 80. By virtue of the Defendants' unlawful failure to provide rest periods to Plaintiffs

23 and the hourly employees, Plaintiffs members of the class have suffered, and will continue to

24 suffer, damages, in amounts which are presently unknown, which will be ascertained according

25 to proof at trial.

26 81. Plaintiffs, individually, and on behalf of all others similarly situated, requests

27 recovery of rest period compensation pursuant to Labor Code §226.7, which they are owed

28 beginning four (4) years before the filing of this action through the date of judgment as the

21

### COMPLAINT FOR DAMAGES

1   assessment of any statutory penalties against the Defendants, and each of them, in a sum as

2   provided by the Labor Code and/or any other statute.

3                          **SIXTH CAUSE OF ACTION**

4            **FAILURE TO PAY ALL WAGES DUE TO ILLEGAL ROUNDING**

5        82.    Plaintiffs incorporate by reference and reallege each and every one of the

6   allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set

7   forth herein.

8        83.    Labor Code §510(a) states in pertinent part: "Any work in excess of eight hours in

9   one workday and any work in excess of 40 hours in any one workweek … shall be compensated

10  at the rate of no less than one and one-half times the regular rate of pay for any employee."

11       84.    California Code of Regulations Title 8, §11000(2) and the IWC Wage Orders

12  §4(A) state: "Every employer shall pay to each employee … wages not less than eight dollars

13  ($8.00) per hour for all hours worked, effective January 1, 2008…".

14       85.    Labor Code §§1194(a) states: "Notwithstanding any agreement to work for a

15  lesser wage, any employee receiving less than the legal minimum wage or the legal overtime

16  compensation applicable to the employee is entitled to recover in a civil action the unpaid

17  balance of the full amount of this minimum wage or overtime compensation, including interest

18  thereon, reasonable attorney's fees, and costs of suit."

19       86.    Further, pursuant to Labor Code §1197, payment of less than the minimum wage

20  fixed by the Labor Commission is unlawful.

21       87.    Pursuant to Labor Code §1198, it is unlawful to employ persons for longer than

22  the hours set by the Industrial Welfare Commission or under conditions prohibited by the IWC

23  Wage Order(s).

24       88.    Pursuant to the IWC Wage Order(s), Defendants are required to pay the members

25  of the Rounding Class for all hours worked, meaning the time during which an employee is

26  subject to the control of an employer, including all the time the employee is suffered or permitted

27  to work, whether or not required to do so.

28       89.    Defendants, as a matter of established company policy and procedure, at each and

22

COMPLAINT FOR DAMAGES

1  every one of the individual facilities owned and/or operated by Defendants, consistently:

2          a.     Administered a uniform company policy and practice as to the rounding

3                 policies regarding the members of the Rounding Class; and

4          b.     Rounded the actual time worked and recorded by the members of the

5                 Rounding Class, usually down, so that during the course of the their

6                 employment, the members of the Rounding Class were paid far less than

7                 they would have been paid had they been paid for actual recorded time

8                 rather than "rounded" time.

9      90.     Because Defendants required the members of the Rounding Class to remain under

10  Defendants' control without paying therefore, this resulted in the members of the Rounding

11  Class earning less than the legal minimum wage in the State of California or the full amount of

12  overtime compensation for overtime hours worked.

13      91.     Defendants' pattern, practice and uniform administration of corporate policy

14  regarding illegal employee compensation as described herein is unlawful and creates an

15  entitlement, pursuant to Labor Code §218, to recovery by Plaintiffs and the members of the

16  Rounding Class, in a civil action, of the unpaid balance of the full amount of wages owing,

17  calculated at the appropriate rate.

18      92.     Further, Defendants' pattern and practice in uniform administration of corporate

19  policy regarding Defendants' failure to pay the legal minimum wage to the members of the

20  Rounding Class as described herein is unlawful and creates entitlement, pursuant to Labor Code

21  §1194(a), to recovery by the members of the Rounding Class, in a civil action, for the unpaid

22  balance of the full amount of the unpaid minimum wages owed or the full amount of earned

23  unpaid overtime compensation, including interest thereon.

24      93.     That calculation of individual damages for the members of the Rounding Class

25  may at some point be required does not foreclose the possibility of taking common evidence on

26  questions regarding their entitlement to overtime compensation (see, e.g. Collins v. Rocha (1972)

27  7 Cal.3d 232; Hypolite v. Carleson (1975) 52 Cal.App.3d 566; Employment Development Dept.

28  v. Superior Court (1981) 30 Cal.3d 256).

94.     Pursuant to Labor Code §218.6, Labor Code §1194(a) and CC §3287, the members of the Rounding Class seek recovery of pre-judgment interest on all amounts recovered herein.

95.     Pursuant to Labor Code §218.5 and/or Labor Code §1194, the members of the Rounding Class request that the Court award reasonable attorneys' fees and costs incurred by them in this action.

### SEVENTH CAUSE OF ACTION
### (OFF THE CLOCK)
### FAILURE TO PAY ALL WAGES
### (On Behalf of All Class Members)
### (Against All Defendants)

96.     Plaintiffs incorporate by reference and reallege each and every one of the allegations contained in the preceding and foregoing paragraphs of this Complaint as if fully set forth herein.

97.     Labor Code §510(a) states in pertinent part: "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek ... shall be compensated at the rate of no less than one and one-half times the regular rate of pay for any employee."

98.     Labor Code §1182.12, effective July 1, 2014, states: "Notwithstanding any other provision of this part, on and after July 1, 2014, the minimum wage for all industries shall be not less than nine dollars ($9) per hour, and on and after January 1, 2016, the minimum wage for all industries shall be not less than ten dollars ($10) per hour."

99.     Labor Code §§1194(a) states: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

100.    Further, pursuant to Labor Code §1197, payment of less than the minimum wage fixed by the Labor Commission is unlawful.

101.    Pursuant to Labor Code §1198, it is unlawful to employ persons for longer than

24

COMPLAINT FOR DAMAGES

1   the hours set by the Industrial Welfare Commission or under conditions prohibited by the IWC

2   Wage Order(s).

3        102.   Pursuant to the IWC Wage Order(s), Defendants are required to pay the members

4   of the Wage Class for all hours worked, meaning the time during which an employee is subject

5   to the control of an employer, including all the time the employee is suffered or permitted to

6   work, whether or not required to do so.

7        103.   Defendants, as a matter of established company policy and procedure, at each and

8   every one of the individual facilities owned and/or operated by Defendants, consistently:

9

10           a.    Administered a uniform company policy and practice as to the pay

11                 policies regarding the class members; and

12           b.    Scheduled to work and/or required the class members to work without

13                 paying for all time they were under Defendants' control, as herein before

14                 alleged.

15        104.   Because Defendants required the class members to remain under Defendants'

16   control without paying therefore, this resulted in the class members earning less than the legal

17   minimum wage in the State of California.

18        105.   Defendants' pattern, practice and uniform administration of corporate policy

19   regarding illegal employee compensation as described herein is unlawful and creates an

20   entitlement, pursuant to Labor Code §218, to recovery by Plaintiffs and the class members in a

21   civil action, of the unpaid balance of the full amount of wages owing, calculated at the

22   appropriate rate.

23        106.   Further, Defendants' pattern and practice in uniform administration of corporate

24   policy regarding Defendants' failure to pay the legal minimum wage to the class members as

25   described herein is unlawful and creates entitlement, pursuant to Labor Code §1194(a), to

26   recovery by the class members in a civil action, for the unpaid balance of the full amount of the

27   unpaid minimum wages owed, calculated as the difference between the straight time

28   compensation paid and the applicable minimum wage, including interest thereon.

COMPLAINT FOR DAMAGES

107.    Pursuant to Labor Code §1194.2(a) (which provides that in any action under Labor Code §1194, an employee shall be entitled to recover liquidated damages), the class members seek recovery of liquidated damages on the straight-time portion of uncompensated hours of work (not including the overtime portion thereof) in an amount equal to the wages unlawfully unpaid and interest thereon.

108.    That calculation of individual damages for the class members may at some point be required does not foreclose the possibility of taking common evidence on questions regarding their entitlement to overtime compensation (see, e.g. Collins v. Rocha (1972) 7 Cal.3d 232; Hypolite v. Carleson (1975) 52 Cal.App.3d 566; Employment Development Dept. v. Superior Court (1981) 30 Cal.3d 256).

109.    Pursuant to Labor Code §218.6, Labor Code §1194(a) and CC §3287, the class members seek recovery of pre-judgment interest on all amounts recovered herein.

110.    Pursuant to Labor Code §218.5 and/or Labor Code §1194, the class members request that the Court award reasonable attorneys' fees and costs incurred by them in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.    That the Court determine this action may be maintained as a class action;

**As to the First Cause of Action:**

2.    For an order preliminarily and permanently enjoining Defendants from engaging in the practices challenged herein;

3.    An order for full restitution of all monies, as necessary and according to proof, to restore any and all monies withheld by the Defendants by means of the unlawful, unfair, and/or fraudulent practices complained of herein.  Plaintiffs seek, on behalf of the putative class, the appointment of a receiver, as necessary.  The restitution includes all monies retained as wages, as defined in Labor Code §§ 200, et seq., 510, and 1194, and interest, and attorneys' fees as a result of the unlawful, unfair, and/or fraudulent business practices or retained in violation of Labor Code §1198 and IWC Wage Order 5-2001;

4.    For an order finding and declaring that Defendants' acts and practices as

26

COMPLAINT FOR DAMAGES

1   challenged herein are unlawful, and unfair and/or fraudulent;

2       5.     For an accounting, under administration of Plaintiffs and subject to Court Review,

3   to determine the amount to be returned by Defendants and the amounts to be refunded to

4   members who are or were not paid all their wages due to Defendants' unfair business practices;

5       6.     For the creation of an administrative process wherein each injured current and

6   former employee receives his or her back wages in the form of overtime pay or alternatively that

7   each current or former eligible employee may submit a claim in order to receive his/her money;

8       7.     For an order requiring Defendants to make full restitution and payment pursuant

9   to B&PC Sections 17200, et seq. for unfair business practices that violate Labor Code §§ 200, et

10   seq., 510, and 1194;

11       8.     For reasonable attorneys' fees under Code of Civil Procedure §1021.5 all other

12   appropriate declaratory and equitable relief;

13       9.     For pre-judgment interest to the extent permitted by law;

14       10.    For pre-judgment interest to the extent permitted by law and the California

15   Constitution;

16       11.    For an order requiring Defendants to identify, by name, address and telephone

17   number of each person who worked as an hourly non-exempt employee for Defendants from four

18   (4) years before filing of the original complaint in this action through the time of judgment;

19   **As to the Second Cause of Action:**

20       12.    For damages according to proof, as set forth in Labor Codes §§ 218, 226, 510,

21   1194, and 1198 et seq., (and the applicable California Industrial Welfare Commission wage

22   orders) regarding wages due and owing;

23       13.    For unpaid straight time wages pursuant to Labor Code §1194.

24       14.    For pre-judgment interest as allowed by Labor Code § 1194 and California Civil

25   Code § 3287(b), and for reasonable attorneys' fees;

26   **As to the Third Cause of Action:**

27       15.    One (1) hour of pay at each of the employees' regular rate of compensation for

28   each workday that a meal break was not provided, impeded, discouraged and/or dissuaded;

COMPLAINT FOR DAMAGES

**As to the Fourth Cause of Action:**

16. For recovery as authorized by Labor Code §226(e);

17. For injunctive relief to ensure Defendants' compliance with Labor Code §226 and the IWC Wage Orders §7(A) pursuant to Labor Code §226(g);

18. For an award of costs and reasonable attorneys' fees pursuant to Labor Code §226(e) and/or §226(g);

**As to the Fifth Cause of Action:**

19. One (1) hour of pay at each of the employees' regular rate of compensation for each workday that a rest break was not provided, impeded, interrupted, discouraged and/or dissuaded;

**As to the Sixth Cause of Action:**

20. For recovery of the unpaid balance of the full amount of unpaid minimum wage or overtime and double time compensation, per Labor Code §§ 218, 510, 1194, 1194.2, 1197, and 1198 due and owing, according to proof;

21. For liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon for the uncompensated non-overtime hours of work, as authorized by Labor Code §1194.2(a);

22. For pre-judgment interest as allowed by Labor Code §218.6, Labor Code §1194(a) and CC §3287;

23. For an award of reasonable attorneys' fees and costs pursuant to Labor Code §218.5 and/or Labor Code §1194(a);

**As to the Seventh Cause of Action:**

24. For recovery of the unpaid balance of the full amount of the straight time compensation due and owing, according to proof;

25. For liquidated damages on the straight-time portion of uncompensated hours of work (not including the overtime portion thereof), as authorized by Labor Code §1194.2(a);

26. For recovery of the unpaid balance of the full amount of overtime compensation due and owing, calculated at the appropriate rate and according to proof;

28

COMPLAINT FOR DAMAGES

27.     For pre-judgment interest as allowed by Labor Code §218.6, Labor Code §1194(a) and CC §3287;

28.     For an award of reasonable attorneys' fees and costs pursuant to Labor Code §218.5 and/or Labor Code §1194(a);

**As to All Causes of Action:**

29.     For reasonable attorneys' fees and costs incurred;

30.     For such other and further relief as this Court may deem just and proper.

Dated: March 20, 2015                    LAW OFFICE OF JOSEPH ANTONELLI

By:     _____
          Joseph Antonelli, Attorney for Plaintiffs

---

29

COMPLAINT FOR DAMAGES

# EXHIBIT B

# COLLECTIVE BARGAINING AGREEMENT

## BETWEEN



## AND



## CALIFORNIA NURSES ASSOCIATION

July 1, 2012 – March 31, 2016

CNA-Glendale
225 West Broadway, Suite 500
Glendale, California 91204
(818) 240-1900
www.calnurses.org

# TABLE OF CONTENTS

| **Article #** | **Title** | **Page** |
|---|---|---|
| Article 1 | Agreement | 1 |
| Article 2 | Recognition | 1 |
| Article 3 | Management Rights | 2 |
| Article 4 | Assigned Overtime | 4 |
| Article 5 | Change of Ownership | 4 |
| Article 6 | Work Stoppage | 4 |
| Article 7 | No Discrimination | 6 |
| Article 8 | Discharge and Discipline | 6 |
| Article 9 | Grievance Procedure | 7 |
| Article 10 | Arbitration | 8 |
| Article 11 | Association Membership | 9 |
| Article 12 | Bargaining Unit Information | 10 |
| Article 13 | Bulletin Board | 10 |
| Article 14 | RN Representatives | 11 |
| Article 15 | Association Visitation | 11 |
| Article 16 | Profession Practice Committee | 12 |
| Article 17 | Nursing Process Standards | 13 |
| Article 18 | Patient Staffing System | 14 |
| Article 19 | Personnel Categories | 15 |
| Article 20 | Scheduling | 16 |
| Article 21 | Call Offs | 16 |
| Article 22 | Floating | 17 |
| Article 23 | Seniority, Layoff, Recall | 19 |
| Article 24 | Job Postings, Transfers and Promotions | 22 |
| Article 25 | Hours of Work | 23 |
| Article 26 | Compensation | 26 |
| Article 27 | In-House Registry Program | 31 |
| Article 28 | Educational Programs | 32 |
| Article 29 | Blood Assurance Program Participation | 34 |
| Article 30 | Paid Time Off (PTO) Benefits | 35 |
| Article 31 | Benefits | 36 |
| Article 32 | Retirement Plan | 37 |
| Article 33 | Career Advancement Program | 38 |
| Article 34 | Leave of Absence | 39 |
| Article 35 | Lift Program | 39 |
| Article 36 | Technology | 40 |
| Article 37 | Duration | 41 |
| Appendix A | RN Wage Grid | 42 |
| Appendix B | LBMMC/MCH Non-Benefit Staff-Per Diem And Resource Wages, Categories And Requirements | 48 |
| Appendix C | CNA Political Action Fund (PAF) | 50 |

## ARTICLE 1   AGREEMENT

This Agreement made and entered into as of July 1, 2012 is by and between Long Beach Memorial Medical Center and Miller Children's Hospital hereinafter jointly referred to as the "Employer" and the California Nurses Association hereinafter referred to as the "Union."

## ARTICLE 2   RECOGNITION

A.     Pursuant to the certification of the National Labor Relations Board in Case No. 21-RC-20399, the Employer recognizes the Union as the exclusive collective bargaining representative for all full-time and regular part-time registered RNs, non-benefit Per Diem RNs and resource RNs employed by the Employer at its facilities located at 2801 Atlantic Ave., including the Buffum Pavilion, Long Beach, California and RNs employed at outpatient facilities, as of the effective date of this Agreement, operating under the license of the Employer located at 2801 Atlantic Ave., Long Beach, California.

B.     In accordance with Federal Labor Law, excluded from coverage under this Agreement are all other employees, office clerical employees, Case Manager 1, Customer Relations Coordinators, Quality Coordinator, Infection Control Professionals, Residency Coordinators, Residency Coordinator-Pediatrics, Registered RNs employed at Transitional Rehabilitation Services, managerial employees, confidential employees including, but not limited, to Administrative RN Specialists, Nursing Data Analysts, and Utilization Review RN in Human Resources, all other professional employees, guards and supervisors as defined in the National Labor Relations Act including, but not limited to, Senior Vice President, Vice President, Clinical Director, Administrative Director, Clinical Operations Manager, Clinical Operations Supervisor, Assistant Unit Manager, Executive Director, House Supervisor, Program Director, Shift Manager and Supervisor.

Disputes concerning the interpretation and application of this Article are not subject to the grievance and arbitration provisions of Article 9 and 10 and shall be resolved by the National Labor Relations Board.

C.     The Employer agrees that during the term of this Agreement it will not challenge the bargaining unit status of any nurse or job classification covered by this Agreement.  The Employer further agrees that during the term of this Agreement it will not claim that any nurse or job classification covered by this Agreement exercises supervisory authority within the meaning of Section 2(11) of the NLRA, or assign any nurse such duties for the purpose of removing that nurse from the bargaining unit.  Finally, the Employer also agrees that during the term of the Agreement it will not challenge the Union's right to represent any nurse in any job classification covered by this Agreement based on a claim that such nurse is a supervisor within the meaning of the NLRA.

## ARTICLE 3  MANAGEMENT RIGHTS

A.     Subject to the provisions contained in this Agreement and the laws and regulations governing the health care industry, patient care, nursing practice and other health care providers, the Employer has the right to operate its business which includes the right to determine, change, discontinue, alter, or modify in whole or in part, temporarily or permanently, any of the following:

1.     The number, location, or types of programs, services, units, facilities and organizations.

2.     The medical and patient care standards, methods and procedures.

3.     The price of all products and services, the price of all purchases, and the corporate and financial structure of the facilities.

4.     The subcontracting of facility construction and maintenance or work not performed by present or future bargaining unit employees covered by this Agreement

5.     The equipment and machinery.

6.     The promotion and demotion of all supervisors or any employee to a supervisory position at the facilities, provided that the creation of new supervisory positions or assignments shall not displace bargaining unit employees or their work, except as has been agreed to by the union.

7.     The number and type of employees, including the number and type of employees assigned to any particular unit or shift.

8.     Reasonable standards of performance and whether any employee meets such standards, subject to just cause standards.

9.     The need for and the fair administration of physical examinations, including drug screening, or background information or criminal record checks as they pertain to new, initial probationary, or inter-facility transfer employees.

10.     The direction and supervision of all employees.

11.     The adoption of reasonable rules and regulations for all employees.

12.     The hiring of employees.

13.     The utilization of registry and traveling RNs.

14.     The security of the employees, premises, facilities, and the property of the Employer.

15.     The utilization of the Employer's premises, equipment, and facilities.

16.    Maintain the current practice with respect to administering drug test(s) to employees.

17.    The selection and retention or discontinuance of all catering and vending machine suppliers and other catering services and the price of their products and services.

18.    The job classifications and the content and qualifications thereof.

19.    The right to promote, reclassify, determine on-call and transfer, to maintain discipline and efficiency; to assign work assignments.

20.    Determine additions or deletions to unit specific skill rosters, and the content of job descriptions.

21.    Assign temporary relief by seniority on a rotational basis from unit assignments to other units or shifts when all other reasonable options have been exhausted.

22.    Define the starting and ending times of shifts.

B.    Any dispute arising regarding the exercise of any of the rights of the Employer enumerated above is not subject to the grievance and arbitration provision of this Agreement. The foregoing shall not preclude a Union grievance or arbitration contesting whether the Employer's actions or inactions are within the rights enumerated above.

C.    During the term of this Agreement, the Union and the Employer agree upon request, to bargain in good faith about the following:

1.    Subcontracting of the work currently performed by RNs covered by this Agreement.

2.    The utilization of employees not covered by this agreement to do work, which is currently done by RNs covered by this Agreement.

3.    Any management right not expressly provided for in this Agreement.

If no agreement is reached and the parties are at an impasse as to any of the above three issues, the Employer may implement its last proposal.

## ARTICLE 4   ASSIGNED OVERTIME

A.       An RN may not refuse to work overtime if it would endanger patient care, for example, during an operation, delivery, or invasive procedure, or during a community disaster.

B.       In the event RNs refuse to work overtime in other situations, managers or supervisors can perform the work in addition to work managers or supervisors are otherwise allowed to perform.

## ARTICLE 5   CHANGE OF OWNERSHIP

A.       In the event of a merger, sale, closure or other transfer of ownership of its operations in whole or in part, the Employer shall notify the Union in writing at least sixty (60) calendar days prior to the effective date of the transaction. The Employer shall meet at the Union's request to engage in good faith bargaining over the impact of such change.

B.       The Employer shall not use the merger, sale, closure or other transfer of ownership to evade the terms of this Agreement.

## ARTICLE 6   WORK STOPPAGE

A.       The Employer and the Union acknowledge that the Employer differs in its operations from other non-healthcare industries because of the type of service it renders to the community and for humanitarian reasons. Therefore, during the term of this Agreement the parties agree to the conditions of this Article.

B.       Neither the Union nor the RNs shall threaten to or participate in any strike, walkout, slowdown, sickout, sympathy strike or other work stoppage (collectively referred to as "work stoppage") during the life of this Agreement. In the event of any strike, walkout, slowdown, sympathy strike, or work stoppage or threat thereof, the Union and its officers will do everything within their power to end or avert the same.

C.       The Employer, for its part, agrees that there shall be no lockout of RNs during the term of this Agreement.

D.       Disputes contending that there are violations of Paragraphs B and C of this Article shall not be subject to the grievance and arbitration provisions contained in Articles 9 and 10.

E.       Since time is of the essence in settling such disputes, in the event of a claimed violation or threat of violating any of the provisions of this Article, the party claiming such violation, in its sole discretion, shall have the choice of pursuing independently or concurrently any of the following courses of action.

4

1.     Submit such claim directly to an appropriate State Court and such claim may be submitted without regard to the arbitration provisions set forth herein. Each party hereby waives its right to remove any such action instituted to a Federal Court.

2.     Submit such claim to arbitration as follows: The claim shall be filed orally with any one of the following arbitrators: Fred Horowitz, Mai Ling Bickner, Michael Prihar, Philip Tamoush, or Michael Rappaport and the other party shall be notified orally. The arbitration hearing shall be held within eight (8) hours (or as soon thereafter as is possible) after filing of the claim. Continuance of said hearing shall be determined by the arbitrator. Absence from or nonparticipation at the hearing by any party shall not prevent the issuance of an award. Hearing procedures which will expedite the hearing may be ordered at the arbitrator's discretion and the arbitrator may close the hearing in his or her sole discretion when the arbitrator decides that he or she has heard sufficient evidence to satisfy issuance of an award. The arbitrator's award shall be rendered as expeditiously as possible and in no event later than twelve (12) hours after the close of the hearing. In the event the arbitrator finds that this Article has been violated, the arbitrator shall, as a part of his or her award, enjoin any continued or prospective violations of this Article, and further shall specifically order that all normal operations be resumed at once. The arbitrator is empowered to award damages for any violations of this Article. The award of the arbitrator shall be final and binding upon the parties. The award may be enforced in any appropriate court as soon as possible after its rendition with written notice to the party or parties against whom such enforcement is sought and each party hereby waives its right to remove any such action initiated in a State Court to the Federal Court. The fee of the arbitrator and all necessary expenses of the hearing, including a stenographic reporter if employed, shall be equally divided between the parties.

F.     Any RN who participates in work stoppage that is found to be in violation of this Article may be subject to discipline up to termination and shall not have recourse to the grievance procedure.

G.     Neither the Union nor its agents shall purchase billboard, bench, newspaper, TV, radio, magazine or other advertisements disparaging the Employer or its employees or management or services during the life of this Agreement.

H.     Neither the Employer nor its agents shall purchase billboards, bench, newspaper, TV, radio, magazine or other advertisements disparaging the Union or its services or employees or management during the life of this Agreement.

I.     The Union will not place or cause anyone to place the Employer or the Employer's products or services on any "We Do Not Patronize" or "Unfair" lists.

## ARTICLE 7  NO DISCRIMINATION

There shall be no discrimination by the Employer or the Union of any kind against any RN on account of race, color, ancestry, political belief, sexual orientation or preference, religion, sex, marital status, national origin, age, physical or mental disability, medical condition, citizenship, pregnancy or membership in or activity on behalf of a labor organization as provided by law. Both parties are permitted to take all action necessary to comply with all applicable federal, state and local laws and regulations, including any new laws and regulations enacted during the term of this agreement.

## ARTICLE 8  DISCHARGE AND DISCIPLINE

The right to maintain discipline is vested exclusively with the Employer.  An RN may only be disciplined or discharged for just cause.   The Union shall be timely notified of all RN suspensions and discharges within two (2) days as defined in Article 9 below.  The RN shall be notified whenever documented discipline is placed in their personnel file and will have access to their personnel file in accordance with California law.

A Nurse, upon his or her request, is entitled to have an Association representative present during an investigatory interview where the Nurse reasonably believes that such interview will result in disciplinary action.

Unpaid investigatory leave shall be no longer than five (5) scheduled shifts.  All scheduled shifts thereafter shall be paid until conclusion of the investigation.

The discipline or discharge of a probationary RN may be done at any time during the initial probationary period at management's discretion.    The Employer may extend the initial probationary period at its own discretion in lieu of termination.  An RN who is on his or her initial probationary period who is disciplined or discharged shall not have access to the grievance procedure.

## ARTICLE 9  GRIEVANCE PROCEDURE

A.     A grievance is defined as a dispute concerning the interpretation or application of any provision of this agreement.

B.     Days are calendar days excluding Saturdays, Sundays, and holidays.

C.     The Union and the Employer recognize that the goal of the grievance procedure is to attempt to resolve the grievance at the lowest level possible with the least amount of time and resources. Prior to the filing of a formal grievance, the RN and his/her supervisor or manager only shall meet informally in an effort to resolve the matter.

D.     If the matter is not resolved by the informal meeting, a grievance shall be handled in accordance with the procedures set forth below.   A grievant shall be entitled to union representation at any meeting under this grievance procedure. All written responses by the Employer shall be addressed to the Union with copies to the grievant and to the designated RN Representative.

**Step 1:**  The Union initiates the grievance procedure by completing and delivering a grievance form to the Executive Director, Employee and Labor Relations, Human Resources Department, within thirty (30) days of the date upon which the Union first became aware, or reasonably should have first become aware, of the events or circumstances which gave rise to the grievance.

A meeting will be arranged by the Executive Director, Employee and Labor Relations between the Union and the grievant's RN Manager and/or immediate supervisor to resolve the grievance and shall take place within fifteen (15) days after the filing of the grievance.  The RN Manager or Supervisor will respond in writing within ten (10) days of the meeting.

**Step 2:**  If the grievance has not been resolved, the Union may move the grievance to Step 2 by submitting a written statement to the Executive Director, Labor and Employee Relations, Human Resources Department, for transmission to the Chief Nursing Officer or designee within ten (10) days after receipt of the written response in Step 1.

A meeting shall be held between the Union and the Chief Nursing Officer or by his/her designee to resolve the grievance during the fifteen (15) day period following receipt of the written statement.  The Chief Nursing Officer or his/her designee will respond in writing within ten (10) days after the meeting.

E.     One or more of the above grievance steps may be waived by written agreement of the parties.

## ARTICLE 10 ARBITRATION

A.     Grievances which are not settled pursuant to Article 9, Grievance Procedure, and which the Parties wish to pursue further, shall be submitted to arbitration as provided in this Article.

B.     Requests for arbitration must be received by the Director of Employee Relations within thirty (30) days following receipt of the Step 2 response required under Article 9, Grievance Procedure.

C.     As soon as possible and in no event later than ten (10) days after the Director of Employee Relations receives written notice of the Union's decision to arbitrate, the parties shall agree upon an arbitrator. If no agreement is reached within said ten (10) days, the arbitrator shall be selected from the following list of five arbitrators:

> Mai Ling Bickner
> Fred Horowitz
> Michael Prihar
> Philip Tamoush
> Michael Rappaport

by alternately striking names until one name remains. The party who strikes the first name shall be determined by coin flip.

D.     The fees and expenses of the arbitration will be borne equally by the parties. Each party shall bear the expense of the presentation of its own case.

E.     The arbitrator's authority shall be limited to interpreting the provisions of this Agreement and the arbitrator has no authority to add to, subtract from, or change the agreement in any way. The arbitrator's decision will be final and binding upon all parties concerned.

8

### ARTICLE 11  ASSOCIATION MEMBERSHIP

A.     Membership.  As a condition of continued employment, RNs covered by this Agreement shall, within 31 days after hiring or the effective date of the Agreement, whichever is later, join the Union or pay the Union a service fee in an amount not to exceed the standard fee, periodic dues, and general assessment of the Union.  However, any RN who is a member of a bona fide religion, body or sect which has historically held conscientious objections to joining or financially supporting labor organizations shall not be required to join or financially support the Union as a condition of employment.   Such RN may be required, in lieu of periodic dues, initiation fees, or agency shop fees, to pay sums equal to such dues, initiation fees, or agency shop fees to a non-religious, non-labor, charitable fund exempt from taxation under Section 501(c)(3) of the Internal Revenue Code, chosen by such RN from a list of at least three such funds designated by the Employer and the Union.  Proof of such payments shall be made on a monthly basis to the parties as a condition of continued exemption from the requirement of financial support to the Union.

B.     New Employee Notice.  The Employer shall give to each RN at the time of employment, the current CNA form authorizing voluntary payroll deductions of monthly dues.  Within thirty (30) days after execution of this Agreement, and every ninety (90) days thereafter, the Employer will provide the Union with a database (in Excel or compatible format) master list of all employed RNs who are subject to the provisions of this Agreement, giving the names, addresses, telephone numbers, classifications, units, shifts, current wage rates, employment status, social security numbers and dates of hire.  On or before the tenth day of each month, subsequent to the establishment of the master list, the Employer will forward to the Union a database including the names, addresses, telephone numbers, classification, units, shifts, current wage rates, employment status, social security numbers, and dates of hire of new hires and the names and units of RNs who have resigned or who have been terminated.

C.     Maintenance of Membership.  Upon notice from the Union and after counseling by the Union, an RN who fails to meet required membership or pay the service fee shall be given 14 days notice of termination or shall be allowed to resign with proper notice to the Employer.

D.     Payroll Deduction

        1.     The Employer shall deduct, on a pay period basis, the regular prorated monthly periodic Union membership dues from the salary of each RN who submits a standard written authorization to the Employer.

        2.     Each deduction for the Association shall be made by the Employer and shall be remitted to the Union at:

              California Nurses Association
              2000 Franklin Street
              Oakland, CA  94612

## ARTICLE 12  BARGAINING UNIT INFORMATION

On a facility and departmental basis, the Employer shall supply an electronic database list of all RNs covered by the Agreement by name, address, telephone number, social security number, e-mail address, wage rate, seniority date, employment status, FTE count, job title, unit and shift to the union no later than 31 days after the ratification of this Agreement.

Thereafter, the Employer shall supply monthly the above information regarding hired and terminated RNs and RNs transferring into the bargaining unit during the preceding month and a master list quarterly.

## ARTICLE 13  BULLETIN BOARDS

The Union shall have a 24" x 36" bulletin board located outside the cafeteria entrance for posting official union business, but not Union or other Union campaign materials.  No material shall be posted on the cafeteria bulletin board until approved for posting and initialed by Executive Director of Human Resources.  Posted material shall bear the date and identity of the Union. Any material posted by the Union in any location shall not be controversial, misleading, contain any deliberate misstatements, or violate any federal, state or county laws.  In addition, the Union shall not post any notice which (1) involves a politician, political candidate, or political issue,  or (2) disparages or demeans the Employer, its affiliates, or related entities or any individual.

10

## ARTICLE 14  RN REPRESENTATIVES

A.     The Union may appoint RNs to serve as CNA Nurse Representatives.  The Union shall notify the Employer in writing, pursuant to notice provisions of this Agreement, of the names of the Nurse Representative and the specific authority of the Nurse Representative to act on behalf of the Union.  The function of the Nurse Representative will be to handle grievances and to ascertain that the terms and conditions of the Agreement are observed.  A Nurse Representative shall not conduct union business during his or her working time.  A Nurse Representative shall not, in conducting union business, interfere with the working time of any other employee.

B.     In the event the Employer schedules a meeting at which a Nurse Representative's presence is required, the Nurse Representative shall not lose pay as the result of attending such meeting.

C.     There shall be no more than two Nurse Representatives (or one Nurse Representative and one Union Representative) in attendance at any grievance or representational or investigatory meeting, unless otherwise agreed to by the Employer in advance of the meeting.

D.     Grievance and representational meetings shall not be conducted during working time, unless scheduled by the Employer.  The Grievant and one RN Representative shall be paid at their straight-time base rate of pay for attending such meetings.   This time shall not be considered as hours worked for overtime purposes.

E.     An RN requesting representation for a meeting covered by Section D above shall be given twenty-four (24) hours to procure a representative.

## ARTICLE 15  ASSOCIATION VISITATION

Duly authorized staff representatives of the Union shall have access, upon prior approval from the Executive Director, Employee and Labor Relations or his/her designee, to the Employer's facilities for purposes related to the administration of this Agreement.  Such approval shall not be unreasonably withheld.  Such staff representative shall not interfere with the work of employees or the confidentiality of patients, and shall comply with security regulations applicable to visitors of the Hospital.  Staff representatives shall not conduct Union business in any patient care areas of the Hospital.  If the staff representative wishes to meet an employee such meeting shall be held before or after the RN's shift or on non-work time such as the RN's lunch period.

11

## ARTICLE 16 PROFESSIONAL PRACTICE COMMITTEE

A.      Objectives:  The objectives of the Professional Practice Committee (PPC) shall be to consider constructively the professional practice of RNs including improvements related to the utilization of personnel, and to recommend ways and means to improve patient care and the health and safety of RNs.

B.      Composition:  The Employer shall have a PPC composed of RNs appointed by the Union who are employed at the Hospital and covered by this agreement.  The number of PPC members shall be 11, which includes two (2) co-chairs.

C.      Meetings

1.      Regular meetings and Compensation:  The PPC shall schedule one regular meeting per month.  Committee members shall be entitled to 4 hours pay/month at the RNs straight time rates for the purposes of attending such committee meeting or meetings.  Each PPC co-chair shall be entitled to 12 hours pay/month.  Such meetings shall be scheduled so as not to conflict with the work schedules of the RN members.

2.      The PPC may request meetings with the Senior Vice President of Patient Care Services or his/her designee.  These requests shall go to the Employee Relations Director of Nursing (Service Director Patient Care Services or designee).  Nursing Management may also request special meetings with the PPC.

3.      The Employer shall respond to the PPC within 21 days in writing.

4.      The PPC may reserve conference rooms per the Employer's reservation system.

D.      New RN Orientation:  The PPC may attend and meet with new RNs for 30 minutes at the conclusion of the agenda unless another time in the program is mutually agreed upon in order to explain the purpose and functions of PPC using a presentation that is previewed by the Employer.

12

## **ARTICLE 17 NURSING PROCESS STANDARDS**

A.   An RN shall directly provide:

1.   The initial assessment and ongoing care of a patient admitted to a patient care area as outlined in the Employer's policies, procedures, practices and standards of care.

2.   Ongoing patient assessments, which shall be performed and documented in the patient's medical record as indicated by physician's orders or nursing standards. An RN may assign to a licensed or unlicensed staff the collection of data, subject to any limitation of their licensure, certification, level of validated competency, or scope of practice.

3.   The planning, supervision, implementation and evaluation of the nursing care provided to each patient. The implementation of nursing care may be delegated by the RN responsible for the patient to other licensed nursing staff, or may be assigned to unlicensed staff, subject to any limitation of their licensure, certification, level of validated competency, or scope of practice.

4.   The assessment, planning, implementation and evaluation of patient education, including ongoing and discharge teaching of each patient. Any assignment of specific patient education tasks to patient care personnel based on the legal scope of practice of those personnel may be made by the RN responsible for the patient.

B.   Both the Union and the Employer recognize that an RN is responsible for applying the nursing process as follows:

1.   Formulates a nursing diagnosis through observation of the patient's physical condition and behavior, and through interpretation of information obtained from the patient and others, including the health team.

2.   Formulates a care plan, in collaboration with the patient, which ensures that direct and indirect nursing care services provide for the patient's safety, comfort, hygiene, and protection, and for disease prevention.

3.   Performs skills essential to the kind of nursing action to be taken, explains the health treatment to the patient and family, and teaches the patient and family how to care for the patient's health needs.

4.   Assigns or delegates tasks to other care givers based on the legal scope of practice of those care givers and on the preparation and capability needs in the tasks to be assigned or delegated, and provides clinical supervision of those care givers.

5.   Evaluates the effectiveness of the care plan through observation of the patient's physical condition and behavior, signs and symptoms of illness, and reaction to treatment through communication with the patient and health team members, and modifies the plan as needed.

13

    6.    Acts as the patient's advocate.

C.    This article is not intended to be an exhaustive list of the duties and responsibilities performed by RNs. It is only intended to be a summary of Nursing Process Standards.

## ARTICLE 18 PATIENT STAFFING SYSTEM

A.    The Employer shall have a staffing system based on assessment of patient needs in conformance with the requirements of the Joint Commission on the Accreditations of Healthcare Organizations (JCAHO) and Title XXII of the California Code of Regulations ("Title XXII"). Nothing in this Article is intended to conflict with or impose greater obligations than exist under the provisions of Title XXII relating to Patient Classification systems.

B.    The patient classification system used by the Employer for determining nursing care needs of individual patients shall:

    1.    reflect the assessment of patient requirements made by the RN, and

    2.    provide for shift-by-shift staffing based on those requirements

The system shall include, but not be limited to, the following elements:

    3.    individual patient care requirements, including the nursing process;

    4.    the patient care delivery system;

    5.    generally accepted standards of nursing practice; and

    6.    the unique nature of the Employer's patient populations

C.    The Employer shall have a Patient Classification System Committee appointed by the Vice President of Patient Care Services whose composition shall include two (2) members selected by the PPC. Attendance of a Patient Classification System Committee meeting shall be compensable as time worked. Such Committee shall perform those functions required by Title XXII, Section 70217. If review by the Patient Classification System Committee reveals that adjustments are necessary to the patient classification system in order to assure accuracy in measuring patient care needs, such adjustments shall be implemented in accordance with Title XXII.

D.    In the event the scheduled staffing is insufficient to meet the specific staffing called for by the system, the Hospital will make every reasonable effort to procure additional personnel. Should persistent shortages be identified, the hospital will take reasonable and practical steps to ensure safe patient care.

E.    As required by law, the Hospital recognizes its duty to maintain a staffing system which complies with AB 394, as amended, and the regulations effective January 1, 2004 promulgated

pursuant to AB 394, as amended. Nothing in this Article is intended to conflict with, impose or create greater obligations, including remedies, than exist under the laws. Any issues or disputes concerning this Article shall be addressed by the Professional Practice Committee pursuant to Article 16 and shall not be subject to Article 9 or 10.

## ARTICLE 19 PERSONNEL CATEGORIES

A.      Full-time. A full-time RN is defined as one who is eligible for benefits and is hired to regularly work, on a continuing basis 72 to 80 hours/pay period.

B.      Regular Part-time. A regular part-time RN is defined as one who is eligible for prorated benefits and is hired to regularly work at least 40 hours but less than 72 hours within a pay period.

C.      Non-benefit Staff-Per Diem. A Full-Time or Part-Time non-benefit RN who meets the same work requirements of a regular FT or PT employee shall be treated the same for the purpose of scheduling, staffing, layoff and reinstatement. These employees may also be eligible to participate in the applicable retirement plan pursuant to the terms of the plan.

Non-benefit staff-Per Diem shall not be eligible for any employee benefits, including but not limited to, the following: Medical, Dental, Vision, Life, LTD, STD, PTO, Flex Plans, Paid Educational Days, Tuition Reimbursement, Jury Duty, Bereavement or voluntary benefits.

Non-benefit Staff-Per Diem may not convert to a benefit eligible status, nor may a benefit eligible employee convert to a Non-Benefit Staff-Per Diem status without first having completed six (6) months in that status.

D.      Resource. Resource RNs are defined as those who, whether scheduled or not, (1) work on an as-needed or irregular basis, or (2) are called for work when other employees are unavailable, or (3) accept work assignments subject to their own availability. RNs in the category are not eligible for benefits. Resource RNs' work commitments are regulated by the resource category agreement which they agree to work. These RNs are eligible for pension benefits as may be defined under the applicable pension plan.

E.      Nothing in this Article shall be construed to constitute a guarantee of hours of work per day or per week or of days of work per week.

F.      Newly hired RNs shall be on probationary status for ninety (90) days.

15

## ARTICLE 20  SCHEDULING

The Employer shall publish work schedules at least 23 days in advance of their commencement date. Six weeks prior to schedule publishing, Self Scheduling will be opened to allow RNs to request scheduled workdays or time off. Self Scheduling closes two weeks before schedule is published. If an RN does not submit a request in this time period, the RN may be scheduled according to department needs by the unit manager. Once the schedule is published no requests for scheduled time-off need be permitted. Any change in the published schedule shall require mutual agreement of the Employer and the affected RNs.

## ARTICLE 21  CALL OFFS

A.     Any RN who is called-off may be placed on stand-by at the discretion of management. RNs who are placed on stand-by shall be compensated in accordance with the provisions defined in Article 26 Standby and Call Back Pay.

B.     RNs who are called off and choose to be available shall be compensated at their regular rate of pay if work becomes available and they report back to work at the hospital.

C.     RNs who are budgeted have the option to take PTO or unpaid budget hours ("UB").

D.     The order of call off shall be:

    1.     Resource on DT or OT with In-house Registry pay.

    2.     Full-time, part-time and Full-time or Part-time Non-Benefit Staff-Per Diem on DT or OT with In-house Registry pay.

    3.     Resource on DT.

    4.     Resource on OT.

    5.     Full-time or part-time and Full-time or Part-time Non-Benefit Staff-Per Diem on DT.

    6.     Full-time or part-time and Full-time or Part-time Non-Benefit Staff-Per Diem on OT.

    7.     Resource on In-house Registry pay.

    8.     Part-time and Part-time Non-Benefit Staff-Per Diem on In-house Registry pay.

    9.     Full-time and Full-time Non-Benefit Staff-Per Diem on In-house Registry pay.

    10.    Volunteers.

    11.    Resource on straight time.

12.     Travelers and Registry

13.     Part-time, Full-time, and Non-Benefited Staff on a rotational basis.

E.     At the discretion of management, Full-time, Part-time, and Non-Benefited RNs who are called off may displace Resource RNs on another unit provided the Full-time, Part-time, or Non-Benefited RN is qualified to perform the work.

F.     When call offs in a unit are due to an overlap of shifts, Volunteer RNs will be called off first.   After all Volunteers have been called off, RNs will be called off following a rolling integrated seniority list.   When call offs are due to an overlap of shifts, a partial shift call off is permissible.

## ARTICLE 22 FLOATING

A.     RNs will be floated in accordance with state and federal laws and regulations.

B.     An RN shall be assigned only those duties and responsibilities for which she or he has current validated competencies and in accordance with their unit based skills roster.

C.     Only an RN who has demonstrated competency for patient care in a unit to which the RN has been assigned shall act as a resource for those individuals who do not have validated nursing competencies for the unit.

D.     If an RN floats prior to the completion of the competency standards for a patient care unit, patient care assignments shall be subject to the following restrictions.

1.     Assignments shall include only those duties and responsibilities for which competency has been validated.

2.     RNs shall not be assigned total responsibility for patient care until all standards of competency for the unit has been validated.

3.     RNs will not be floated until they complete orientation and are competency validated.

4.     New Grad RNs or any RNs new to a unit will not be floated until they complete unit specific orientation.  Orientation shall apply to each unit separately.

5.     There shall be no "bumping" or "double" floating, i.e. floating one RN to a unit in order to displace or "bump" another RN or floating a nurse to more than one unit per shift.

E.     RNs with twenty-five (25) years or more seniority shall not be required to float.

F.     RNs with 20-24 years of seniority shall not be required to float unless all other RNs have floated twice in a pay period or there are no RNs with less than twenty (20) years of seniority.

17

G.  RNs shall float in the following order:

  1.  Volunteers

  2.  Registry and Travelers

  3.  Resource

  4.  Part-time/Full-time/Non-Benefited staff per diem in rotation

H.  There shall be no mandatory floating between Clusters.  Clusters are defined as:

  1.  Critical Care – 3S/7CU,7S/7E/Adult ICU Float Pool

  2.  Medical/Surgical/Telemetry – 3W/7W, 3E, 4, 5, 6/Adult general Float Pool

  3.  MCH Women's

  4.  MCH Pediatrics Core, Peds West, Hem-Onc, Peds general float pool, and NICU level D acuity only

  5.  MCH PICU/MCH NICU/Peds intensive float pool

  6.  Procedural for recovery from sedation only, OPS, AMU, holding GI, Special Procedures, Cardiac Procedure Unit, Cardiac Cath, MRI, CT

  7.  MRI, CT, IR

  8.  Acute Specialty Rehabilitation Unit

  9.  Emergency Department

  10.  Operating Rooms (MOR, WOR, CVOR, MCH OR)

  11.  Post anesthesia care units (WPACU, LBM PACU, and MCH PACU)

  12.  LBM chemo Certified RN to LBM Ambulatory Infusion Center

  13.  All areas may float to the ED, PACU or CPU for admitted "Level of care" holds, as a part of a declared and written contingency plan

  14.  MCH Chemo Certified Peds to MCH Peds Infusion Care Center

  15.  Peds Infusion Center, Peds Sedation

  16.  Pediatric Outpatient Clinic

18

I.      Pursuant to the Parties' agreement on Article 22 –Floating, all areas may float to the Emergency Department for admitted "level of care" holds as a part of a declared written contingency plan.    The Hospital will draft the written contingency plan, and following discussion(s) with the Union's floating subcommittee, the Hospital will finalize the written contingency plan.    The written contingency plan discussed herein shall apply only to RN's floating to the Emergency Department and shall not be deemed or construed to apply to any other provision of Article 22 or the Collective Bargaining Agreement.

## ARTICLE 23  SENIORITY, LAYOFF, RECALL

A.      Seniority

1.      Seniority shall mean date of hire with the Employer or another Memorial Hospital facility.

2.      Seniority dates shall only be adjusted for:

    (a)      Break in service from the Employer associated with a voluntary separation of less than 12 months.

    (b)      Leave of absence (except for military leave, worker's compensation and state or federal family medical leave.)

3.      After a probationary period of 3 months, seniority shall only be broken by:

    (a)      Break in service associated with a termination of more than 12 months,

    (b)      Twelve (12) months of layoff without recall to a permanent position,

    (c)      Failure to respond to recall notice within three (3) working days ,after receipt of certified notice of recall,

    (d)      Termination for just cause,

    (e)      Failure to report to work upon expiration of an authorized vacation or Leave of Absence.

4.      A seniority list of RN names and seniority dates, updated quarterly, shall be posted on each nursing unit and sent to the Union.

B.      Layoff

1.      Layoff is defined as a permanent workforce reduction anticipated to last more than fourteen (14) days.

2.      Prior to a layoff, the Employer and the Union shall meet and confer about the impact of such a reduction.

3.    Providing an RN is qualified to perform the available work, seniority shall be the controlling consideration in a layoff or recall.

The order of Layoff shall be:

     (a)    Registry

     (b)    Travelers

     (c)    Resource

     (d)    Regular, full & part-time, including Non-Benefit Staff-Per Diem.

4.    Layoff of RNs in categories (c), and (d) of Paragraph 4 above shall be accomplished as follows:

     (a)    A laid off RN shall fill any vacancy that the Employer has for which the RN is qualified. An RN shall not be required to fill a vacancy that involves a change in shift or numbers of hours worked.

     (b)    If there is no vacancy as described in (a), such an RN shall displace the least senior RN on his/her unit of the same status (full-time, part-time, Non–benefit Staff-Per Diem) and shift.

     (c)    If no vacancy exists as described in (b), the laid off RN shall have the option of displacing the least senior RN in his/her unit who may be on another shift and/or status.

     (d)    If no such position exists as described in (c), the RN may displace the least senior RN, of the same status and shift, provided the RN is qualified.

     (e)    If no vacancy exists as described in (d), the laid off RN shall have the option of displacing the least senior RN who may be on another shift and/or status.

     (f)    For the purposes of this Article, an RN shall have up to a 60-day period to demonstrate that he/she can perform the duties of the position. In addition, qualified shall mean the necessary skills, education, certifications or credentialing needed to perform the duties of the position.

C.    Recall

1.    All vacancies covered by this Agreement shall first be filled according to Article 24 Job Posting.

2.    A vacant position not filled as provided in 1 above shall be made available to an RN on the recall list. The position shall be offered to an RN laid off from a unit within the RN's competencies in which the position is available in reverse order of layoff. In

20

the event there are no RNs on the recall list from the unit in which there is a job opening, the position shall be offered to an RN on the recall list in reverse order of layoff, provided the RN is qualified for the position.

3.      An RN on the recall list may refuse up to three offers of staff positions prior to being removed from the recall list. Otherwise, laid off RNs shall remain on the recall list for twelve (12) months.

4.      Any RN on a recall list shall be responsible for providing the Hospital with a current address and telephone number.

D.      Severance Pay

1.      Laid off benefited RNs who were not provided with a notice period commensurate with their length of service below shall receive pay according to the following schedule:

|    | Length of Service | Notice of Intent |
|----|-------------------|------------------|
| a. | Temporary employees and staff with less than 3 months | No Pay |
| b. | 3 Months – 4 Years | Two Weeks |
| c. | 5 – 10 Years | Three Weeks |
| d. | 11 – 15 Years | Four Weeks |
| e. | Over 15 Years | Five Weeks |

All severance pay is based upon an RN's regularly scheduled hours. Also, employees are not eligible for notice if they have been on a Leave of Absence for any reason for a period in excess of four months at the time of a layoff.

2.      In the event notice of layoff is given in accordance with Paragraph 1, above, the Employer agrees to meet and confer with the Union about the issue of whether severance pay will be provided to such laid off RNs.

3.      The Employer does not provide severance pay to employees upon termination of employment, except as provided in this Paragraph D.

21

## ARTICLE 24  JOB POSTINGS, TRANSFERS AND PROMOTIONS

A.     Job Vacancies.  Job vacancies will be posted in the unit for 5 days.  In the event the vacancy is not filled according to paragraph C(1) below, the job vacancy will be posted on the bulletin boards located outside the Human Resources Office and by the cafeteria exit and on the Intranet for seven (7) calendar days prior to filling the position.  The Employer may temporarily fill the position during the posting period.

B.     Eligibility.  In order for an employee to be transferred or promoted within the same unit or another unit, the employee must qualify for the position on the basis of education and experience.  To be eligible for a transfer or promotion, an employee must have completed the probationary period in his or her current position unless approval is obtained from the appropriate Administrative and Management persons.  To be eligible for a transfer or promotion, an employee also cannot have received a formal disciplinary action within six (6) months of applying for the position.  Qualified for this Article means the necessary skills, education, ability, certification, or credentialing needed to perform the duties of the position.  An RN will have up to a 90-day period to demonstrate that she/he can perform the duties of the position.  During the period, the Employer will make reasonable efforts to return the RN to his or her former position and if available, shift or floor.

C.     Awarding Position

        1.     RNs who work on the unit where the vacancy exists shall be given preference to fill such vacancies by seniority over RNs outside the unit.

        2.     If a vacancy is not filled as provided in C.1. above, RNs in the clinical area shall be selected by the Employer based on the qualifications defined in B above, and if two or more RNs are relatively equally qualified as defined in B above, then seniority shall prevail.     Any bargaining unit employee who has been or who is promoted to a supervisory or management position shall retain their bargaining unit seniority.  Supervisory or management RNs who have been promoted within 2 years of the job posting may apply for open bargaining unit positions.  They may use their bargaining unit seniority for a period of two years from their transfer out of the bargaining unit to apply for such positions.  Such employees shall retain their bargaining unit seniority, but shall not accrue bargaining unit seniority while in a supervisory or management position.

        3.     If a vacancy is not filled as provided in C.2. above, it will be filled by RNs outside the clinical area selected by the Employer based on qualifications as defined in B above, and if two or more RNs are relatively equally qualified as defined in B above, then seniority shall prevail.

        4.     RNs who submit bids after the seven (7) calendar days provided for in A above shall have no preference over outside applicants.

D.     Unfilled Positions.  If the vacancy is not filled as provided above, the Employer may fill the position with outside applicants, except that if there are RNs on the Recall list, they shall have preference over outside applicants.

E.    Transfer for Other Reasons. The Employer reserves the right to transfer an employee for lack of competence, failure to meet job requirements, just cause discipline or non-licensure. The Employer may temporarily transfer an RN who possesses special skills or other abilities to another area of patient care provided the Employer has posted such position and such transfer does not exceed 45 days and may be extended with mutual agreement.

## ARTICLE 25 HOURS OF WORK

A.    Ten Hour and Twelve Hour Schedules:

1.    10-hour schedule RNs. The normal work day shall consist of ten (10) hours. Work in excess of the (10) hours in a work day shall be paid at the rate of time and one-half the RN's regular rate up to twelve (12) hours, and double time after twelve (12) hours. Time and one half their regular rate of pay will be paid for all hours worked in excess of forty (40) hours in one week.

2.    The Employer will maintain the current overtime based pay program for all 12 hour shift RNs.

3.    The Employer may implement 10 or 12-hour shifts by holding secret ballot elections among the RNs in the affected shift or part of a shift in a unit or department by job code. In the event that a majority of RNs who vote, vote for converting to a 10-hour or 12-hour shift schedule, the Employer may then implement the 10-hour or 12-hour shift schedule.

4.    There shall be no more than one election among any affected group of RNs as defined above during the term of this Agreement, unless one-third (1/3) of the RNs in the affected group request an election.

5.    Twelve (12) hour shift employees will be paid the twelve (12) hour rate for all hours worked. PTO, paid educational days, jury duty, bereavement, and any additional shifts scheduled for eight (8) hours or less will be paid at the respective benefit rate.

B.    Rest and Lunch Periods:

1.    The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. The rest period shall be in the middle of each work period insofar as is practicable. However, a rest period need not be authorized for RNs whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages. Rest periods may not be used to extend an RN's meal period, or permit RNs to leave work prior to their scheduled quitting time. Since rest periods are treated as hours worked, an RN may be restricted to the premises while on rest period.

The Employer will provide meal periods in accordance with State law.

2.    In the event an RN does not receive a break or meal period as described above, the RN will be paid for such missed break or meal period pursuant to any applicable IWC Regulation in effect at the time.

3.    A twelve (12) hour shift RN may waive either the first or the second meal period with the mutual consent of the supervisor.

C.    Reporting Pay:

1.    If an RN reports to work on a scheduled workday but is not put to work or is furnished with less than half his or her usual or scheduled day's work, he or she will be paid for the greater of (1) half his or her usual or scheduled day's work (up to four hours), or (2) two hours at his or her regular rate of pay. RNs may waive this provision if they choose to leave the Hospital in the event of a shortage of work. This provision shall not apply in the event that (1) the RN is told not to report prior to the time that said RN leaves his or her regular place of residence, (2) the Hospital makes a reasonable effort to notify the RN not to report at least two (2) hours prior to his or her scheduled starting time, (3) the RN reports to work unfit, (4) the RN refused to perform available work, (5) the RN leaves work of his or her own volition or is sent home for disciplinary reasons prior to completion of the two hours of said RN's usual or scheduled day's work, or (6) failure of utilities, acts of God or other circumstances beyond the reasonable control of the Employer, interfere with the work being performed.

2.    All RNs shall be notified of schedule cancellations at least 2 hours before the start of their shifts. RNs who do not receive timely notice of schedule cancellation shall receive reporting pay.

D.    Vacation Scheduling:

1.    Vacation time will be granted consistent with patient care needs for the unit. Requests for vacation shall not be unreasonably denied.

2.    Vacation Approvals:

(a)    Vacations will be approved by the supervisor using unit designated procedures during the defined sign-up period for each area ("vacation calendar"). During this time frame, approvals will be granted based on seniority with consideration of rotation system.

(b)    Approval of vacation time will be based on a rotation system. RNs may only take same time off once every three years unless this time is available after all other staff have had an opportunity to sign-up during the designated sign-up period for the unit.

(c)    After the defined sign-up period is over, additional vacation time may be granted based on the availability of time off on the vacation calendar and with consideration of the date of request is received (approvals after the sign-up period will be on a first come, first served basis).

24

(d)     Vacations which have been formally approved by the Unit Manager will not be displaced by subsequent vacation requests of other staff.

(e)     Vacation requests are not granted until final approval is given by the Manager/Supervisor. Requests for vacation will be approved within 14 days after the closing of the sign-ups.

(f)     After all of the above factors have been considered, preference in vacation scheduling will be given to employees with the most seniority when more vacation requests are received for specific time periods than can be granted.

(g)     Vacation requests shall be considered according to the days that the Registered Nurse requests vacation.

(h)     The Employer will consider single day PTO requests after vacations have been awarded. Single day PTO requests shall not be included within the three (3) year rotation system for vacations.

(i)     RNs who have exhausted PTO due to Employer shift cancellations may use unpaid leave to cover pre-scheduled and approved vacation days.

3.      Prime Time Vacations: With respect to Christmas Holiday week, New Year's Holiday week, Thanksgiving Holiday week and Spring Break (one week before and one week after Easter), an RN shall not be granted more than one of these weeks per year as vacation. However, additional vacation time off during the above referenced holiday weeks may be granted based on specific unit staffing needs. Vacation requests granted during holiday time periods also include the holiday contained within. Such holiday will include the Registered Nurse's holiday request as their first choice.

E.      The parties shall meet and confer prior to implementing a time clock and/or attendance system. If no agreement is reached and the parties are at impasse, the Employer may implement its last proposal.

F.      RNs on a unit-by-unit basis may request to vote on an alternative workweek schedule ("AWS") under which RNs will be paid a straight time rate of pay for all hours worked on a shift up to 12 in a workday and up to 40 hours in a workweek. Under this AWS, such employees shall not be subject to the 8-and-80 overtime standard.

Votes will be conducted on a unit-by-unit basis prior to the implementation of the changes set forth herein. The AWS will only become effective if at least two-thirds (2/3) of all affected employees in the work unit vote in favor of the AWS.

RNs within units who successfully vote to implement an AWS will receive an increase in their 12-hour base rate of pay. In order to determine the new 12-hour shift straight time rate, the current 12-hour rates for each step level, as set forth on the wage grid appended to the Collective Bargaining Agreement, will be divided by .857. RNs working under the AWS will be paid straight time at the new 12-hour straight time rate for the first 12 hours in a workday, double

time for hours over 12 in a workday and time and one-half for hours over 40 in a workweek. However, overtime will not be pyramided. Double time premiums will be credited towards the Employer's weekly overtime obligations.

Should a unit adopt an AWS as set forth herein, 12-hour straight time RNs shall be compensated at 1.5 times their base rate of pay if called upon to work on standby. (See Article 26: Call-Back Pay).

## ARTICLE 26  COMPENSATION

A.     Pay Increases

1.     First contract year:  Effective March 4, 2012 each regular full-time and part-time RN moved to the appropriate wage step on the wage grid based on their years of active RN licensure (defined as the years in which an RN kept his/her license current), either in the U.S. or abroad.

      (a)     Any RN who would receive less than a 3% increase by moving to their appropriate step rate shall receive a lump sum bonus, so that the total amount of their increase shall equal 3%.

2.     Second, third, and fourth contract years: Effective the first full payroll period commencing December 9, 2012, each regular full-time and part-time RN shall move to their appropriate experience step on the wage grid.  Any RN who would receive less than a 3% increase by moving to their appropriate step on the wage grid, shall receive a lump sum bonus, so that the total amount of their increase shall be 3%.  Effective the first full payroll period commencing December 8, 2013, each regular full-time and part-time RN shall move to their appropriate experience step on the wage grid.  Any RN who would receive less than a 3% increase by moving to their appropriate step rate on the wage grid, shall receive a lump sum bonus, so that the total amount of their increase shall be 3%. Effective the first full payroll period commencing December 7, 2014, each regular full-time and part-time RN shall move to their appropriate experience step on the wage grid. Any RN who would receive less than a 3% increase by moving to their appropriate step rate on the wage grid, shall receive a lump sum bonus, so that the total amount of their increase shall be 3%.

3.     All increases are pursuant to the agreed upon wage grid which is Appendix A to this Agreement.

4.     No RN shall receive a lower pay rate as result of this contract.

5.     Pay rates may be increased by mutual agreement of the Employer and the Union.

B.    Experience Pay Steps

RNs shall not be hired at a rate that exceeds their years of qualifying experience – see Appendix A to this Agreement.

C.    LBMMC/MCH Non-Benefit-Per Diem and Resource Wages, Categories and Requirements

1.    All Non-Benefit-Per Diem and Resource positions require that an RN has been validated as competent or demonstrates competency during their 90-day probationary period.

2.    From Appendix B [Non-Benefit-Per Diem and Resource Wages, Categories and Requirements], a Resource RN shall:

    (a)    with the concurrence of management, select an "Option";

    (b)    comply with work commitment/requirements of that "Option"; and

    (c)    be compensated according to that "Option".

3.    Failure to meet the work commitment/requirements as set forth in Appendix B of this Agreement may result in a change in commitment, assignment cancellation and/or termination from the Employer's Resource program.

4.    Nothing in this Article or in Appendix B of this Agreement shall constitute a guarantee of work or a specific number of hours per shift or schedule.

D.    Night Shift Bonus Plan:

1.    Purpose: Long Beach Memorial Medical Center has established a bonus plan (Plan) designed to provide an incentive to eligible individuals to work on the night shift. It rewards eligible employees by providing them increased income in the form of a bonus. The bonus is intended to compensate employees for the inconvenience involved in working nights.

2.    Eligibility: Employees eligible to receive a night shift bonus under this program are full-time and part-time benefit-eligible Registered Nurses and Committed full-time and part-time resource RNs.

For purposes of this policy, the night shift is defined as any shift which meets both of the following criteria: (1) Commences on or after 8:00 p.m. or prior to 3:01 a.m.; and (2) At least 50% of scheduled hours are worked between 12:00 a.m. and 7:00 a.m.

If an employee is sent (or volunteers to go) home early due to reduced staffing needs, and as a result fails to meet the 50% test referenced above, an exception will be made, and the applicable differential paid. Supervisors are responsible for using the appropriate pay code to indicate why the remaining hours were not worked.

27

3.   Computations and "Hours Worked":

    (a)   <u>Computations</u>: Eligible employees must be classified as a shift three (3) employee regularly assigned to work full-time on the night shift as defined above and shall earn a bonus payable at the rate of $1.50 per hour.

        At least 50% of scheduled hours must be worked between 12:00 a.m. and 7:00 a.m. in order for hours on that particular shift to count toward the bonus. Once that threshold has been met (i.e., at least 50% of scheduled hours are worked between 12:00 a.m. and 7:00 a.m.) then all hours, and only those hours, worked between 11:00 p.m. and 7:00 a.m. on that particular night shift will count toward the bonus.

        If less than 50% of scheduled hours have not been worked between 12:00 a.m. and 7:00 a.m. on a particular shift, then hours worked between 11:00 p.m. and 7:00 a.m. on that particular shift will not count toward the bonus.

    (b)   <u>Hours Worked</u>: The bonus shall include straight time, overtime and "call-back hours" for the purpose of calculation of said bonus. However, "stand-by hours" will not be counted as hours "worked" for purposes of this bonus plan.

        Hours not eligible for payment shall be any PTO, Educational / Training Programs, Blood Donor Days, Bereavement, nor any other non-worked time. For example, if an employee is scheduled to work the night shift uses PTO for all or part of a particular shift, those PTO hours shall not count toward the total number of hours considered as "worked".

    (c)   <u>Payment</u>: Bonus payments shall be computed and paid on a bi-weekly basis with the employees' regular paycheck, subject to withholding and other regulatory obligations.

        An employee is responsible for correctly annotating her/his timecard on a daily basis. Employees shall annotate hours worked toward the bonus as NBP (Night Bonus Pay) on their timecards. Each Manager/supervisor shall validate the hours worked, and sign-off on an employee's timecard. Payroll will not be responsible for auditing of discrepancies.

E.   <u>Relief Coordinator Pay</u>: RNs will be paid an additional differential for all time spent performing coordinator duties:

| | |
|---|---|
| 1st Year: | $2.50 |
| 2nd Year: | $2.50 |
| 3rd Year: | $2.50 |
| 4th Year: | $2.50 |

28

F.    Preceptor Pay:  RNs who are assigned to perform the duties of preceptor will be paid an additional differential for time spent as a preceptor:

| | |
|---|---|
| 1st Year: | $2.00 |
| 2nd Year: | $2.00 |
| 3rd Year: | $2.00 |
| 4th Year: | $2.00 |

G.    Standby and Call Back Pay

    1.    Standby Pay

        (a)    RNs on standby are responsible for ensuring that they can be reached promptly by telephone or pager and are expected to respond and report to work within 45 minutes of being called.

        (b)    Standby hours are not considered hours worked for any purpose.

        (c)    RNs on standby shall be paid when on standby as follows:

| RNs | Rate |
|---|---|
| All RNs | $8.50 |

    2.    Call Back Pay When On Standby

        (a)    If called to work on standby, an 8-Hour RN shall be compensated at 1.5 times his/her the base rate of pay.

        (b)    If called to work on standby, a 12-Hour RN (not on an AWS) shall be compensated at 1.75 times his/her base rate of pay

        (c)    Call back pay starts when the RN arrives at his or her workstation.

        (d)    RNs called to work when on standby shall be compensated at least 2 hours of call back time.

    3.    Call Back Pay When Not On Standby

        (a)    Time will be paid per FLSA and IWC regulations.

H.    Shift Differential
(All 12 hour shift employees working PMs and Nights will receive the same flat rate)

    1.    RNs shall be paid PM differential for a shift that commences on or after 12:00 PM, or prior to 8:00 PM and at least 50% of scheduled hours are worked after 3:30 PM. RNs shall be paid night shift differential for any shift which commence on or after 8:00 PM, or prior to 3:01 AM and at least 50% of scheduled hours are worked between 12:00 AM and 7:00 AM.

    (a)    Shift differential for 12-hour shift employees shall be paid as follows:

- 3:00 PM – 11:00 PM  PM Differential

- 11:00 PM – 7:00 AM Night Differential

2.    If an RN works two (2) or more hours of overtime, which extends into the following shift (evening or night), the differential for that shift will be applied to all of the overtime worked.

3.    If an RN is scheduled to work an evening or night shift, but at the request of his/her supervisor, reports to work prior to the time which qualifies for either the evening or night differential, he/she will be entitled to the appropriate differential for all hours worked after either 12:00 PM or 8:00 PM.

4.    Day shift RNs who report to work prior to or at 3:00 AM and continue working after 7:00 AM, are eligible for a maximum of four hours of night differential. All overtime resulting from the extended shift will be paid at the day shift rate, which excludes the night differential.

5.    An RN, who is sent home early due to reduced staffing needs, and as a result fails to meet the 50% hours, will receive the applicable differential paid.

6.    RNs on paid stand-by, who are called back to work during a shift that qualifies for the differential, shall be paid the applicable differential for all hours worked.

7.    Differential rates shall be paid as follows during the life of this contract:

|  | PM (Evening) | Night |
|---|---|---|
| Rate | $3.50 | $5.00 |

I.    Weekend Shift Differential:

All FT and PT Staff, and all FT and PT Non-Benefit Staff-Per Diem RNs will be scheduled no more than every other weekend per four (4) week schedule (which equates to four (4) shifts per four (4) week schedule) unless mutually agreed upon between the RN and her/his Manager.

Weekend shifts are defined on a unit basis and may vary between shifts and/or RNs.

If an RN chooses to work a minimum of four (4) hours on a 5th weekend shift, excluding consecutive hours worked, during a four (4) week schedule, and have met their scheduled work commitment, the RN will be paid a differential of $13.00 per hour.

## ARTICLE 27  IN-HOUSE REGISTRY PROGRAM

A.    Purpose:   To provide the Employer with an alternative to the utilization of outside registry staff, alleviate staffing shortages and to ensure ongoing quality patient care.

B.    Eligibility:   Any full-time, part-time or Non-Benefit Staff-Per Diem RN who has successfully completed orientation and who has met their F.T.E. commitment in a given pay period, is eligible to work additional hours through the In-House Registry Program.

Scheduled Resource RNs must work a minimum of forty-eight (48) hours per pay period to be eligible to work additional hours through the In-House Registry Program.

Unscheduled absences or sick calls do not count toward meeting F.T.E. work commitment.

If an RN has not met their F.T.E. commitment at the end of a pay period but has worked In-House Registry hours, those hours will be paid at the RN's regular rate of pay.  The additional program dollars will not be paid.

C.    Scheduling:   Scheduling of hours within the In-House Registry Program will be done at the unit level. RNs must give their availability for registry shifts to the department manager or designee.

An In-House Registry shift must be initially scheduled in a four (4) hour increment and then any additional, continuous, whole hour(s) thereafter.  Shifts will be pre-designated as In-House Registry shifts based on unit needs and management's discretion.  In-House Registry shifts will be assigned and approved on a rotational basis.

D.    Cancellation: The Employer will give a 2-hour notice of cancellation to scheduled In-House Registry RNs if they are not needed to work.  RNs are responsible for making sure they can be contacted within this time period or must call the unit themselves to verify that they are needed otherwise the RN will not be paid if he/she reports to work.

If an RN reports to work for a scheduled In-House Registry shift and a change in work volume occurs, precluding completion of the shift, the RN will be paid for no less than four (4) hours of work.

Self-cancellation of scheduled In-House Registry shifts must be made at least twenty-four (24) hours before the start of the shift.  More than two (2) self-cancellations in a rolling three (3) month period will result in the RN's inability to participate in the In-House Registry program for a period of three (3) months.

E.    Compensation:  In-House Registry rates will be paid at a flat amount in addition to the RN's regular rate of pay for that shift.  Any overtime or double will be paid per applicable state and federal laws. RN's working an In-House Registry shift shall receive $50 for the first four (4) hour increment and $12.50 for any additional, continuous, whole hour(s) thereafter.

31

## **ARTICLE 28  EDUCATIONAL PROGRAMS**

A.    Educational Leave

1.    Education leave shall be earned at the rate of 32 hours per year for full time RNs and 16 hours for part time RNs. Paid education leave benefits shall not accumulate from year to year and are not included as PTO. Paid Education Leave benefits cannot be cashed out. Proof of attendance at a BRN approved course must be received in order for education hours to be paid. Each RN eligible for such leave may be required to use up to eight hours each calendar year for mandatory classes or in-services (e.g. fire/safety, skills verification) if deemed necessary by management to maintain skills or knowledge on their particular unit.

2.    The Employer will reimburse for initial certification fees upon successful completion of the test.

3.    Education leave for maintaining professional certification shall be earned at the rate of 8 hours per year for full time RNs and 4 hours for part time RNs. The certification credential is a professional certification if: (1) the examination is nationally available; (2) a recertification interval is defined; (3) the examination tests a professional body of knowledge (i.e., not technical-ACLS, PALS, BCLS, ATLS, etc.); and (4) no specific classes are required to be eligible for the examination. Paid professional certification education leave benefits shall not accumulate from year to year and are not included as PTO. Paid professional certification education leave benefits cannot be cashed out. Proof of certification must be received in order for education hours to be paid.

4.    The RN shall apply in writing for paid Education Leave at least thirty (30) calendar days before the leave is to be taken. The Employer shall respond to Education Leave requests within fifteen (15) calendar days of receiving the request. Requests shall not be unreasonably denied. The RN shall provide proof of attendance at the approved education within the period in which the educational leave is applied.

B.    Required Certifications

1.    RNs will ensure that they maintain certifications required by the home base unit.

2.    Attendance by an RN at certification courses mandated by the Employer as a condition of continued employment in an RN's current certification, unit or specialty shall count as time worked and shall be compensated accordingly. If an RN allows a certification to lapse and the RN is required to retake the certification course, the Employer will only compensate the RN in an amount equal to the number of hours of the certification renewal class.

C.    Tuition Reimbursement:  Tuition reimbursement shall be administered in accordance with the Employer's current policy.

32

D.    Mandatory Classes / Meetings

      1.    If an RN is required by the Employer to attend a particular educational or training program, session, in-service, class or other meeting other than those specified in paragraph A above, the RN shall be paid at his/her base rate of pay in accordance with Article 25 and this time shall be counted as time worked. Should a schedule conflict arise, the Employer shall work with the RN about rescheduling provided such request is timely and other training times are available. Registered Nurses with 30 years or more seniority will have mandatory training scheduled within their FTE commitment. An RN shall receive pay for the actual hours of attendance. These hours shall not count against the education leave provided in paragraph A above. If an RN is required to take a class that is not offered by the Employer, the Employer shall pay for the class and the RN's time at the class at the RN's base rate of pay. If an RN chooses not to take a mandatory class offered by the Employer, the RN must use his/her education leave if available, and pay for such class.

E.    If an RN attends or participates in a particular educational or training program, in-service, class or other meeting to establish or maintain their RN II, RN III, or RNIV job status, no pay will be accorded.

F.    Advanced Degree Completion Bonus: one time award of $1,000 for BSN, and $1,400 for Masters Degree will continue to be paid.

## ARTICLE 29  BLOOD ASSURANCE PROGRAM PARTICIPATION

RNs will be permitted to participate in the Employer's Blood Assurance Program during the period of this contract as follows:

A.      Blood Assurance plan membership must be initiated or renewed yearly starting January 1st and ending December 31st the same calendar year. RNs must be benefit-eligible and have completed their probationary period at LBM/MCH in order to participate in the program.

B.      Accrued paid Donor Days are limited to 2 per calendar year. However, Donor Days accrued because of donations made in November and/or December shall be used by the last day of February of the following year. Donor Days shall accrue one day each after the second and fourth donations in a calendar year (January 1st – December 31st). Donor Days must be used within the same calendar year (with the above-referenced exception for November and December donor days). MTM can only retain 16 hours for donor days. RNs may not use a donor day until it is entered into MTM. If an accrued Donor Day is not used as described in this Paragraph B, the time is lost. Each day off is good for one 8 hour shift only.

C.      Autologous (for use by donor during surgery) and directed (held for a specific patient) donations will not qualify an RN for a blood donor day.

D.      All days off must be scheduled in advance and may be used in place of PTO or mandatory budgets.

E.      The Donor-Day-Off with pay is considered a gift and not a reimbursement for services rendered or wages earned.

F.      No shift differential will be paid on the Donor-Day-Off.

G.      Participation is limited to the needs of the Employer, fulfilled by employees and their families.

H.      RNs who are unable to meet the blood donor requirements may be participants via proxy donations by family or friends. RNs may not donate for another employee's Blood Assurance Program except that Resource RNs may donate for other employees. .

I.      Except when requested by the Blood Donor Center, donations should be made during the non-working hours, i.e., prior to or following the shift, on a day off, etc. Donations are scheduled by telephoning the Blood Donor Center at (562) 933-0808.

## ARTICLE 30  PAID TIME OFF (PTO) BENEFITS

A.    Accrual:   RNs will accrue Paid Time Off (PTO) during the period of this contract according to the following grid:

| Level I Employees<br>Non Exempt, Professional & Administrative | | | |
| --- | --- | --- | --- |
| Full & Part Time Years of Service | Days Per Year* | Hours Per Year* | Per Pay Period Accrual Rate* |
| 1 | 22.9 | 183.33 | 7.69 |
| 2 | 25 | 200 | 7.69 |
| 3 | 25 | 200 | 7.69 |
| 4 | 25 | 200 | 7.69 |
| 5 | 30 | 240 | 9.23 |
| 6 | 30 | 240 | 9.23 |
| 7 | 30 | 240 | 9.23 |
| 8 | 30 | 240 | 9.23 |
| 9 | 30 | 240 | 9.23 |
| 10 | 35 | 280 | 10.77 |
| 11 or more | 36 | 288 | 11.07 |

* Accrual rates listed are for employees who are "paid" for eighty (80) hours in a given pay period.

B.    Administration. Notwithstanding the Sideletter of PTO Benefits, all aspects of Paid Time Off will be administered in accordance with HR321, Paid Time Off Benefits Provisions, during the period of this contract.

C.    Continue extra 40 hours PTO accrual for full time night shift RNs.

### ARTICLE 31 BENEFITS

A.     The Employer shall maintain the same coverage and deductibles for bargaining unit employees as it provides for its non-bargaining unit employees.

B.     The employee percentage of premiums for the employee medical plans shall be the same for bargaining unit employees as it provides for its non-bargaining unit employees.

C.     The Employer agrees to maintain the following non voluntary benefits:  Long Term Disability; Life Insurance; Accidental Death and Dismemberment; and the EAP program.

## **ARTICLE 32   RETIREMENT PLAN**

- The Hospital will continue the Memorial Retirement Plan.

- It will continue to be a Defined Contribution Plan.

- The deposit will be based on W-2 earnings, not base pay.

- Employees only need to contribute 2% for the 1st year only.

- Vesting will be 5 years.  All current bargaining unit employees shall receive vesting credit for all years of service with the Employer.

- All employees would be eligible but must have 1,000 hours to enroll and 1,000 hours in each plan year to be eligible for that year's deposit.

- The range of the deposit would be from 5% to 10% based on years of service.

| Years of Service | Overall 2006 Funding Percent |
|---|---|
| 0-4 | 5% |
| 5-9 | 6% |
| 10-14 | 7% |
| 15-19 | 8% |
| 20-24 | 9% |
| 25 or more | 10% |

- Special Funds will be made available for the RN's to invest in Income Funds, e.g. T-Bills, Bonds, Money Market etc.

- Years of service with the Employer shall continue to count toward Memorial Retirement Plan vesting.

- The Retirement Plan in existence as of the initial date of this Agreement shall remain in full force and effect for the life of this Agreement. It may not be modified or discontinued without mutual agreement of the parties.

- The plan shall be subject to applicable ERISA and IRS regulations.

## ARTICLE 33  CAREER ADVANCEMENT PROGRAM

A.     Participation.   RNs shall be eligible to participate in the Employer's Nursing Service Career Advancement Program, which is designed to provide progressive options for a professional RN to seek career advancement at the bedside or in management. All aspects of Employer's Career Advancement Program will be governed by the Nursing Service Career Advancement Program committee.

B.     Career Advancement Board.   The purpose of this Board shall be (a) to recommend revisions to the Employer's proposed Career Advancement Program; and (b) to evaluate candidates for advancement to the RN III, IV, and V level and to make advancement recommendations to management.  To the extent possible, the Board shall recommend changes to the Hospital's proposed Career Advancement Program that will enhance clinical excellence while eliminating the perception or existence of favoritism or arbitrariness.  The Board shall consist of 6 members as follows:

- 3 RNs in the bargaining unit, designated by the Union

- Clinical Educator/CN IV

- 1 CNS/CN V

- 1 Vice President /Director/Senior Vice President

One member of the Career Advancement Board shall be a chairperson designated by management.

38

## ARTICLE 34  LEAVE OF ABSENCE

A.     The Employer shall provide RNs with leaves of absence which are required by state and federal law.  Currently, these leaves of absence are family medical leaves, pregnancy leaves, worker's compensation leaves and military leaves.    Such leaves shall be granted and administered in accordance with the applicable state and/or federal laws.

B.     The Employer shall also provide RNs with leaves of absence for medical leaves for non-occupational disabilities (i.e., not governed by federal or state family and medical leave statutes or the worker's compensation statutes), jury duty, witness duty and bereavement.  The leaves specified in this paragraph B shall be administered in accordance with MHS Policy #315.

C.     Bereavement leave shall be extended to include domestic partners.

D.     Association Leave

    1.     If an RN is elected or appointed to a position by the Union, the Employer will grant up to 6 individuals not from the same unit, or shift, a maximum of 3 months each for Association Leave.

    2.     RNs on Association Leave are not required to use PTO.  They will not accrue PTO while on Association Leave.  RNs will be responsible for COBRA premiums commencing the first day of the pay period following the start of the leave.

    3.     RNs will be guaranteed return to their existing position, status and shift following their Association Leave.

## ARTICLE 35  LIFT PROGRAM

In addition to the regularly scheduled ancillary nursing staff, appropriately trained staff will be designated to assist with patient lifting and handling where needed.  Said staff will be available twenty-four hours per day.  The Employer shall also maintain the current lift assist training program.

## ARTICLE 36  TECHNOLOGY

Utilization of technology should support the provision of safe, therapeutic, effective care by Registered Nurses. This occurs within the structure of the nursing process, including the exercise of clinical judgment in assessment, diagnosis, planning, implementation, and evaluation of patient care, and acting as a patient advocate.

Technology should be utilized in a manner to safeguard patient confidentiality.

Technology provides information and tools to support clinical decision making as appropriate. RNs will maintain accountability for actual clinical decision making, based on individualized patient needs within their scope of practice.

For technology selected after the date of this agreement, the Professional Practice Committee shall provide input regarding new technology affecting the delivery of direct patient care.

## ARTICLE 37 <u>DURATION</u>

This Agreement shall become effective on July 1, 2012 and shall continue through midnight, March 31, 2016.

### APPENDIX A - RN WAGE GRID

| Effective Date | | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CNA RN2 | 8 Hr Range | New Grad | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | 34.83 | 36.29 | 38.31 | 39.96 | 41.82 | 42.90 | 42.90 | 43.26 | 43.29 | 43.68 | 44.51 | 45.32 | 45.33 | 45.60 | 45.92 | 46.62 |
| 2012-2013 | 2nd Year | | 35.35 | 36.83 | 38.88 | 40.56 | 42.45 | 43.54 | 44.19 | 44.19 | 44.56 | 44.59 | 44.99 | 45.85 | 46.68 | 46.69 | 46.97 | 47.30 |
| 2013-2014 | 3rd Year | | 36.06 | 37.57 | 39.66 | 41.37 | 43.30 | 44.41 | 44.85 | 45.52 | 45.52 | 45.90 | 45.93 | 46.34 | 47.23 | 48.08 | 48.09 | 48.38 |
| 2014-2016 | 4th Year | | 36.78 | 38.32 | 40.46 | 42.20 | 44.16 | 45.30 | 45.75 | 46.20 | 46.89 | 46.89 | 47.28 | 47.31 | 47.73 | 48.65 | 49.52 | 49.53 |
| CNAT RN2 | 12 Hr Range | New Grad | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | 29.85 | 31.11 | 32.84 | 34.25 | 35.85 | 36.77 | 36.77 | 37.08 | 37.11 | 37.44 | 38.15 | 38.85 | 38.85 | 39.09 | 39.36 | 39.96 |
| 2012-2013 | 2nd Year | | 30.30 | 31.57 | 33.33 | 34.77 | 36.39 | 37.32 | 37.88 | 37.88 | 38.19 | 38.22 | 38.56 | 39.30 | 40.01 | 40.02 | 40.26 | 40.54 |
| 2013-2014 | 3rd Year | | 30.91 | 32.20 | 33.99 | 35.46 | 37.11 | 38.07 | 38.44 | 39.02 | 39.02 | 39.34 | 39.37 | 39.72 | 40.48 | 41.21 | 41.22 | 41.47 |
| 2014-2016 | 4th Year | | 31.53 | 32.85 | 34.68 | 36.17 | 37.85 | 38.83 | 39.21 | 39.60 | 40.19 | 40.19 | 40.52 | 40.55 | 40.91 | 41.69 | 42.45 | 42.46 |
| CNA RN3 | 8 Hour Range | | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | | 38.83 | 40.99 | 42.76 | 44.75 | 45.90 | 45.90 | 46.29 | 46.32 | 46.74 | 47.63 | 48.49 | 48.50 | 48.79 | 49.13 | 49.88 |
| 2012-2013 | 2nd Year | | | 39.99 | 42.22 | 44.04 | 46.09 | 47.28 | 47.28 | 47.68 | 47.71 | 48.14 | 49.06 | 49.94 | 49.96 | 50.25 | 50.60 | 51.38 |
| 2013-2014 | 3rd Year | | | 41.19 | 43.49 | 45.36 | 47.47 | 48.70 | 48.70 | 49.11 | 49.14 | 49.58 | 50.53 | 51.44 | 51.46 | 51.76 | 52.12 | 52.92 |
| 2014-2016 | 4th Year | | | 42.43 | 44.79 | 46.73 | 48.89 | 50.15 | 50.16 | 50.59 | 50.62 | 51.07 | 52.04 | 52.98 | 53.00 | 53.32 | 53.68 | 54.51 |
| CNAT RN3 | 12 Hr Range | | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | | 33.28 | 35.13 | 36.65 | 38.36 | 39.34 | 39.34 | 39.68 | 39.70 | 40.06 | 40.83 | 41.56 | 41.57 | 41.82 | 42.11 | 42.75 |
| 2012-2013 | 2nd Year | | | 34.28 | 36.19 | 37.75 | 39.51 | 40.53 | 40.53 | 40.87 | 40.89 | 41.26 | 42.05 | 42.81 | 42.82 | 43.07 | 43.37 | 44.04 |
| 2013-2014 | 3rd Year | | | 35.31 | 37.28 | 38.88 | 40.69 | 41.74 | 41.74 | 42.09 | 42.12 | 42.50 | 43.31 | 44.09 | 44.11 | 44.37 | 44.67 | 45.36 |
| 2014-2016 | 4th Year | | | 36.36 | 38.39 | 40.05 | 41.91 | 42.99 | 43.00 | 43.36 | 43.38 | 43.77 | 44.60 | 45.41 | 45.43 | 45.70 | 46.01 | 46.72 |

42

APPENDIX A - RN WAGE GRID – cont.

| Effective Date | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CNA RN4 | 8 Hour Range | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | 40.77 | 43.04 | 44.90 | 46.99 | 48.20 | 48.20 | 48.60 | 48.64 | 49.08 | 50.01 | 50.91 | 50.93 | 51.23 | 51.59 | 52.37 |
| 2012-2013 | 2nd Year | | 41.99 | 44.33 | 46.25 | 48.40 | 49.65 | 49.65 | 50.06 | 50.10 | 50.55 | 51.51 | 52.44 | 52.46 | 52.77 | 53.14 | 53.94 |
| 2013-2014 | 3rd Year | | 43.25 | 45.66 | 47.64 | 49.85 | 51.14 | 51.14 | 51.56 | 51.60 | 52.07 | 53.06 | 54.01 | 54.03 | 54.35 | 54.73 | 55.56 |
| 2014-2016 | 4th Year | | 44.55 | 47.03 | 49.07 | 51.35 | 52.67 | 52.68 | 53.11 | 53.15 | 53.63 | 54.65 | 55.64 | 55.65 | 55.98 | 56.38 | 57.22 |
| CNAT RN4 | 12 Hr Range | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | 34.95 | 36.89 | 38.49 | 40.28 | 41.31 | 41.31 | 41.66 | 41.69 | 42.07 | 42.87 | 43.64 | 43.65 | 43.91 | 44.22 | 44.89 |
| 2012-2013 | 2nd Year | | 35.99 | 38.00 | 39.64 | 41.49 | 42.56 | 42.56 | 42.91 | 42.94 | 43.33 | 44.15 | 44.95 | 44.97 | 45.23 | 45.55 | 46.23 |
| 2013-2014 | 3rd Year | | 37.07 | 39.14 | 40.83 | 42.73 | 43.83 | 43.83 | 44.19 | 44.23 | 44.63 | 45.48 | 46.29 | 46.31 | 46.59 | 46.91 | 47.62 |
| 2014-2016 | 4th Year | | 38.18 | 40.31 | 42.05 | 44.02 | 45.15 | 45.15 | 45.52 | 45.56 | 45.96 | 46.84 | 47.69 | 47.70 | 47.98 | 48.32 | 49.05 |
| CNA CNI | 8 Hour Range | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | 41.99 | 44.33 | 46.25 | 48.40 | 49.65 | 49.65 | 50.06 | 50.10 | 50.55 | 51.51 | 52.44 | 52.46 | 52.77 | 53.14 | 53.94 |
| 2012-2013 | 2nd Year | | 43.25 | 45.66 | 47.64 | 49.85 | 51.14 | 51.14 | 51.56 | 51.60 | 52.07 | 53.06 | 54.01 | 54.03 | 54.35 | 54.73 | 55.56 |
| 2013-2014 | 3rd Year | | 44.55 | 47.03 | 49.07 | 51.35 | 52.67 | 52.67 | 53.11 | 53.15 | 53.63 | 54.65 | 55.63 | 55.65 | 55.98 | 56.37 | 57.23 |
| 2014-2016 | 4th Year | | 45.89 | 48.44 | 50.54 | 52.89 | 54.26 | 54.26 | 54.70 | 54.74 | 55.24 | 56.29 | 57.30 | 57.32 | 57.65 | 58.06 | 58.94 |
| CNA CNS | 8 Hour Range | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | 43.22 | 45.62 | 47.59 | 49.81 | 51.09 | 51.09 | 51.52 | 51.56 | 52.02 | 53.01 | 53.96 | 53.99 | 54.30 | 54.69 | 55.51 |
| 2012-2013 | 2nd Year | | 44.52 | 46.99 | 49.02 | 51.30 | 52.62 | 52.62 | 53.07 | 53.11 | 53.58 | 54.60 | 55.58 | 55.61 | 55.93 | 56.33 | 57.18 |
| 2013-2014 | 3rd Year | | 45.86 | 48.40 | 50.49 | 52.84 | 54.20 | 54.20 | 54.66 | 54.70 | 55.19 | 56.24 | 57.25 | 57.28 | 57.61 | 58.02 | 58.90 |
| 2014-2016 | 4th Year | | 47.24 | 49.86 | 52.01 | 54.43 | 55.82 | 55.82 | 56.30 | 56.35 | 56.84 | 57.93 | 58.97 | 59.00 | 59.34 | 59.76 | 60.66 |

APPENDIX A - RN WAGE GRID – cont.

| Effective Date | | | | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CNA NP I | 8 Hour Range | | | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | | | 43.22 | 45.62 | 47.59 | 49.81 | 51.09 | 51.09 | 51.52 | 51.56 | 52.02 | 53.01 | 53.96 | 53.99 | 54.30 | 54.69 | 55.51 |
| 2012-2013 | 2nd Year | | | | 44.52 | 46.99 | 49.02 | 51.30 | 52.62 | 52.62 | 53.07 | 53.11 | 53.58 | 54.60 | 55.58 | 55.61 | 55.93 | 56.33 | 57.18 |
| 2013-2014 | 3rd Year | | | | 45.86 | 48.40 | 50.49 | 52.84 | 54.20 | 54.20 | 54.66 | 54.70 | 55.19 | 56.24 | 57.25 | 57.28 | 57.61 | 58.02 | 58.90 |
| 2014-2016 | 4th Year | | | | 47.24 | 49.86 | 52.01 | 54.43 | 55.82 | 55.82 | 56.30 | 56.35 | 56.84 | 57.93 | 58.97 | 59.00 | 59.34 | 59.76 | 60.66 |
| | | | | | | | | | | | | | | | | | | | |
| CNA NP II | 8 Hour Range | | | | | | | | | | | | | | | | | | |
| 2011-2012 | 1st Year | | | | 45.58 | 48.11 | 50.18 | 52.52 | 53.87 | 53.87 | 54.33 | 54.37 | 54.86 | 55.90 | 56.90 | 56.93 | 57.26 | 57.67 | 58.54 |
| 2012-2013 | 2nd Year | | | | 46.95 | 49.55 | 51.69 | 54.10 | 55.49 | 55.49 | 55.96 | 56.00 | 56.50 | 57.58 | 58.61 | 58.64 | 58.98 | 59.40 | 60.30 |
| 2013-2014 | 3rd Year | | | | 48.36 | 51.04 | 53.24 | 55.72 | 57.15 | 57.15 | 57.64 | 57.68 | 58.20 | 59.31 | 60.37 | 60.40 | 60.75 | 61.18 | 62.11 |
| 2014-2016 | 4th Year | | | | 49.81 | 52.57 | 54.84 | 57.40 | 58.87 | 58.87 | 59.37 | 59.41 | 59.94 | 61.09 | 62.19 | 62.22 | 62.57 | 63.02 | 63.97 |

44

APPENDIX A - RN WAGE GRID – cont.

| | | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | Y1 27 | Y2 28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Effective Date** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 47.17 | 47.42 | 48.12 | 48.62 | 49.43 | 49.51 | 50.13 | 50.63 | 51.14 | 51.65 | 52.65 | 53.19 | 53.72 |
| **2012-2013** | 2nd Year | 48.02 | 48.59 | 48.84 | 49.56 | 50.08 | 50.91 | 51.00 | 51.63 | 52.15 | 52.67 | 53.20 | 54.23 | 54.79 |
| **2013-2014** | 3rd Year | 48.72 | 49.46 | 50.05 | 50.31 | 51.05 | 51.58 | 52.44 | 52.53 | 53.18 | 53.71 | 54.25 | 54.80 | 55.86 |
| **2014-2016** | 4th Year | 49.83 | 50.18 | 50.95 | 51.56 | 51.82 | 52.58 | 53.13 | 54.01 | 54.11 | 54.77 | 55.32 | 55.88 | 56.45 |
| | | | | | | | | | | | | | | |
| **CNAT RN2** | **12 Hr Range** | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 40.43 | 40.65 | 41.25 | 41.67 | 42.37 | 42.44 | 42.97 | 43.40 | 43.83 | 44.27 | 45.13 | 45.59 | 46.05 |
| **2012-2013** | 2nd Year | 41.16 | 41.65 | 41.86 | 42.48 | 42.93 | 43.64 | 43.71 | 44.25 | 44.70 | 45.15 | 45.60 | 46.48 | 46.96 |
| **2013-2014** | 3rd Year | 41.76 | 42.39 | 42.90 | 43.12 | 43.76 | 44.21 | 44.95 | 45.03 | 45.58 | 46.04 | 46.50 | 46.97 | 47.88 |
| **2014-2016** | 4th Year | 42.71 | 43.01 | 43.67 | 44.19 | 44.42 | 45.07 | 45.54 | 46.29 | 46.38 | 46.94 | 47.42 | 47.90 | 48.38 |
| | | | | | | | | | | | | | | |
| **CNA RN3** | **8 Hour Range** | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 50.47 | 50.74 | 51.49 | 52.02 | 52.89 | 52.98 | 53.64 | 54.17 | 54.72 | 55.27 | 56.34 | 56.91 | 57.48 |
| **2012-2013** | 2nd Year | 51.98 | 52.26 | 53.03 | 53.58 | 54.48 | 54.57 | 55.25 | 55.80 | 56.36 | 56.93 | 58.03 | 58.62 | 59.20 |
| **2013-2014** | 3rd Year | 53.54 | 53.83 | 54.62 | 55.19 | 56.11 | 56.21 | 56.91 | 57.47 | 58.05 | 58.64 | 59.77 | 60.38 | 60.98 |
| **2014-2016** | 4th Year | 55.15 | 55.44 | 56.26 | 56.84 | 57.80 | 57.89 | 58.62 | 59.20 | 59.79 | 60.39 | 61.57 | 62.19 | 62.81 |
| | | | | | | | | | | | | | | |
| **CNAT RN3** | **12 Hr Range** | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 43.26 | 43.49 | 44.13 | 44.59 | 45.33 | 45.41 | 45.98 | 46.43 | 46.90 | 47.37 | 48.29 | 48.78 | 49.27 |
| **2012-2013** | 2nd Year | 44.55 | 44.79 | 45.45 | 45.93 | 46.70 | 46.77 | 47.36 | 47.83 | 48.31 | 48.80 | 49.74 | 50.25 | 50.74 |
| **2013-2014** | 3rd Year | 45.89 | 46.14 | 46.82 | 47.31 | 48.09 | 48.18 | 48.78 | 49.26 | 49.76 | 50.26 | 51.23 | 51.75 | 52.27 |
| **2014-2016** | 4th Year | 47.27 | 47.52 | 48.22 | 48.72 | 49.54 | 49.62 | 50.24 | 50.74 | 51.25 | 51.76 | 52.77 | 53.30 | 53.83 |
| | | | | | | | | | | | | | | |
| **CNA RN4** | **8 Hour Range** | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 52.99 | 53.28 | 54.06 | 54.62 | 55.53 | 55.63 | 56.32 | 56.88 | 57.46 | 58.03 | 59.16 | 59.76 | 60.35 |
| **2012-2013** | 2nd Year | 54.58 | 54.88 | 55.68 | 56.26 | 57.20 | 57.30 | 58.01 | 58.59 | 59.18 | 59.77 | 60.93 | 61.55 | 62.16 |
| **2013-2014** | 3rd Year | 56.22 | 56.53 | 57.35 | 57.95 | 58.92 | 59.02 | 59.75 | 60.35 | 60.96 | 61.56 | 62.76 | 63.40 | 64.02 |
| **2014-2016** | 4th Year | 57.90 | 58.23 | 59.08 | 59.68 | 60.69 | 60.80 | 61.55 | 62.16 | 62.79 | 63.41 | 64.64 | 65.30 | 65.95 |
| | | | | | | | | | | | | | | |
| **CNAT RN4** | **12 Hr Range** | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 45.42 | 45.67 | 46.34 | 46.82 | 47.60 | 47.68 | 48.27 | 48.75 | 49.25 | 49.74 | 50.71 | 51.22 | 51.73 |
| **2012-2013** | 2nd Year | 46.78 | 47.04 | 47.73 | 48.22 | 49.03 | 49.11 | 49.72 | 50.22 | 50.73 | 51.23 | 52.23 | 52.76 | 53.28 |
| **2013-2014** | 3rd Year | 48.19 | 48.45 | 49.16 | 49.67 | 50.50 | 50.59 | 51.21 | 51.73 | 52.25 | 52.77 | 53.79 | 54.34 | 54.87 |
| **2014-2016** | 4th Year | 49.63 | 49.90 | 50.63 | 51.16 | 52.02 | 52.11 | 52.75 | 53.28 | 53.82 | 54.35 | 55.40 | 55.96 | 56.52 |

APPENDIX A - RN WAGE GRID -- cont.

| | | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | Y1 27 | Y2 28 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Effective Date** | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **CNA CNI** | 8 Hour Range | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 54.58 | 54.88 | 55.68 | 56.26 | 57.20 | 57.30 | 58.01 | 58.59 | 59.18 | 59.77 | 60.93 | 61.55 | 62.16 |
| **2012-2013** | 2nd Year | 56.22 | 56.53 | 57.35 | 57.95 | 58.92 | 59.02 | 59.75 | 60.35 | 60.96 | 61.56 | 62.76 | 63.40 | 64.02 |
| **2013-2014** | 3rd Year | 57.91 | 58.23 | 59.07 | 59.69 | 60.69 | 60.79 | 61.54 | 62.16 | 62.79 | 63.41 | 64.64 | 65.30 | 65.94 |
| **2014-2016** | 4th Year | 59.65 | 59.98 | 60.85 | 61.48 | 62.51 | 62.62 | 63.39 | 64.02 | 64.67 | 65.32 | 66.58 | 67.26 | 67.92 |
| | | | | | | | | | | | | | | |
| **CNA CNS** | 8 Hour Range | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 56.17 | 56.48 | 57.30 | 57.90 | 58.86 | 58.97 | 59.70 | 60.29 | 60.91 | 61.51 | 62.71 | 63.35 | 63.97 |
| **2012-2013** | 2nd Year | 57.86 | 58.17 | 59.02 | 59.64 | 60.63 | 60.74 | 61.49 | 62.10 | 62.74 | 63.36 | 65.26 | 65.25 | 65.89 |
| **2013-2014** | 3rd Year | 59.60 | 59.92 | 60.79 | 61.43 | 62.45 | 62.56 | 63.33 | 63.96 | 64.62 | 65.26 | 66.53 | 67.21 | 67.87 |
| **2014-2016** | 4th Year | 61.39 | 61.72 | 62.61 | 63.27 | 64.33 | 64.44 | 65.23 | 65.88 | 66.56 | 67.22 | 68.53 | 69.22 | 69.90 |
| | | | | | | | | | | | | | | |
| **CNA NP I** | 8 Hour Range | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 56.17 | 56.48 | 57.30 | 57.90 | 58.86 | 58.97 | 59.70 | 60.29 | 60.91 | 61.51 | 62.71 | 63.35 | 63.97 |
| **2012-2013** | 2nd Year | 57.86 | 58.17 | 59.02 | 59.64 | 60.63 | 60.74 | 61.49 | 62.10 | 62.74 | 63.36 | 64.59 | 65.25 | 65.89 |
| **2013-2014** | 3rd Year | 59.60 | 59.92 | 60.79 | 61.43 | 62.45 | 62.56 | 63.33 | 63.96 | 64.62 | 65.26 | 66.53 | 67.21 | 67.87 |
| **2014-2016** | 4th Year | 61.39 | 61.72 | 62.61 | 63.27 | 64.33 | 64.44 | 65.23 | 65.88 | 66.56 | 67.22 | 68.53 | 69.22 | 69.90 |
| | | | | | | | | | | | | | | |
| **CNA NP II** | 8 Hour Range | | | | | | | | | | | | | |
| **2011-2012** | 1st Year | 59.23 | 59.56 | 60.42 | 61.06 | 62.07 | 62.18 | 62.95 | 63.58 | 64.23 | 64.86 | 66.13 | 66.13 | 66.13 |
| **2012-2013** | 2nd Year | 61.01 | 61.34 | 62.24 | 62.89 | 63.93 | 64.05 | 64.84 | 65.48 | 66.16 | 66.81 | 68.11 | 68.11 | 68.11 |
| **2013-2014** | 3rd Year | 62.85 | 63.19 | 64.10 | 64.78 | 65.85 | 65.97 | 66.78 | 67.45 | 68.14 | 68.82 | 70.16 | 70.16 | 70.16 |
| **2014-2016** | 4th Year | 64.73 | 65.09 | 66.03 | 66.72 | 67.82 | 67.95 | 68.79 | 69.46 | 70.19 | 70.88 | 72.26 | 72.26 | 72.26 |
| | | | | | | | | | | | | | | |

## CNA Per Diem Rates

| Per Diem Type | Std Hrs | Parameters | 2011 – 2016 Year 1 | Year 2 | Year 3 | Year 4 |
|---|---|---|---|---|---|---|
| Flexible – Per Diem | 8 hours | | 44.28 | 44.78 | 45.28 | 45.78 |
| | 12 hours | | 37.95 | 38.38 | 38.81 | 39.24 |
| | | | | | | |
| Scheduled – Per Diem | 8 hours | | 45.36 | 45.86 | 46.36 | 46.86 |
| | 12 hours | | 38.88 | 39.31 | 39.74 | 40.16 |
| | | | | | | |
| Non-Benefit Staff – | 8 hours | < Less than 3 years | 41.58 | 42.08 | 42.58 | 43.08 |
| Per Diem Part-time | 12 hours | | 35.64 | 36.07 | 36.50 | 36.92 |
| | 8 hours | 3 - 10 years | 45.90 | 46.40 | 46.90 | 47.40 |
| | 12 hours | | 39.34 | 39.77 | 40.20 | 40.63 |
| | 8 hours | > Greater than 10 years | 49.14 | 49.64 | 50.14 | 50.64 |
| | 12 hours | | 42.12 | 42.55 | 42.97 | 43.40 |
| | | | | | | |
| Non-Benefit Staff – | 8 hours | < Less than 3 years | 41.58 | 42.08 | 42.58 | 43.08 |
| Per Diem Full-time | 12 hours | | 35.64 | 36.07 | 36.50 | 36.92 |
| | 8 hours | 3 - 10 years | 45.90 | 46.40 | 46.90 | 47.40 |
| | 12 hours | | 39.34 | 39.77 | 40.20 | 40.63 |
| | 8 hours | > Greater than 10 years | 49.14 | 49.64 | 50.14 | 50.64 |
| | 12 hours | | 42.12 | 42.55 | 42.97 | 43.40 |
| | | | | | | |
| Nurse Practitioner | 8 hours | | 54.00 | 54.50 | 55.00 | 55.50 |
| | | | | | | |
| Weekend Only | 8 hours | | 35.64 | 36.14 | 36.64 | 37.14 |

47

APPENDIX B

## LBMMC/MCH NON-BENEFIT STAFF-PER DIEM AND RESOURCE WAGES, CATEGORIES AND REQUIREMENTS

Note: The number of categories and/or resource positions available in any department is based on unit needs.

| Option | Rate of Pay/hr. | Work Commitment / Requirements<br>8 hour Shifts | Work Commitment / Requirements<br>12 hour Shifts<br>*12-hour work option may be required in clinical areas where this scheduling practice exists. |
|---|---|---|---|
| Flexible Resource | See Article 26 | Flexible Resource RNs are required to work at least four (4) shifts per four (4) week schedule, one (1) of which must be a weekend shift.<br>One (1) major holiday per year.<br>May self-cancel with 24 hour notice, but must meet minimum commitment. | Flexible Resource RNs are required to work at least three (3) shifts per four (4) week schedule, one (1) of which must be a weekend shift.<br>One (1) major holiday per year.<br>May self-cancel with 24 hour notice, but must meet minimum commitment. |
| Scheduled Resource | See Article 26 | Scheduled Resource RNs are required to commit to one of the following budgeted programs:<br>6 Shift program- Must be pre-scheduled for a minimum of 48 hours per four (4) week schedule.<br>8 Shift program- Must be pre-scheduled for a minimum of 64 hours per four (4) week schedule.<br>Must work two (2) weekend shifts per schedule (or less per unit needs).<br>One (1) major and one (1) minor holiday per year based on unit need.<br>No self-cancellation. | Scheduled Resource RNs are required to commit to one of the following budgeted programs:<br>4 Shift program- Must be pre-scheduled for a minimum of 48 hours per four (4) week schedule.<br>5 Shift program- Must be pre-scheduled for a minimum of 60 hours per four (4) week schedule.<br>Must work two (2) weekend shifts per schedule (or less per unit needs).<br>One (1) major and one (1) minor holiday per year based on unit need.<br>No self-cancellation. |
| Non-Benefit Staff-Per Diem Part-time | See Article 26 | Non-benefit Staff-Per Diem Part-time RNs are required to work at least ten (10) shifts per four (4) week schedule, four (4) of which must be weekend shifts (or less per unit needs).<br>Holiday commitment will reflect the Vacation/Holiday Scheduling Policy.<br>No self-cancellation.<br>Treated as Part-time employee in all aspects of employment except not benefit eligible. | Non-benefit Staff-Per Diem Part-time RNs are required to work at least eight (8) shifts per four (4) week schedule, four (4) of which must be weekend shifts (or less per unit needs).<br>Holiday commitment will reflect the Vacation/Holiday Scheduling Policy.<br>Treated as Part-time employee in all aspects of employment except not benefit eligible. |
| Non-Benefit Staff-Per Diem Full-time | See Article 26 | Non-benefit Staff-Per Diem Full-time RNs are required to work at least eighteen (18) shifts per four (4) week schedule, four (4) of which must be weekend shifts (or less per unit needs).<br>Holiday commitment will reflect the Vacation/Holiday Scheduling Policy.<br>No self-cancellation.<br>Treated as Full-time employee in all aspects of employment except not benefit eligible. | Non-benefit Staff-Per Diem Full-time RNs are required to work at least twelve (12) shifts per four (4) week schedule, four (4) of which must be weekend shifts (or less per unit needs).<br>Holiday commitment will reflect the Vacation/Holiday Scheduling Policy.<br>No self-cancellation.<br>Treated as Full-time employee in all aspects of employment except not benefit eligible. |
| Weekend Only Resource | See Article 26 | Weekend Only Resource staff are required to work six (6) weekend shifts per four (4) week schedule.<br>No self-cancellation.<br>More than one (1) unscheduled occurrence, e.g., a Saturday or Sunday or a consecutive Saturday or Sunday, in a rolling three (3) month period nullifies this agreement and employee is eligible to apply for an open position in the hospital. | Weekend Only Resource staff are required to work six (6) weekend shifts per four (4) week schedule.<br>No self-cancellation.<br>More than one (1) unscheduled occurrence, e.g., a Saturday or Sunday or a consecutive Saturday or Sunday, in a rolling three (3) month period nullifies this agreement and employee is eligible to apply for an open position in the hospital. |
| Home Health Resource | | Rate of pay is based per visit as follows:    Initial Visit-        See Article 26<br>Follow-up Visit-    See Article 26<br>Specialty Visit-     See Article 26<br>Base hourly rate for non-direct patient activities -  See Article 26<br>Mileage will be reimbursed from the first patient or as they "pass the office". Reimbursement will be paid at the current IRS standard rate/mile.<br>Resource RNs hired to other than Home Health Department and works in Home Health will be reimbursed at their commuted hourly rate. The per visit rate will not apply and hours worked in Home Health will not count toward RN's medical center commitment. | |

48

**APPENDIX B**

**LBMMC/MCH NON-BENEFIT STAFF-PER DIEM AND RESOURCE WAGES, CATEGORIES AND REQUIREMENTS**

(Cont'd.)

Note: The number of categories and/or resource positions available in any department is based on unit needs.

| Option | Floating | Change of Status | Scheduling Practices |
|---|---|---|---|
| Flexible Resource | Required to float per Floating Article 22. | May convert to another resource plan every six months. May apply for full or part-time status at any time per current department job postings. | Schedule requests are submitted according to the scheduling time-frame requirements of the home based unit or the Central Staffing Office. Flexible Resource RN's shall make themselves available for their minimum commitment including weekend shift, after FT, PT, Non-Benefit Staff Per Diem (full and part time ) and Scheduled Resource RNs have been scheduled. |
| Scheduled Resource | Required to float per Floating Article 22. | May convert to another resource plan every six months. May apply for full or part time status at any time per current department job postings. | Schedule requests are submitted according to the scheduling time-frame requirements of the home based unit or the Central Staffing Office. Scheduled Resource RNs shall make themselves available for their minimum commitment including weekend shifts, after FT, PT and Non-Benefit Staff Per Diem (full and part time) RNs have been scheduled. Scheduled Resource RNs will then be scheduled in the order of committed hours. |
| Non-Benefit Staff-Per Diem Part-time | Required to float per Floating Article 22. | May convert to another resource plan every six months. May apply for full or part time status at any time per current department job postings. | Schedule requests are submitted according to the scheduling time-frame requirements of the home based unit or the Central Staffing Office. *Non-benefit Staff-Per Diem Part-time* RNs are scheduled along with FT and PT benefited RNs. |
| Non-Benefit Staff-Per Diem Full-time | Required to float per Floating Article 22. | May convert to another resource plan every six months. May apply for full or part time status at any time per current department job postings. | Schedule requests are submitted according to the scheduling time-frame requirements of the home based unit or the Central Staffing Office. *Non-benefit Staff-Per Diem Full-time* RNs are scheduled along with FT and PT benefited RNs. |
| Weekend Only Resource | Required to float per Floating Article 22. | May convert to another resource plan every six months. May apply for full or part time status at any time per current department job postings. | Schedule requests are submitted according to the scheduling time-frame requirements of the home based unit or the Central Staffing Office. Weekend shifts start on Friday at 3 p.m. and end on Monday at 7am  and are based on the needs of the unit. Shifts worked during this period will be paid at time and one half (1-1/2) of the straight rate/base rate of $ 50.00 per hour. |
| Home Health Resource | Required to float per Floating Article 22. | May convert to another resource plan every six months. May apply for full or part time status at any time per current department job postings. | Schedule requests are submitted to the Home Health Department according to the scheduling time-frame requirements of the unit. Home Health department based RNs will be scheduled after FT and PT RN's have been scheduled. |

49

## APPENDIX C - CNA POLITICAL ACTION FUND (PAF)

The Employer agrees to allow for RNs to participate in an RN voluntarily authorized payroll deduction designated for the CNA Federal Political Action Committee. This Article shall become effective ninety (90) days following ratification of the entire collective bargaining agreement.

    1.    The Employer shall deduct from each RN's check and submit biweekly to the Union the amount voluntarily authorized by the RN for the Federal Political Action Committee fund (PAC).

    2.    Once the Union provides an authorized deduction form for the PAC to the Employer, the Employer will honor the PAC deduction by no later than the next pay period beginning after the receipt of the authorization.

The following application will be used:

Yes! I will do my part to make elected officials listen to RNs and patients!

I am volunteering to contribute to the CNA Political Action Fund (PAF) to help elect officials who stand for issues important to CNA. I authorize CNA to file this payroll deduction with my employer and my employer to forward the amount specified to CNA's PAF. I understand that:

{1}    I am not required to sign this form or make CNA PAF contributions as a condition of my employment or union membership;

{2}    I may refuse to contribute without any reprisal from CNA;

{3}    CNA PAF uses this money it receives for political purposes, including but not limited to addressing political issues of public importance and contributing to and spending money in connection with federal, state and local elections.

Contributions to CNA PAF are not deductible for federal income tax purposes. This authorization shall remain in effect until revoked in writing by me and submitted to my employer.

____$1.00 per month   ___$3.00 per month   ___$4.00 per month   ___$5.00 per month

$___ per month


_____        _____

(Print Name)                               (Date)


_____        _____

(Signature)                                (Date)

# INDEX

| A | |
|---|---|
| AGREEMENT | 1 |
| ARBITRATION | 8 |
| ASSIGNED OVERTIME | 4 |
| ASSOCIATION LEAVE | 39 |
| ASSOCIATION MEMBERSHIP | 9 |
| ASSOCIATION VISITATION | 11 |
| AWARDING POSITION | 22 |

| B | |
|---|---|
| BARGAINING UNIT INFORMATION | 10 |
| BENEFITS | 36 |
| BEREAVEMENT LEAVE | 39 |
| BLOOD ASSURANCE PROGRAM PARTICIPATION | 34 |
| BULLETIN BOARDS | 10 |

| C | |
|---|---|
| CALL OFFS | 16 |
| CAREER ADVANCEMENT PROGRAM | 38 |
| CHANGE OF OWNERSHIP | 4 |
| COMPENSATION | 26 |

| D | |
|---|---|
| DISCHARGE AND DISCIPLINE | 6 |
| DURATION | 41 |

| E | |
|---|---|
| EDUCATIONAL LEAVE | 32 |
| EDUCATIONAL PROGRAMS | 32 |
| ELIGIBILITY | 22 |
| EXPERIENCE PAY STEPS | 27 |

| F | |
|---|---|
| FLOATING | 17 |

| G | |
|---|---|
| GRIEVANCE PROCEDURE | 7 |

| H | |
|---|---|
| HOURS OF WORK | 23 |

| I | |
|---|---|
| IN-HOUSE REGISTRY PROGRAM | 31 |

| J | |
|---|---|
| JOB POSTINGS, TRANSFERS AND PROMOTIONS | 22 |
| JOB VACANCIES | 22 |

| L | |
|---|---|
| LAYOFF | 19 |
| LEAVE OF ABSENCE | 39 |
| LIFT PROGRAM | 39 |

| M | |
|---|---|
| MAINTENANCE OF MEMBERSHIP | 9 |
| MANAGEMENT RIGHTS | 2 |
| MANDATORY CLASSES / MEETINGS | 33 |

| N | |
|---|---|
| NEW EMPLOYEE NOTICE | 9 |
| NIGHT SHIFT BONUS PLAN | 27 |
| NO DISCRIMINATION | 6 |
| NURSING PROCESS STANDARDS | 13 |

| P | |
|---|---|
| PAID TIME OFF (PTO) BENEFITS | 35 |
| PATIENT STAFFING SYSTEM | 14 |
| PAY INCREASES | 26 |
| PAYROLL DEDUCTION | 9 |
| PERSONNEL CATEGORIES | 15 |
| PRACTICE COMMITTEE | 12 |

PRECEPTOR PAY..................................................................................................29

| R |
| --- |

RECALL...............................................................................................................20
RECOGNITION......................................................................................................1
RELIEF COORDINATOR PAY ............................................................................28
REPORTING PAY.................................................................................................24
REST AND LUNCH PERIODS ............................................................................23
RETIREMENT PLAN ...........................................................................................37
RN REPRESENTATIVES .....................................................................................11

| S |
| --- |

SCHEDULING......................................................................................................16
SENIORITY ..........................................................................................................19
SEVERANCE PAY................................................................................................21
SHIFT DIFFERENTIAL........................................................................................29
STANDBY AND CALL BACK PAY ....................................................................29

| T |
| --- |

TECHNOLOGY.....................................................................................................40
TUITION REIMBURSEMENT.............................................................................32

| U |
| --- |

UNFILLED POSITIONS .......................................................................................22

| V |
| --- |

VACATION APPROVALS.....................................................................................24
VACATION SCHEDULING..................................................................................24

| W |
| --- |

WEEKEND SHIFT DIFFERENTIAL ...................................................................30
WORK STOPPAGE.................................................................................................4



LAW OFFICE OF
**JOSEPH ANTONELLI**
14758 PIPELINE AVENUE, SUITE E, SECOND FLOOR
CHINO HILLS, CALIFORNIA  91709
*tel* 909.393.0223   *fax* 909.393.0471
www.antonellilaw.com

JOSEPH ANTONELLI
jantonelli@antonellilaw.com

JANELLE CARNEY
jcarney@antonellilaw.com

April 6, 2015

Travis M. Gemoets, Esq.
Marta Fernandez, Esq.
Jeffer, Mangels, Butler & Mitchell LLP
1900 Avenue of the Stars, 7th Floor
Los Angeles, CA 90067-4308

   Re: Castillo, et al. v. Long Beach Memorial Medical Center, et al.
     Case No. BC576936

Dear Mr. Gemoets:

   Pursuant to your email of April 2, 2015, enclosed please find two original Notice and Acknowledgement of Receipt forms for each Defendant, Long Beach Memorial Medical Center, Miller Children's Hospital, and Memorial Care Health System.  Further, I have enclosed the following documents:

  1. Summons;
  2. Civil Case Cover Sheet;
  3. Civil Case Cover Sheet Addendum and Statement of Location;
  4. Notice of Case Assignment;
  5. Complaint.

   Accordingly, please sign and return in the enclosed self-addressed stamped envelope within twenty (20) days, one original Notice and Acknowledgement of Receipt form for each defendant, and retain one for your files.

   If you have any comments or questions, please feel free to contact our office.

        Very Truly Yours,
        LAW OFFICE OF JOSEPH ANTONELLI

        Janelle Carney

JC/jw
Enclosures as stated

# EXHIBIT C

# Collective Bargaining Agreement

## BETWEEN



**MEMORIALCARE®**
LONG BEACH MEMORIAL MEDICAL CENTER
MILLER CHILDREN'S HOSPITAL

**2801 Atlantic Avenue, Long Beach, California**

## And

### UNITED STEELWORKERS



**HEALTH CARE WORKERS COUNCIL**

## Local 2801

# October 28, 2012 – March 31, 2017



# Collective Bargaining Agreement

### BETWEEN



**LONG BEACH MEMORIAL MEDICAL CENTER**
**MILLER CHILDREN'S HOSPITAL**

**2801 Atlantic Avenue, Long Beach, California**

## And

# UNITED STEELWORKERS



**HEALTH CARE WORKERS COUNCIL**

## Local 2801

# October 28, 2012 – March 31, 2017



# TABLE OF CONTENTS

Article 1    Agreement ........................................................ 4
Article 2    Preamble and Recognition ........................................ 4
Article 3    Management Rights ............................................... 5
Article 4    Scheduled and Unscheduled Working Time Beyond Scheduled Commitments . 6
Article 5    Change of Ownership ............................................. 7
Article 6    Work Stoppage ................................................... 8
Article 7    No Discrimination ............................................... 9
Article 8    Discharge and Discipline ........................................ 9
Article 9    Grievance Procedure ............................................. 9
Article 10 Arbitration ...................................................... 11
Article 11 Association Membership ........................................... 12
Article 12 Bargaining Unit Information ...................................... 13
Article 13 Bulletin Boards ................................................. 13
Article 14 Union/Unit Representatives ....................................... 13
Article 15 Union Representative Visitation .................................. 14
Article 16 Professional Practice Committee .................................. 14
Article 17 Personnel Files ................................................. 14
Article 18 Employee Health and Safety ...................................... 15
Article 19 Personnel Categories ............................................ 15
Article 20 Scheduling ...................................................... 16
Article 21 Call Offs ....................................................... 16
Article 22 Floating ........................................................ 16
Article 23 Seniority, Layoff, Recall ....................................... 17
Article 24 Job Postings, Transfers and Promotions .......................... 18
Article 25 Hours of Work ................................................... 19

            Work Period (8/80) ........................................... 19
            Work Period (8/40) ........................................... 19
            WorkDay ...................................................... 19
            Regular Rate ................................................. 19
            Alternative Work Schedules ................................... 19
            Alternative Work Week Elections .............................. 20
            Time and One Half Payment .................................... 20
            Double Time Payment .......................................... 20
            Non-Productive Pay ........................................... 20
            Compensatory Time Off ........................................ 20
            Payment of Overtime .......................................... 20
            Meal Periods ................................................. 21
            Rest Periods ................................................. 21

# TABLE OF CONTENTS

Reporting Pay .................................................. 21
Holidays ....................................................... 22
Holiday Pay .................................................... 22
Vacation Scheduling ............................................ 22
Article 26 Compensation ........................................ 22
    Pay Increases ............................................. 22
    Experience Pay Steps ...................................... 23
    Per diem Wages, Categories and Requirements ............... 23
    Lead Differential ......................................... 23
    Shift Differential ........................................ 23
    Standby and Call Back Pay ................................. 24
    Standby Rates Grid ........................................ 25
    Per diem Job Codes & Title ................................ 26

Article 27 Educational Programs ................................ 27
Article 28 Blood Assurance Program Participation ............... 27
Article 29 Paid Time Off (PTO) Benefits ........................ 28
Article 30 Benefits ............................................ 29
Article 31 Retirement Plan ..................................... 29
Article 32 Career Advancement Committee ........................ 30
Article 33 Leaves of Absence ................................... 30
Article 34 Staffing and Patient Care Assignments ............... 31
Article 35 Uniforms ............................................ 31
Article 36 Bargaining Obligation ............................... 31
Article 37 Terms of Agreement .................................. 32

Appendix A Classifications and Grades .......................... i
    Wage Grids ................................................ iii-v

Appendix B Professional Years of Experience Computation Methodology ... vi-vii
    Professional Years of Experience Methodology & Computation
    Worksheet ................................................. viii

Appendix C Side Letter Agreements .............................. ix
    Leaves of Absence ......................................... ix
    Terms of Agreement ........................................ ix
    Contracting ............................................... ix
    Sodexo .................................................... ix
    MHS Policies .............................................. ix

Appendix D Side Letter ......................................... 
    Side Letter Agreement for Scheduled Patient Service Center Employees. x
Appendix E Index ............................................... xi-xiii

3

## ARTICLE 1 - AGREEMENT

This Agreement, made and entered into as of the 28th day of October 2012 is by and between Long Beach Memorial Medical Center and Miller Children's Hospital ("Employer") and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW" and "Union").

## ARTICLE 2 - PREAMBLE AND RECOGNITION

A. Pursuant to the certification of the National Labor Relations Board in Case No. 21-RC-20583, the Employer recognizes the Union as the exclusive collective bargaining representative for all full-time, regular part-time and per diem skilled maintenance employees employed by the Employer at its facilities located at 2801 Atlantic Ave., Long Beach, California.

B. Classifications covered by this agreement include: All full-time, regular part-time and per diem skilled maintenance employees, including Biomedical Equipment Techs I, Biomedical Equipment Techs II, and Lead Biomedical Equipment Techs, employed by the Employer at its facility located at 2801 Atlantic Avenue, Long Beach, California; excluding all professional employees, business office clerical employees, licensed technical employees, other nonprofessional employees, guards and supervisors within the meaning of the Act.

C. Pursuant to the certification of the National Labor Relations Board in Case No. 21-RC-20583 and Case No 21-RC-20995, the Employer recognizes the Union as the exclusive collective bargaining representative for all full-time, regular part-time and per diem nonprofessional employees employed by the Employer at its facilities located at 2801 Atlantic Ave., Long Beach, California.

D. Classifications covered by this agreement include: All full-time, regular part-time and per diem nonprofessional employees, including Admitting Rep/Fin Couns/Bed Pl, Admitting Representative, Anesthesia Aide, Anesthesia Technician, Autopsy Tech, Cardiovascular Technician II, Care Associate, Central Supply Technician, Clerk, Clerk Typist, Clerk Outreach, Clerk Sr., Clerk Receptionist, Client Service Rep (Path), Client Service Rep Sr (Path), Community Health Worker, Coord Staffing Scheduling, Coord Data/Scheduling, Coord Inventory Data, Coord Phlebotomy, Coord Phlebotomy Outreach, Coord Surgery Scheduling, Customer Service Representative, Dispatcher/Material Service, EKG Technician, Emergency Dept Technician, Emergency Department Tech Phleb, Endoscopy Technician, Health Info Mgmt Spec, Health Info Mgt Technician, Hearing Technician, Laboratory/Triage Tech, Lead Sanitation Aide, Lead Surgical Technician, Media Services Technician, Medial Library Technician, MHS Telecom Technician, Monitor Technician, Orthopedic Technician, Patient Care Assistant, Patient Services Technician, PBX Operator, Pharmacy Assistant I, Phlebotomist, Phlebotomist Donor Center, Phlebotomist Outreach, Pneumogram Technician, Receiving/Shipping Clerk, Rehabilitation Technician, Sanitation Aide, SPD Equipment Control Technician, SPD Technician I, SPD Technician II, Supply Aide, Surgery Technician I, Perioperative Patient Care Asst, Surgery Technician II,

4.

Technical Assistant, Unit Secretary and Unit Secretary Monitor/Techs employed by the Employer at its facility located at 2801 Atlantic Avenue, Long Beach, California; excluding all professional employees; business office clerical employees, licensed technical employees, skilled maintenance employees, guards and supervisors within the meaning of the Act.

E. LBMMC shall maintain job descriptions for all classifications covered by this Agreement. Upon request to the Human Resources Director, or designee, the Employer shall provide the Union with any existing job descriptions and/or individual position descriptions, for covered Employees. It is recognized that changes to job titles and duties may be necessary. In the event that the Employer intends to change job titles or job duties, it will send to the Union a draft of the job description(s), with the change(s) indicated, in advance of implementation. The Union shall then have fifteen (15) days to request a meeting for the purpose of meeting and conferring with respect to the proposed change(s).

F. New Classifications and Job Descriptions. In the event that the Employer establishes a new classification within the bargaining unit, in addition to those now in existence, the Employer and the Union will meet and confer with respect to rate of pay and job duties, prior to implementation.

G. Disputes concerning the interpretation and application of this Article are not subject to the grievance and arbitration provisions of Article 9 and 10 and shall be resolved by the National Labor Relations Board.

H. The Employer and the Union agree to encourage all personnel, regardless of position or profession, to perform in an efficient, courteous, respectful, dignified and trustworthy manner when such individuals interact with fellow employees, patients, and the public.

## ARTICLE 3 - MANAGEMENT RIGHTS

A. Paragraphs A, B and C of this Article are subject to the provisions contained in this Agreement and the laws and regulations governing the health care industry, patient care, nursing practice and other health care providers. Notwithstanding the foregoing, the Employer has the right to operate its business which includes the right to determine, change, discontinue, alter, or modify in whole or in part, temporarily or permanently, any of the following:

1. The number, location, or types of programs, services, units, facilities and organizations.

2. The medical and patient care standards, methods and procedures.

3. The price of all products and services, the price of all purchases, and the corporate and financial structure of the facilities.

4. The subcontracting of facility construction and maintenance or work not performed by present or future bargaining unit employees covered by this Agreement.

5. The equipment and machinery.

6. The promotion and demotion of all supervisors or any employee to a supervisory position at the facilities, provided that the creation of new supervisory positions or assignments shall not displace bargaining unit employees or their work, except as has been agreed to by the union.

7. The number and type of employees, including the number and type of employees assigned to any particular unit or shift.

8. Standards of performance and whether any employee meets such standards, subject to just cause standards.

9. The need for and the fair administration of physical examinations, including drug screening, or background information or criminal record checks as they pertain to new, initial probationary, or inter-facility transfer employees.

10. The direction and supervision of all employees.

11. The adoption of reasonable rules and regulations for all employees.

12. The hiring of employees.

13. The utilization of registry and temporary Employee.

14. The security of the employees, premises, facilities, and the property of the Employer.

15. The utilization of the Employer's premises, equipment, and facilities.

16. Maintain the current practice with respect to administering drug test(s) to employees.

17. The selection and retention or discontinuance of all catering and vending machine suppliers and other catering services and the price of their products and services.

18. The job classifications and the content and qualifications thereof.

19. The right to promote, reclassify, determine on-call and transfer, to maintain discipline and efficiency; to assign work assignments.

20. Determine additions or deletions to unit specific skill rosters, and the content of job descriptions.

21. Assign temporary relief by seniority on a rotational basis from unit assignments to other units or shifts when all other reasonable options have been exhausted.

22. Define the starting and ending times of shifts.

B. Any dispute arising regarding the exercise of any of the rights of the Employer enumerated above is not subject to the grievance and arbitration provision of this Agreement. The foregoing shall not preclude a Union grievance or arbitration contesting whether the Employer's actions or inactions are within the rights enumerated above.

C. During the term of this Agreement, the Union and the Employer agree upon request, to bargain in good faith about the following:

1. Subcontracting of the work currently performed by Employee covered by this Agreement.

2. The utilization of employees not covered by this agreement to do work, which is currently done by Employees covered by this Agreement.

3. Any management right not expressly provided for in this Agreement.

If no agreement is reached and the parties are at an impasse as to any of the above three issues, the Employer may implement its last proposal.

## ARTICLE 4 – SCHEDULED AND UNSCHEDULED WORKING TIME BEYOND SCHEDULED COMMITMENTS

A. Prior to posting the schedule as defined in Article 20, the Employer may schedule Employees to work beyond their scheduled commitment. Such time will be assigned as follows:

6

1. Employees may volunteer to work additional time during the posting period as defined in Article 20;
2. The Employer may assign additional time as to Employees who have volunteered pursuant to paragraph (1) above in the most cost effective manner;
3. In the event that no Employees volunteer for the needed additional time, the Employer will ask for volunteers to work the additional time;
4. In the event that no Employees volunteer pursuant to paragraphs (1), (2) and (3) above, the Employer may look for a volunteer outside of their cost center/unit as long as such volunteer has the required qualifications and competencies to perform the job.
5. Only in the event that no Employees volunteer pursuant to paragraphs (1) and (3) above, the Employer may assign the time on a rotational basis.

B. Unscheduled work time is defined as any time Employees are required to work beyond their scheduled work hours. Unscheduled work time will be assigned in the following order notwithstanding Article 20:

1. Qualified Employees, who have previously indicated availability to work overtime which is not scheduled pursuant to paragraph A above, may be called first.
2. Qualified Employees who are on duty will be given the opportunity to volunteer for such time on a rotational basis.
3. Qualified Employees in the department who are not on duty will be called on a rotational basis and requested to work on a voluntary basis.
4. As to options 1 –3 above, management reserves the right to choose the most cost effective alternative.
5. In the event that no Employees volunteer pursuant to paragraphs (1), (2), (3) and (4) above, the Employer may look for a volunteer outside of their cost center/unit as long as such volunteer has the required qualifications and competencies to perform the job. For those units that use central staffing, central staffing office will be called to explore options and call Registry and/or Temporary personnel.
6. Qualified Employees who are on duty will be assigned the work on a rotational basis.

C. For purposes of this Article, "rotational basis" shall mean that a seniority list will be posted and Employees will be called starting with the most senior person for purposes of asking for volunteers to work overtime, and starting with the least senior person for purposes of assigning overtime. Managers shall exhaust the list before going back to the starting point. For example, if on day one, the most senior person on the list declines to work overtime, and the second most senior person volunteers to work overtime, on the next occasion overtime is required, the third most senior person will be the first person asked to work overtime.

## ARTICLE 5 – CHANGE OF OWNERSHIP

A. In the event of a merger, sale, closure or other transfer of ownership of its operations in whole or in part, the Employer shall notify the Union in writing at least ninety (90) days prior to taking any action. The Employer shall meet at the Union's request to engage in good faith bargaining over the impact of such change.

B. The Employer shall not use the merger, sale, closure or other transfer of ownership to evade the terms of this Agreement.

7

## ARTICLE 6 - WORK STOPPAGE

A. The Employer and the Union acknowledge that the Employer differs in its operations from other non-healthcare industries because of the type of service it renders to the community and for humanitarian reasons. Therefore, during the term of this Agreement the parties agree to the conditions of this Article.

B. Neither the Union nor the Employee shall threaten to or participate in any strike, walkout, slowdown, sickout, sympathy strike or other work stoppage (collectively referred to as "work stoppage") during the life of this Agreement. In the event of any strike, walkout, slowdown, sympathy strike, or work stoppage or threat thereof, the Union and its officers will do everything within their power to end or avert the same.

C. The Employer, for its part, agrees that there shall be no lockout of Employee during the term of this Agreement.

D. Disputes contending that there are violations of Paragraphs B and C of this Article shall not be subject to the grievance and arbitration provisions contained in Articles 9 and 10.

E. Since time is of the essence in settling such disputes, in the event of a claimed violation or threat of violating any of the provisions of this Article, the party claiming such violation, in its sole discretion, shall have the choice of pursuing independently or concurrently any of the following courses of action.

  1. Submit such claim directly to an appropriate State Court and such claim may be submitted without regard to the arbitration provisions set forth herein. Each party hereby waives its right to remove any such action instituted to a Federal Court.

  2. Submit such claim to arbitration as follows: The claim shall be filed orally with any one of the following arbitrators: Howard Block, Fred Horowitz, May Ling Bickner, or Michael Prihar, Louis Zigman and the other party shall be notified orally. The arbitration hearing shall be held within eight (8) hours (or as soon thereafter as is possible) after filing of the claim. Continuance of said hearing shall be determined by the arbitrator. Absence from or nonparticipation at the hearing by any party shall not prevent the issuance of an award. Hearing procedures which will expedite the hearing may be ordered at the arbitrator's discretion and the arbitrator may close the hearing in his or her sole discretion when the arbitrator decides that he or she has heard sufficient evidence to satisfy issuance of an award. The arbitrator's award shall be rendered as expeditiously as possible and in no event later than twelve (12) hours after the close of the hearing. In the event the arbitrator finds that this Article has been violated, the arbitrator shall, as a part of his or her award, enjoin any continued or prospective violations of this Article, and further shall specifically order that all normal operations be resumed at once. The arbitrator is empowered to award damages for any violations of this Article. The award of the arbitrator shall be final and binding upon the parties. The award may be enforced in any appropriate court as soon as possible after its rendition with written notice to the party or parties against whom such enforcement is sought and each party hereby waives its right to remove any such action initiated in a State Court to the Federal Court. The fee of the arbitrator and all necessary expenses of the hearing, including a stenographic reporter if employed, shall be equally divided between the parties.

F. Any Employee who participates in work stoppage that is found to be in violation of this Article may be subject to discipline up to termination and shall not have recourse to the grievance procedure.

8

G. Neither the Union nor its agents shall purchase or use billboard, bench, newspaper, TV, radio, internet, intranet, magazine or other advertisements disparaging the Employer or its employees or management or services during the life of this Agreement.

H. Neither the Employer nor its agents shall purchase or use billboards, bench, newspaper, TV, radio, internet, intranet, magazine or other advertisements disparaging the Union or its services or employees or management during the life of this Agreement.

I. The Union will not place or cause anyone to place the Employer or the Employer's products or services on any "We Do Not Patronize" or "Unfair" lists.

## ARTICLE 7 - NO DISCRIMINATION

There shall be no discrimination by the Employer or the Union of any kind against any Employee on account of race, color, ancestry, political belief, sexual orientation or preference, religion, sex, marital status, national origin, age, physical or mental disability, medical condition, citizenship, pregnancy, genetic information or membership in or activity on behalf of a labor organization as provided by law.

## ARTICLE 8 - DISCHARGE AND DISCIPLINE

The right to maintain discipline is vested exclusively with the Employer. An Employee may only be disciplined or discharged for just cause. The Union shall be timely notified of all Employee suspensions and discharges.

The discipline or discharge of a probationary Employee may be done at any time during the initial probationary period at management's discretion. The Employer may extend the probationary period one time for a period of thirty (30) days. In such case, notice will be provided to the Union that the probationary period is being extended. An Employee who is on his or her probationary period who is disciplined or discharged shall not have access to the grievance procedure.

## ARTICLE 9 - GRIEVANCE PROCEDURE

A – A grievance is defined as a dispute concerning the interpretation or application of any provision of this agreement.

B. – Days are calendar days excluding Saturdays, Sundays, and Holidays.

C. The Union and the Employer recognize that the goal of the grievance procedure is to attempt to resolve the grievance at the lowest level possible with the least amount of time and resources. An additional goal is to not permit the grievance process to continue for long periods of time. As a result, a grievance that is not appealed to arbitration within 30 days following the Employer's denial of Step 3 or is otherwise inactive for a period of 120 days is deemed resolved and therefore not subject to arbitration unless the inactivity is due to both parties having agreed in writing, via hard copy or email, to place the grievance in abeyance.

D. In the case of a concern raised by an individual Employee, the Employee must first meet with his/her supervisor/manager to attempt to resolve the concern. The Union and/or Unit Representative may be present, and a manager may ask for a Human Resources representative to attend as well. Any resolution of concerns at this level shall not be precedent setting. If the concern is not resolved by this meeting, the concern may lead to a grievance

that shall be handled in accordance with the procedure set forth below.

Notwithstanding the above, the required meeting may be waived if the employee's concern alleges harassment or discrimination by his/her supervisor/manager. In addition, a grievance that raises a discharge decision or a contract interpretation question need not be presented to the Employee's supervisor/manager or, if presented, need not be addressed by the supervisor/manager. Such grievances may immediately go to the second step of the grievance process, as discussed in subsection E below. Further, the parties agree that a concern regarding formal discipline above the level of a verbal warning and below the level of discharge may be initially filed as a grievance instead of going through the concern process above, effectively moving such a concern to Step 1 of the grievance process.

A grievant shall be entitled to union representation at any meeting under this grievance procedure unless the grievant requests that he or she not be represented.

If the Union cancels, fails to attend or reschedules a meeting previously scheduled by the Parties under this Article, the burden is then on the Union to communicate with the Employer about a new date for such meeting in a reasonably expeditious manner.

E. In the case of a discharge or a contract interpretation, the grievance shall be taken up with the Executive Director of Human Resources, or his or her designee, at Step 2 of the process within thirty (30) working days. The Executive Director of Human Resources or his or her designee shall schedule a meeting between the Union and an Employee Relations Representative in an effort to resolve the grievance and that meeting, unless agreed otherwise by the parties, shall take place within fifteen (15) days after the filing of the discharge or contract interpretation grievance. The Executive Director of Human Resources, or designee, will respond in writing within a reasonable period of time, preferably fifteen (15) days, after the meeting (or after a scheduled subsequent meeting, if that occurs).

**Step 1**: For grievances other than those addressed in Part E above, the Union initiates the grievance procedure by completing and delivering a grievance form to the Executive Director of Human Resources or his or her designee, within thirty (30) days of the date upon which the Union or the grievant first became aware, or reasonably should have first become aware, of the events or circumstances which gave rise to the grievance. This includes any period of time in which an issue is being addressed as a concern, unless the parties agree otherwise. A meeting will be arranged by the Executive Director of Human Resources, or his or her designee, between the Local Union and the grievant's manager and/or immediate supervisor in an effort to resolve the grievance. Absent unusual circumstances or agreement of the parties, that meeting should take place within fifteen (15) days after the filing of the grievance. A Human Resources representative may be present at this meeting. If a Human Resources professional is requested by the manager to attend or otherwise attends, this meeting may be considered by the parties to have been a Step 2 meeting instead of a Step 1 meeting.

Absent unusual circumstances or agreement of the parties, the Employee's manager or supervisor will respond in writing within fifteen (15) days of the meeting. The written response will include the reason for the Hospital's denial of the grievance. All written responses shall be addressed to the Grievance Chair or designee with copies to the grievant and to the designated Employee Representative. The USW International Union will be sent a copy of this Step 1 response. Any resolution of grievances at this step shall not be precedent setting, unless otherwise agreed to by the parties.

**Step 2**: If the grievance has not been resolved at Step 1, the Local Union may, within ten (10) days of receipt of the Step 1 answer, submit the written grievance to the Executive Director of Human Resources or his or her designee.

Absent unusual circumstances or agreement of the Parties, a meeting will be held within fifteen (15) days with the Employee Relations Representative, the manager (if requested) and the Local Union. Absent unusual circumstances or agreement of the parties, the Employee Relations Representative or designee will respond in writing within ten (10) days after the meeting. The written response will include the reason for the Hospital's

denial of the grievance.

**Step 3:** If the grievance has not been resolved at Step 2, the Local Union may, within ten (10) days of receipt of the Step 2 answer, submit the written grievance to the Executive Director of Human Resources or his or her designee, for transmission to the Senior Vice President of the appropriate area or designee.

Absent unusual circumstances or agreement of the Parties, a meeting will be held within fifteen (15) days by the Senior Vice President or his or her designee and Representative(s) of the USW International Union unless both parties mutually agree to do otherwise. Absent agreement of the Parties, the Senior Vice President of the appropriate area or designee should respond in writing within fifteen (15) days after the meeting. The written response will include the reason for the Hospital's denial of the grievance.

In addition to the USW International Union Representative(s) who participate in Step 3 of the grievance procedure, the Local Union designee(s) will be permitted to participate.

F. One or more of the above grievance steps may be waived by written agreement of the Parties.

### GENERAL

The Parties shall make all reasonable efforts to resolve grievances promptly, informally and amicably. Both Parties also agree that they should communicate to each other in advance in circumstances where an exception to a deadline may need to be considered. Also, the Parties shall cooperate in exchanging information in the manner required by controlling law, and shall not knowingly withhold information otherwise required by law to be provided, if and when requested by the other Party.

Absent unusual circumstances or agreement of the Parties, employees should be notified 24 hours in advance of any meeting in Human Resources in order to give them time to contact a union representative if they so choose. Meetings should not be delayed in circumstances where the employee did not secure proper representation.

## ARTICLE 10 - ARBITRATION

A. Grievances which are not settled pursuant to Article 9, Grievance Procedure, and which the Parties wish to pursue further, shall be submitted to arbitration as provided in this Article.

B. Requests for arbitration must be received by the Vice President, Employee and Labor Relations, within thirty (30) days following receipt of the Step 2 response required under Article 9, Grievance Procedure.

C. As soon as possible and in no event later than ten (10) days after the Executive Director Human Resources receives written notice of the Union's decision to arbitrate, the parties shall agree upon an arbitrator. If no agreement is reached within said ten (10) days, the arbitrator shall be selected from the following list of seven (7) arbitrators by alternately striking names until one name remains. The party who strikes the first name shall be determined by coin flip..

- Mai Ling Bickner
- Fred Horowitz
- Michael Prihar
- Louis Zigman
- Michael Rappaport
- Matt Goldberg
- John Kagel

11

D.  The fees and expenses of the arbitration will be borne equally by the parties. Each party shall bear the expense of the presentation of its own case.

E.  The arbitrator's authority shall be limited to interpreting the provisions of this agreement and the arbitrator has no authority to add to, subtract from, or change the agreement in any way. The arbitrator's decision will be final and binding upon all parties concerned.

## ARTICLE 11 – ASSOCIATION MEMBERSHIP

A.  Membership. As a condition of continued employment, Employees covered by this Agreement shall, within 31 days after hiring or the effective date of the Agreement, whichever is later, join the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW) or pay the USW an agency fee in an amount not to exceed the standard fee, periodic dues, and general assessments of the USW. However, any Employee who is a member of a bona fide religion, body or sect which has historically held conscientious objections to joining or financially supporting labor organizations shall not be required to join or financially support the USW as a condition of employment. Such Employee may be required, in lieu of periodic dues, initiation fees, or agency shop fees, to pay sums equal to such dues, initiation fees, or agency shop fees to a non-religious, non-labor, charitable fund exempt from taxation under Section 501(c)(3) of the Internal Revenue Code, chosen by such Employee from a list of at least three such funds designated in a memorandum of understanding between Employer and the USW, or if the memorandum of understanding fails to designate such funds, then to any such fund chosen by the Employee. Proof of such payments shall be made on a monthly basis to the parties as a condition of continued exemption from the requirement of financial support to the USW.

B.  New Employee Notice. The Employer shall give to each Employee at the time of employment, the current form authorizing voluntary payroll deductions of monthly dues. Within thirty (30) days after execution of this Agreement, and every ninety (90) days thereafter, the Employer will provide the USW with a database (in Excel or compatible format) master list of all employed Employees who are subject to the provisions of this Agreement, giving the names, addresses, telephone numbers, classifications, units, shifts, current wage rates, employment status, social security numbers, and dates of hire. On or before the tenth day of each month, subsequent to the establishment of the master list, the Employer will forward to the USW a database including the names, addresses, telephone numbers, classifications, units, shifts, current wage rates, employment status, social security numbers, and dates of hire of new hires and the names and units of Employees who have resigned or who have been terminated.

C.  Maintenance of Membership. Upon notice from the USW and after counseling by the USW, an Employee who fails to meet required membership or pay the service fee shall be given fourteen (14) days notice of termination or shall be allowed to resign with proper notice to the Employer.

D.  Payroll Deduction of Union Dues or Service Fee. The Employer will check off, by pay period, monthly dues or service charges, including, where applicable, initiation fees and assessments, each in an amount as designated by the USW, effective upon receipt of individually signed voluntary check off authorization cards. The Employer shall within ten (10) days remit any and all amounts so deducted with a complete summary to:

> United Steelworkers
> International Secretary-Treasurer
> 5 Gateway Center
> Pittsburgh, PA 15222

E.  Indemnification. The USW shall indemnify and hold the Employer harmless against any cost or liability

resulting from any and all claims, demands, suits or any other action rising from the operation of any provision of this Article. The indemnification includes the cost of defending against any such actions or claims. The USW shall have no monetary claim against the Employer by reason of its failure to perform under this Article.

## ARTICLE 12 - BARGAINING UNIT INFORMATION

On a facility and departmental basis, the Employer shall supply a database list in Excel format of all Employees covered by the Agreement by name, address, telephone number, social security number, e-mail address, wage rate, seniority date, employment status, FTE count, job title, unit and shift to the union no later than thirty-one (31) days after the ratification of this Agreement.

Thereafter, the Employer shall supply monthly the above information regarding hired, and terminated Employees and Employees transferring into the bargaining unit during the preceding month and a master list quarterly

## ARTICLE 13 - BULLETIN BOARDS

The Union shall have reasonably-sized bulletin boards located outside the cafeteria entrance, Surgery (Main OR), the Heart Institute, Miller Children's Hospital, Pediatric Orthopedic Specialty Center and Torrance Multispecialty Center and other locations as may be agreed by the Parties for posting official union business, but not other Union materials or other Union campaign materials. No material shall be posted on the bulletin boards until approved for posting and initialed by the Director of Human Resources. Posted material shall bear the date and identity of the Union. Any material posted by the Union in any location shall not be controversial, misleading, contain any deliberate misstatements, or violate any federal, state or county laws. In addition, the Union shall not post any notice which: (1) involves a politician, political candidate, or political issue, or (2) disparages or demeans the Employer, its affiliates, or related entities or any individual.

## ARTICLE 14 - UNION/UNIT REPRESENTATIVES

A. The Union may appoint Employees to serve as Unit Representatives. The Union shall notify the Employer in writing, pursuant to notice provisions of this Agreement, of the names of the Unit Representative and the specific authority of the Unit Representative to act on behalf of the Union. The function of the Unit Representative will be to handle grievances and to ascertain that the terms and conditions of the Agreement are observed. A Unit Representative shall not conduct union business during his or her working time. A Unit Representative shall not, in conducting union business, interfere with the working time of any other employee.

B. In the event the Employer schedules a meeting at which a Unit Representative's presence is required, the Unit Representative shall not lose pay as the result of attending such meeting.

C. There shall be no more than two Representatives (Unit Representative and/or Local Union Representative) in attendance at any grievance or investigatory meeting, unless otherwise agreed to by the Employer in advance of the meeting.

D. Local Union Negotiating Committee's Benefits/Negotiating Schedule: All members of USW Local 2801 Negotiating Committee shall be excused from duty each day of negotiations. The Local Union and/or the

13

negotiation team member shall submit to the respective supervisor/manager of each negotiating team member, as far in advance as possible, a copy of the negotiating schedule and changes thereof. The supervisor/manager shall revise work schedule and release the member from duty on all dates and times specified, if possible.

## ARTICLE 15 – UNION REPRESENTATIVE VISITATION

Duly authorized Employee representatives of the Union shall have access, upon prior approval from the Director of Human Resources, to the Employer's facilities for purposes related to the administration of this Agreement. Such approval shall not be unreasonably withheld. Such Employee representative shall not interfere with the work of employees or the confidentiality of patients, and shall comply with security regulations applicable to visitors of the Hospital and shall comply with reasonable security measures as directed by the Director of Human Resources. Employee representatives shall not conduct Union business in any patient care or employee work areas of the Hospital. If the Employee's representative wishes to meet an employee such meeting shall be held before or after the Employee's shift or on non-work time such as the Employee's lunch period.

## ARTICLE 16 – PROFESSIONAL PRACTICE COMMITTEE

Objectives: The objectives of the Professional Practice Committee (PPC) shall be to consider constructively the professional practice of employees including improvements related to the utilization of personnel, and to recommend ways and means to improve patient care and the health and safety of employees.

Composition: One employee from a patient care area will be appointed by the Union to participate in the RN's PPC as outlined in the CNA contract. Said employee shall be entitled to 2 hours pay/month at the Employee's straight time rates for the purpose of attending such committee meeting or meetings.

## ARTICLE 17 – PERSONNEL FILES

A.  An Employee shall have access to his/her personnel file pursuant to MHS policy # 332.

B.  An Employee may consent in writing to allow unit representatives and/or union representatives access to the Employee's personnel files. Such representatives shall only have such access rights as provided by MHS policy # 332.

C.  Notices of discipline shall not be placed in the Employee's personnel file without the knowledge of the Employee. If the Employee refuses to sign a disciplinary notice the manager will indicate that the Employee refused to sign before inserting such discipline in the Employee's personnel file. An employee may refuse to sign any notice of discipline and may indicate such on the notice. Employee shall be provided a copy of the discipline regardless of their refusal of signature.

D.  An Employee shall have the right to insert in his/her personnel file reasonable supplementary material and a written response to any item in the file. Responses shall remain attached to the material it supplements for as long as the material remains in the file.

14

## ARTICLE 18 - EMPLOYEE HEALTH AND SAFETY

A. The Employer and Union recognize that management and Employees bear responsibility to help ensure a safe and healthy workplace.

B. Health and Safety: The parties agree that the union will appoint a bargaining unit Employee to serve as Safety Representative for each department or functional unit as defined by management who will conduct safety surveillance rounds on a bi-monthly basis in areas within the department boundaries. Said Employee shall be employed in the department or functional unit for which he/she is appointed as a Safety Representative. The name of the Safety Representative shall be posted on the departmental or functional unit's Employee bulletin board for which the Safety Representative is assigned.

  1. The appointed Safety Representatives will receive training by the Hospital Safety Director and/or the Executive Director, Facility Services, or their designee.
  2. The Safety Representative will complete safety surveillance rounds as scheduled by the department manager or his/her designee.
  3. The Safety Representative will complete the hospital safety surveillance form and submit it to his/her department manager. The manager will then distribute one copy to Director of Safety, and file the original in the department's Environment of Care Manual.
  4. The department manager of the surveyed department will immediately investigate conditions that present an immediate threat of serious injury or loss of life.
  5. The Safety Representative will initiate work orders and submit to the manager for review, signature and distribution to ensure correction of non-urgent deficiencies.
  6. The hospital Safety Director and/or the Executive Director, Facility Services, will perform random audits at the department level to ensure completion of scheduled safety surveillance

C. The union will select 3 Employee representatives to membership on the hospital safety committee.

D. The union will select 3 Employee representatives to membership on the hospital accident review board.

E. All Employees shall be provided orientation including safety per existing hospital policy.

F. All hours spent performing the above listed duties shall be treated as hours worked and Employees shall be compensated for such hours at their regular rate of pay.

## ARTICLE 19 - PERSONNEL CATEGORIES

A. Full-time. Full-time Employee is defined as one who is eligible for benefits and is hired to regularly work on a continuing basis 72 to 80 hours/pay period.

B. Regular Part-time. A regular part-time Employee is defined as one who is eligible for prorated benefits and is hired to regularly work at least 40 hours but less than 72 hours within a pay period.

C. Per Diem. Per Diem is defined as those who, whether scheduled or not, (1) work on an as-needed or irregular basis, or (2) are called for work when other employees are unavailable, or (3) accept work assignments in accordance with agreement between the employee and the employer. Employees in this category are not eligible for benefits. These Employees are eligible for pension benefits as may be defined under the applicable pension plan.

D. Nothing in this Article shall be construed to constitute a guarantee of hours of work per day or per week or of days of work per week.

E. Newly hired Employees shall be on probationary status for ninety (90) days except as may be extended

15

pursuant to Article 8.

## ARTICLE 20 - SCHEDULING

The Employer shall post work schedules at least 21 days in advance of their commencement date. At least two weeks prior to the schedule posting Employees will be allowed the opportunity to request scheduled work days or time-off based on unit practice. If an Employee does not submit a request in this time period, the Employee may be scheduled according to department needs by the unit manager. Once the schedule is posted no requests for scheduled time-off need be permitted. Any change in the posted schedule shall require mutual agreement of the Employer and the affected Employee.

## ARTICLE 21 - CALL OFFS

A. An Employee who is eligible for standby pay as defined in Article 26 may volunteer to be placed on standby and will be compensated in accordance with Article 26.

B. Employees who are directed by management to take budget time have the option to take either PTO or unpaid budget hours ("UB").

C. Employees who volunteer for budget time have the option to take either PTO or unpaid absence hours ("UA"). There is no accrual of benefits for unpaid absences.

D. The order of call off shall be:
    1. Employees on Overtime
    2. Volunteers
    3. Per Diem
    4. Full-time or part-time pursuant to a rolling seniority list.

E. At the discretion of management, benefited Employees who are called off may displace Per Diem Employees on another unit provided the benefited Employee is qualified to perform the work.

F. When call offs are due to an overlap of shifts, a partial shift call off is permissible.

## ARTICLE 22 — FLOATING

Beginning on November 1, 2014, employees in PCA, EDT, PST, Unit Secretary and Monitor Technician positions with a seniority date of twenty (20) years or greater will not be required to float outside their Division unless patient care circumstances dictate the need to do otherwise or if the number of persons that fall within this exemption constitutes a meaningful enough percentage of floaters servicing a Division of the Hospital to create problems of coverage in that Division. This provision does not affect the operation of the Float Unit.

A. The union and Employer recognize that, in order to meet patient and operational needs, it is necessary to float personnel from their usual areas of work. As used in this article, the terms "float" and "floating" do not refer to the movement of employees who, because of the nature of their jobs, are required to carry out their responsibilities in more than one area.

B. Employees shall be assigned only those duties and responsibilities for which they have demonstrated competency.

C. Any employee floated to an unfamiliar area will be assigned a specific individual in order to familiarize her/him with the work environment.

16

D. Employees will be floated in the following order:
   1. Volunteers
   2. Registry and Travelers per Agreement with Agency
   3. Per Diem
   4. Part time/Full time in rotation by reverse seniority

# ARTICLE 23 - SENIORITY, LAYOFF, RECALL

A. Seniority
   1. Seniority shall mean date of hire with the Employer or another Memorial Hospital facility.

   2. Seniority dates shall only be adjusted for a break in service from the Employer associated with a voluntary separation of less than 12 months.

   3. After a probationary period of 3 months, seniority shall only be broken by:
      a. Break in service associated with a termination of more than 12 months,
      b. Twelve months of layoff without recall to a permanent position,
      c. Failure to respond to recall notice within three (3) working days after receipt of certified notice of recall,
      d. Termination for just cause,
      e. Failure to report to work upon expiration of an authorized vacation or Leave of Absence.

B. A seniority list of Employee names and seniority dates, updated quarterly, shall be posted in each department and sent to the Union.

C. Layoff
   1. Layoff is defined as a permanent workforce reduction anticipated to last more than fourteen (14) days.
   2. Prior to a layoff, the Employer and the Union shall meet and confer about the impact of such a reduction.
   3. Providing an Employee is qualified to perform the available work, seniority shall be the controlling consideration in a layoff or recall.

D. The order of Layoff shall be:
   1. Registry
   2. Per Diem
   3. Regular, full & part-time.

E. Layoff of Employees in categories (2) and (3) of Paragraph D above shall be accomplished as follows:

   1. A laid off Employee shall fill any vacancy that the Employer has for which the Employee is qualified. An Employee shall not be required to fill a vacancy that involves a change in shift or number of hours worked unless they choose to do so.

   2. If there is no vacancy, such an Employee shall displace the least senior Employee within the same job code in his/her same functional unit (defined as the six digit cost center to which the employee is assigned) of the same status (full-time, part-time or Per Diem.)

F. For the purposes of this Article, an Employee shall have up to a 60-day period to demonstrate that he/she can perform the duties of the position. In addition, qualified shall mean the necessary skills, education, certifications or credentialing needed to perform the duties of the position.

17

G. Recall

1. All vacancies covered by this Agreement shall first be filled according to Article 24 Job Posting. Employees on recall may, for a period of ninety (90) days following layoff, be informed by the Union of openings posted for bid by current Hospital employees. Such persons on recall will be considered for openings for which they bid and are qualified, along with any current qualified employees who bid for such positions, prior to those openings being filled by outside candidates.

2. A vacant position not filled as provided in 1 above shall be made available to an Employee on the recall list. The position shall be offered to an Employee laid off within the same functional department to which the Employee was assigned at the time of the layoff in which the position is available in reverse order of layoff. In the event there are no Employees on the recall list from the unit in which there is a job opening, the position shall be offered to an Employee on the recall list in reverse order of layoff, provided the Employee is qualified for the position.

3. An Employee on the recall list may refuse one recall offer prior to being removed from the recall list. Otherwise, laid off Employee shall remain on the recall list for twelve (12) months.

4. Any Employee on a recall list shall be responsible for providing the Hospital with a current address and telephone number.

H. Severance Pay

Laid off benefited Employee shall receive severance pay according to the following schedule:

| Length of Service | Notice of Intent |
|---|---|
| 1. Temporary employees and Employees with less than 3 months | No Pay |
| 2. 3 Months – 4 Years | Two Weeks |
| 3. 5 - 10 years | Three Weeks |
| 4. 11 – 15 Years | Four Weeks |
| 5. Over 15 Years | Five Weeks |

All severance pay is based upon an Employee's regularly scheduled hours. Also, employees are not eligible for severance pay if they have been on a Leave of Absence for any reason for a period in excess of four months at the time of a layoff. The Employer does not provide severance pay to employees upon termination of employment.

## ARTICLE 24 - JOB POSTINGS, TRANSFERS AND PROMOTIONS

A. Job Vacancies. Job vacancies will be posted on the bulletin boards located outside the Human Resources Office and by the cafeteria exit and on the Intranet for seven (7) calendar days prior to filling the position. The Employer may temporarily fill the position during the posting period.

B. Eligibility. In order for an Employee to be transferred or promoted within the same functional unit ("functional unit" is defined as the six digit cost center to which the Employee is assigned) or another functional unit, the Employee must qualify for the position on the basis of education and experience. To be eligible for a transfer or promotion, an Employee must have completed the probationary period in his or her current position unless approval is obtained from the appropriate Administrative and Management persons. To be eligible for a transfer or promotion, an Employee also cannot have received a formal disciplinary action within six (6) months of applying for the position. Qualified for this Article means the necessary skills, education, ability, certification, or credentialing needed to perform the duties of the position. An Employee will have up to a 90-day period to demonstrate that she/he can perform the duties of the position. During that period, the Employer will make reasonable efforts to ensure that the Employee is properly oriented and trained on the job. During the qualifying period, if the Employer or Employee decides to cease

18

the qualifying period, the Employer will use reasonable efforts to return the Employee to his or her former position and if available, shift or floor.

C. Awarding Position.

    1.  Employees who work in the functional unit where the vacancy exists shall be given preference to fill such vacancies by seniority over Employees outside the functional unit.

    2.  If a vacancy is not filled as provided in C.1. above, Employees in the department ("department" is defined as the two digit cost center to which the functional unit is assigned) shall be selected by the Employer based on the qualifications defined in B above, and if two or more Employees are relatively equally qualified as defined in B above, then seniority shall prevail. Any bargaining unit Employee who has been or who is promoted to a supervisory or management position shall retain their bargaining unit seniority. Supervisory or management Employees who have been promoted within 2 years of the job posting may apply for open bargaining unit positions. They may use their bargaining unit seniority for a period of two years from their transfer out of the bargaining unit to apply for such positions. Such Employees shall retain their bargaining unit seniority, but shall not accrue bargaining unit seniority while in a supervisory or management position.

    3.  If a vacancy is not filled as provided in C.2. above, it will be filled by Employees outside the department selected by the Employer based on qualifications as defined in B above, and if two or more Employees are relatively equally qualified as defined in B above, then seniority shall prevail.

    4.  Employees who submit bids after the seven (7) calendar days provided for in A above shall have no preference over outside applicants.

D. Unfilled Positions. If the vacancy is not filled as provided above, the Employer may fill the position with outside applicants, except that if there are Employees on the Recall list, they shall have preference over outside applicants.

E. Transfer for Other Reasons. The Employer reserves the right to transfer an employee for lack of competence, failure to meet job requirements, just cause discipline or non-licensure. The Employer may temporarily transfer an Employee who possesses special skills or other abilities to another area of the hospital provided the Employer has posted such position and such transfer does not exceed 45 days and may be extended with mutual agreement.

# ARTICLE 25 - HOURS OF WORK

A.  Work Period: (8/80) is defined as 14 consecutive "work days" commencing on Sunday and ending on Saturday.

B.  Work Period: (8/40) is defined as 7 consecutive "work days" commencing on Sunday and ending on the following Saturday.

C.  C. Work Day: Is defined as twenty-four (24) consecutive hours commencing at the employees regular starting time and ending at the employees regular starting time the following day.

D.  Regular Rate: The employee's "regular rate of pay" is the rate that is used to compute the employee's overtime compensation. The "regular rate" is dependent upon any shift differential, on-call pay, etc. an employee may receive in a pay period.

E.  Alternative Work Schedules:

    1.  Twelve Hour Shift Program: Where a 12 hour work schedule is in effect, the normal workday shall consist of twelve (12) hours. Work in excess of the (12) twelve hours in a workday shall be paid at the rate of double time. Time and one-half employee's regular rate of pay will be paid for all hours

19

worked in excess of forty (40) hours in one work week.

2. Ten hour Employees: Where a 10 hour work schedule is in effect, the normal workday shall consist of ten (10) hours. Work in excess of the (10) hours in a workday shall be paid at the rate of time and one-half the Employee's regular rate up to twelve (12) hours, and double time after twelve (12) hours. Time and one half their regular rate of pay will be paid for all hours worked in excess of forty (40) hours in one work week.

F. Alternate Work Week Elections:

1. For groups of employees not already on a 10 or 12 hour work schedule, the employer may implement 10 or 12 hour shifts among any group of employees covered by this Agreement by holding secret ballot elections among the employees in an affected group, such as a shift or part of a shift in a unit or department by job code. In the event that a majority of employees who vote, vote for converting to an alternative workweek schedule, the employer may then implement the alternative workweek schedule.

2. There shall be no more than one (1) election among any affected group of employees as defined above during the term of this agreement unless one-third (1/3) or more of the employees in the affected group request another election.

G. Time and One Half Payment for eight (8) hour shift employees: Time and one half shall be paid for hours worked:

1. In excess of eight (8) hours within any 24 hours workday.

2. In excess of eighty (80) regular hours worked in any fourteen (14) day work period or over forty (40) regular hours worked in any seven (7) day work period.

3. On a designated shift worked on a legal holiday recognized by the hospital. A holiday consists of a 25-hour period commencing at 11:00 p.m. the day prior to the holiday and concluding at 12:00 a.m. on day after the holiday.

H. Double Time Payment: Double time shall be paid for hours worked in excess of twelve (12) hours within any 24 hour workday.

I. Non-Productive Pay: Non productive pay provided through Paid Time Off, Bereavement, etc. shall not be counted as hours worked for the purpose of calculating overtime hours.

J. Compensatory Time Off: The practice of granting employees time off "in lieu of" the payment of overtime is prohibited.

K. Payment of Overtime:

1. All overtime must be authorized by the supervisor prior to the working of such hours.

2. Employees in emergency situations are expected to obtain authorization after the overtime has been worked. All overtime worked must be paid, irrespective of an employee's not having received the proper approvals.

3. Under normal circumstances, employees are required to have the approval of their supervisors prior to working overtime. On those occasions when an emergency arises and this is not possible, employees are required to report to their supervisors the amount of overtime they have worked and the reason for having done so. The reason for having worked overtime must be documented in the automated time keeping system. The Hospital must pay employees for all time spent working. Therefore, if an employee reports to work early and commences work, the employee must be paid for this time even if he/she does not have the approval of his/her supervisor to do so. Likewise, if an employee continues working after his/her normal quitting time, the employee must be paid for any time worked.

4. Employees who have incurred overtime due to commencing work prior to their regular scheduled start time, or continue work after their normal quitting time without approval to do so should be counseled that this practice is unacceptable and will lead to disciplinary action if continued.

20

5. In instances where automated time and attendance devices are used and an employee "clocks" in early or out late (five minutes or later) without working, he/she will not be paid for any resulting overtime. Employees who do this are required to make this correction in the automated time keeping system by indicating when they actually started or stopped working. Employees should be instructed not to "clock" in more than five minutes prior to their normal starting time, or out more than five minutes after their regular quitting time.

L. Meal Periods:

1. The Employer will provide meal periods in accordance with State law.

2. Penalties for Missed Meal Periods will be paid in accordance with State Law.

3. The employee shall immediately notify his/her manager prior to his/her inability to take his/her meal period.

M. Rest Periods:

1. The Employer will provide rest periods in accordance with State law.

2. Penalties for Missed Rest Periods will be paid in accordance with State law.

3. The employee shall immediately notify his/her manager prior to his/her inability to take his/her rest period.

N. Reporting Pay:

1. If an employee reports to work on a scheduled workday, but is not put to work, or is furnished with less than half his/her usual or scheduled day's work, the employee must be paid for the greater of:

a. Half of his/her scheduled day's work (up to four (4) hours,) or

b. Two (2) hours at his/her regular rate of pay

2. The Medical Center is not required to pay reporting time pay to employees if one of the following occurs:

a. The Medical Center makes a good faith effort to contact an employee at least two (2) hours before his/her scheduled reporting time to advise the employee that he/she should not report to work.

b. Business cannot be conducted due to threats to employees or property, or because of the recommendation of civil authorities.

c. Employees cannot commence work due to a failure of the sewer system or public utilities, or

d. Employees cannot work due to an act of God or other cause outside of the Medical Center's control

e. Employees who request to leave early

f. Employees who are on a paid standby status and are called to perform work on non scheduled time

g. Employees who are asked to leave work for disciplinary reasons

h. Employees who report to work unfit

O. Holidays: LBMMC/MCH observes six (6) legal holidays each year. These are:

| | |
|---|---|
| New Year's Day | January 1 |
| Memorial Day | Last Monday in May |
| Independence Day | July 4 |
| Labor Day | First Monday in September |
| Thanksgiving | 4th Thursday in November |
| Christmas Day | December 25 |

When a Medical Center recognized legal holiday falls on Saturday, the holiday will be observed on the

21

preceding Friday resulting in the closing of some departments, and others implementing a reduced staffing schedule. When the Medical Center recognized holiday falls on Sunday, the following Monday will be observed and the same will occur.

P. Holiday Pay:

1. Paid time off that is used on holidays is paid at the employee's base hourly rate, exclusive of shift differential.

2. Full time and part time and Per Diem employees who work on a legal holiday recognized by the Medical Center will be paid at time and one half for hours worked. This "premium pay" begins at 11:00 p.m. the day prior to the holiday and ends at 12:00 a.m. on the day after the holiday.

3. Benefit eligible employees who work on a legal holiday and have Paid Time Off available may, with the approval of their supervisor, take a P.T.O. day off at a later date.

Q. Vacation Scheduling:

1. Vacation time will be granted consistent with patient care needs for the unit. Requests for vacation shall not be unreasonably denied.

2. Vacations will be approved by the supervisor during two defined sign-up periods. The two sign-up periods shall be January and July of each year. Approvals will be granted based on seniority.

3. Approval of vacation time will be based on a rotation system. Employees may only take same time off once every three (3) years unless this time is available after all other employees have had an opportunity to sign up during the designated sign up period.

4. After the defined sign up period is over, additional vacation time may be granted based on the availability of time off on the vacation calendar. Approvals after the defined sign up period will be on a first come, first served basis.

5. Vacations which have been formally approved by the Manager will not be displaced by subsequent vacation requests of other staff.

6. Vacation requests are not granted until final approval is given by the manager. Requests for vacation will be approved within 14 days after the closing of the sign ups.

7. After all of the above factors have been considered, preference in vacation scheduling will be given to employees with the most seniority when more vacation requests are received for specific time periods than can be granted.

8. Vacation Scheduling around Holidays: With respect to Christmas Holiday week, New Year's Holiday week, Thanksgiving Holiday week, and Spring Break (one week before and one week after Easter) an employee may not be granted more than one of these weeks per year as vacation. However, additional vacation time off during the above-referenced holiday weeks may be granted based on specific department staffing needs.

R. Employees may have more than one job code/classification. An employee who is assigned to and who works 2 hours or more in his/her higher classification (job code) will be paid for all hours worked in that higher classification (job code).

## ARTICLE 26 – COMPENSATION

A. Pay Increases

The Parties agree that the pay changes below will occur under Article 26A, and will be set forth in the pay grid in

Appendix A of the Agreement.

1. A pay increase of 3% will be made, respectively, the first full pay period in March of 2013, March of 2014, March of 2015 and March of 2016. A lump sum adjustment of 1% (or, for full-time bargaining unit members only, $250, if 1% is less than $250), will be made to full-time and part-time bargaining unit members. This lump sum will be processed in the pay period of November 25, 2012 and paid on December 14, 2012.

2. No Employee shall receive a lower pay rate as result of this contract.

3. Pay rates may be increased by mutual agreement of the Employer and the Union.

B. Experience Pay Steps

1. With respect to Lab/Triage Techs, Phlebotomists, Phlebotomists Outreach, EDT's, Phlebotomists, Ortho Techs and Surg Techs, the Employer will give current employees credit for prior years experience in the job (see Appendix B for explanation and calculation) and place said employees on the wage grid accordingly.

2. The Employer may hire anywhere on the grid based upon prior experience for the jobs listed in "1" above.

3. With respect to other job classifications covered by this Agreement, the Employer may hire new employees based upon experience up through the five (5) year step of the wage grid.

4. The Employer will provide the union, upon request, a list of all new hires including their new hire rate and their verified experience rate.

C. LBMMC/MCH Per Diem Wages, Categories and Requirements:

1. All Per Diem positions require than an Employee has been validated as competent or demonstrate competency during their 90-day probationary period.

2. Per Diems shall be paid at the rates specified in Table 26.2.

3. Nothing in this Article or in Table 26.2 of this Agreement shall constitute a guarantee of work or a specific number of hours per shift or schedule.

D. Lead Differential

1. Employees who are designated and assigned by management to serve as a "lead" on a rotating or temporary basis, in the absence of a manager, supervisor, and/or officially classified department lead (as defined by job title), shall receive pay for assuming temporary lead responsibilities. The fact that there is no supervisor present does not, by itself, indicate performance of lead responsibilities; temporary leads must be assigned. The parties agree that while performing these temporary lead responsibilities, employees shall receive a lead differential of $1.70 per hour.

E. Shift Differential: The Parties agree to revise Table 26.2 such that bargaining unit employees in job titles that currently receive a 2nd shift differential of less than $1.75 will, as of the payroll period of November 25, 2012, receive a 2nd shift differential of $1.75. Bargaining unit employees in job titles that currently receive a 3rd shift differential of less than $2.25 will, as of the payroll period of November 25, 2012, receive a 3rd shift differential of $2.25.

1. Employees shall be paid PM differential for a shift that commences on or after 12:00 PM, or prior to 8:00 PM and at least 50% of scheduled hours are worked after 3:30 PM. Employees shall be paid night shift differential for any shifts which commence on or after 8:00 PM, or prior to 3:01 AM and at least

23

50% of scheduled hours are worked between 12:00 AM and 7:00 AM.

2. Shift differential for 12-hour shift employees shall be paid as follows:

3:00 PM – 11:00 PM Differential

11:00 PM – 7:00 AM Night Differential

3. If an Employee works two (2) or more hours of overtime, which extends into the following shift (evening or night), the differential for that shift will be applied to all of the overtime worked.

4. If an Employee is scheduled to work an evening or night shift, but at the request of his/her supervisor, reports to work prior to the time which qualifies for either the evening or night differential, he/she will be entitled to the appropriate differential for all hours worked after either 12:00 PM or 8:00 PM.

5. Day shift Employees who report to work prior to or at 3:00 AM and continue working after 7:00 AM, are eligible for a maximum of four hours of night differential. All overtime resulting from the extended shift will be paid at the day shift rate, which excludes the night differential.

6. An Employee, who is sent home early due to reduced staffing needs, and as a result fails to meet the 50% hours requirement, will receive the applicable differential paid.

7. Employees on paid stand-by, who are called back to work during a shift that qualifies for the differential, shall be paid the applicable differential for all hours worked.

8. Differential rates will be paid as specified in Table 26.2. However, new hires following the beginning date of this Agreement who would be eligible for shift differential will receive $1.75 for 2nd shift differential or $2.25 for 3rd shift differential regardless of what position they are hired into.

F. Standby and Call Back Pay:

1. Standby Pay

The Parties agree to the following modification of Table 26.1, effective on the payroll period of November 25, 2012:

Table 26.1 – The standby and call back rate for the BioMedical Equipment Technicians and the MHS Telecom Technician will be $5.75.

a. Employees on standby are responsible for ensuring that they can be reached promptly by telephone or pager and are expected to respond and report to work within 45 minutes of being called.

b. Standby hours are not considered hours worked for any purpose;

c. Employees on standby shall be paid when on standby as follows:

## Table 26.1

| Other Non-professional Standby Rates | | Rate | Skilled Maintenance Standby Rates | | Rate |
|---|---|---|---|---|---|
| UO4511 | Anesthesia Technician | 5.75 | UM4070 | Biomedical Equipment Tech I | 5.75 |
| UO6771 | Autopsy Technician PD | 5.75 | UM4071 | Biomedical Equipment Tech II | 5.75 |
| UO3135 | Cardiovascular Technician II | 5.75 | UM4072 | Lead, Biomedical Equip Tech | 5.75 |
| UO6600 | EKG Technician | 5.75 | | | |
| UO6590 | EKG Technician PD | 5.75 | | | |
| UO6165 | Endoscopy Technician | 5.75 | | | |
| UO6472 | MHS Telecom Technician | 5.75 | | | |
| UO4150 | Orthopedic Technician | 5.75 | | | |
| UO4880 | Orthopedic Technician PD | 5.75 | | | |
| UO4110 | Surgery Technician I | 5.75 | | | |
| UO4109 | Surgery Technician I 12-Hr | 5.75 | | | |
| UO4112 | Surgery Technician II | 5.75 | | | |
| UO4113 | Surgery Technician II-12Hr | 5.75 | | | |
| UO4114 | Lead, Surgical Technician | 5.75 | | | |
| UO4260 | Surgery Technician PD | 5.75 | | | |

2. Call Back Pay When On Standby

    a.  If called to work on standby, an employee shall be compensated at 1 1/2 times the base rate of pay. Call back pay starts when the employee arrives at his or her workstation.

    b.  Employees called to work when on standby shall be compensated at least 2 hours of call back time.

3. Call Back Pay When Not On Standby

    a. Time will be paid in accordance with Article 25 and/or FLSA and IWC regulations.

25

## Per Diem Job Code & Title

### Table 26.2

| Job Code | Sal Plan | Grade | Shift Diff. 2nd | Shift Diff. 3rd | Job Title | 03/03/13 Rate | 03/02/14 Rate | 03/01/15 Rate | 03/13/16 Rate |
|---|---|---|---|---|---|---|---|---|---|
| UO5291 | USOR | 14A | 1.75 | 2.25 | Admitting Representative PD | 17.11 | 17.36 | 17.61 | 17.86 |
| UM4073 | USMR | 23A | 1.75 | 2.25 | Biomedical Equipment Tech I PD | 28.72 | 28.97 | 29.22 | 29.47 |
| UO5089 | USOR | 13A | 1.75 | 2.25 | Care Associate PD | 15.70 | 15.95 | 16.20 | 16.45 |
| UO5936 | USOR | 14B | 1.75 | 2.25 | Central StaffingSched Coor PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO6389 | USOR | 12B | 1.75 | 2.25 | Central Supply Technician PD | 14.88 | 15.13 | 15.38 | 15.63 |
| UO5643 | USOR | 12C | 1.75 | 2.25 | Clerk Receptionist PD | 15.08 | 15.33 | 15.58 | 15.83 |
| UO9550 | USOR | 12C | 1.75 | 2.25 | Clerk Typist PD | 15.08 | 15.33 | 15.58 | 15.83 |
| UO5661 | USOR | 13A | 1.75 | 2.25 | Customer Service Associate PD | 15.70 | 15.95 | 16.20 | 16.45 |
| UO6590 | USOR | 14B | 1.75 | 2.25 | EKG Technician PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO6550 | USOR | 13C | 1.75 | 2.25 | Emergency Dept Technician PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO6532 | USOR | 13D | 1.75 | 2.50 | Emergency Dept Tech-Phleb PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO4503 | USOR | 14A | 1.75 | 2.25 | Health Info Mgt Spec PD | 17.11 | 17.36 | 17.61 | 17.86 |
| UO4506 | USOR | 13C | 1.75 | 2.25 | Health Info Mgt Technician PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO6612 | USOR | 13B | 2.00 | 2.50 | Hearing Technician PD | 15.57 | 15.82 | 16.07 | 16.32 |
| UO6151 | USOR | 13D | 1.75 | 2.25 | Laboratory/Triage Tech PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO4880 | USOR | 18A | 1.75 | 2.25 | Orthopedic Technician PD | 21.82 | 22.07 | 22.32 | 22.57 |
| UO6180 | USOR | 13C | 2.00 | 2.50 | Patient Care Assistant PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO6193 | USOR | 13C | 2.00 | 2.50 | Patient Services Technician PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO6208 | USOR | 13B | 2.00 | 2.5 | Perioperative Patient Care Assistant PD | 15.57 | 15.8 | 16.07 | 16.32 |
| UO6077 | USOR | 13D | 1.75 | 2.25 | Phlebotomist PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO6073 | USOR | 13D | 1.75 | 2.25 | Phlebotomist, Outreach PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO6621 | USOR | 13B | 1.75 | 2.25 | Rehabilitation Technician PD | 15.57 | 15.82 | 16.07 | 16.32 |
| UO7024 | USOR | 9A | 1.75 | 2.25 | Sanitation Aide PD | 11.83 | 12.08 | 12.33 | 12.58 |
| UO6150 | USOR | 12E | 1.75 | 2.25 | Spd Technician PD | 15.57 | 15.82 | 16.07 | 16.32 |
| UO4260 | USOR | 21A | 1.75 | 2.50 | Surgery Technician PD | 24.91 | 25.16 | 25.41 | 25.66 |
| UO5430 | USOR | 13C | 2.00 | 2.50 | Unit Secretary PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO5439 | USOR | 14A | 2.00 | 2.50 | Unit Secretary/MonitorTech PD | 17.11 | 17.36 | 17.61 | 17.86 |

Per Diem Job Code & Title

## Table 26.2

| Job Code | Sal Plan | Grade | Shift Diff. 2nd | Shift Diff. 3rd | Job Title | 03/03/13 Rate | 03/02/14 Rate | 03/01/15 Rate | 03/13/16 Rate |
|---|---|---|---|---|---|---|---|---|---|
| UO5291 | USOR | 14A | 1.75 | 2.25 | Admitting Representative PD | 17.11 | 17.36 | 17.61 | 17.86 |
| UM4073 | USMR | 23A | 1.75 | 2.25 | Biomedical Equipment Tech I PD | 28.72 | 28.97 | 29.22 | 29.47 |
| UO5089 | USOR | 13A | 1.75 | 2.25 | Care Associate PD | 15.70 | 15.95 | 16.20 | 16.45 |
| UO5936 | USOR | 14B | 1.75 | 2.25 | Central StaffingSched Coor PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO6389 | USOR | 12B | 1.75 | 2.25 | Central Supply Technician PD | 14.88 | 15.13 | 15.38 | 15.63 |
| UO5643 | USOR | 12C | 1.75 | 2.25 | Clerk Receptionist PD | 15.08 | 15.33 | 15.58 | 15.83 |
| UO9550 | USOR | 12C | 1.75 | 2.25 | Clerk Typist PD | 15.08 | 15.33 | 15.58 | 15.83 |
| UO5661 | USOR | 13A | 1.75 | 2.25 | Customer Service Associate PD | 15.70 | 15.95 | 16.20 | 16.45 |
| UO6590 | USOR | 14B | 1.75 | 2.25 | EKG Technician PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO6550 | USOR | 13C | 1.75 | 2.25 | Emergency Dept Technician PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO6532 | USOR | 13D | 1.75 | 2.50 | Emergency Dept Tech-Phleb PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO4503 | USOR | 14A | 1.75 | 2.25 | Health Info Mgt Spec PD | 17.11 | 17.36 | 17.61 | 17.86 |
| UO4506 | USOR | 13C | 1.75 | 2.25 | Health Info Mgt Technician PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO6612 | USOR | 13B | 2.00 | 2.50 | Hearing Technician PD | 15.57 | 15.82 | 16.07 | 16.32 |
| UO6151 | USOR | 13D | 1.75 | 2.25 | Laboratory/Triage Tech PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO4880 | USOR | 18A | 1.75 | 2.50 | Orthopedic Technician PD | 21.82 | 22.07 | 22.32 | 22.57 |
| UO6180 | USOR | 13C | 2.00 | 2.50 | Patient Care Assistant PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO6193 | USOR | 13C | 2.00 | 2.50 | Patient Services Technician PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO6208 | USOR | 13B | 2.00 | 2.5 | Perioperative Patient Care Assistant PD | 15.57 | 15.8 | 16.07 | 16.32 |
| UO6077 | USOR | 13D | 1.75 | 2.25 | Phlebotomist PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO6073 | USOR | 13D | 1.75 | 2.25 | Phlebotomist, Outreach PD | 17.91 | 18.16 | 18.41 | 18.66 |
| UO6621 | USOR | 13B | 1.75 | 2.25 | Rehabilitation Technician PD | 15.57 | 15.82 | 16.07 | 16.32 |
| UO7024 | USOR | 9A | 1.75 | 2.25 | Sanitation Aide PD | 11.83 | 12.08 | 12.33 | 12.58 |
| UO6150 | USOR | 12E | 1.75 | 2.25 | Spd Technician PD | 15.57 | 15.82 | 16.07 | 16.32 |
| UO4260 | USOR | 21A | 1.75 | 2.50 | Surgery Technician PD | 24.91 | 25.16 | 25.41 | 25.66 |
| UO5430 | USOR | 13C | 2.00 | 2.50 | Unit Secretary PD | 16.31 | 16.56 | 16.81 | 17.06 |
| UO5439 | USOR | 14A | 2.00 | 2.50 | Unit Secretary/MonitorTech PD | 17.11 | 17.36 | 17.61 | 17.86 |

## ARTICLE 27 - EDUCATIONAL PROGRAMS

A. Required Certifications

1. Employees will ensure that they maintain certifications required by the functional unit (defined as six digit cost centers to which employees are assigned).

2. Attendance by an Employee at a certification course mandated by the Employer as a condition of continued employment in an Employee's current certification, unit or specialty shall count as time worked and shall be compensated accordingly.

3. If an Employee allows a certification to lapse and the Employee is required to retake the certification course, the Employer will only compensate the Employee in an amount equal to the number of hours of the certification renewal class.

4. If an Employee chooses not to take a mandatory certification class offered by the Employer, the Employee must use his/her PTO, and pay for such class.

5. The Employer will comply with the regulations adopted by the California Industrial Welfare Commission for determining when attendance at education programs shall be treated as hours worked.

B. Tuition Reimbursement

Tuition reimbursement shall be administered in accordance with the Employer's current policy – HR319.

C. Mandatory Classes / Meetings

1. If an Employee is required by the Employer to attend a particular educational or training program, obtain or maintain certification, session, in-service, class or other meetings the Employee shall be paid at his/her base rate of pay and this time shall be counted as time worked.

2. An Employee shall receive pay for the actual hours of attendance.

3. If an Employee is required to take a class that is not offered by the Employer, the Employer shall pay for the class and the Employee's time at the class at the Employee's base rate of pay.

4. If an Employee chooses not to take a mandatory class offered by the Employer, the Employee must use his/her PTO, and pay for such class.

## ARTICLE 28 - BLOOD ASSURANCE PROGRAM PARTICIPATION

Employees will be permitted to participate in the Employer's Blood Assurance Program during the period of this contract as follows:

A. Blood Assurance plan membership must be initiated or renewed yearly starting January 1st and ending December 31st the same calendar year. Employees must be benefit-eligible and have completed their probationary period at LBM/MCH in order to participate in the program. Donors may donate up to six times a year. Following the 2nd and 4th donations, if they are made within a one year time limit, an employee may receive one day off with pay. Per diem employees are not eligible to receive days off with pay, but may elect to donate blood without receiving days off with pay.

B. Donor days off with pay are limited to 2 per calendar year (one each after the second and fourth donation in a year.) Each day off is good for one eight (8) hour shift only. If a donation made in November or December of a calendar year is the 2nd or 4th donation, thus entitling the donor to a day off, that day off may be used by the last day of February of the next calendar year.

C. Autologous (for use by donor during surgery) and directed (held for a specific patient) donations will not qualify an Employee for a blood donor day.

D. All days off must be scheduled in advance with the approval of the Employee's supervisor or department head. The pink card given at the time of donation must accompany the employee's timecard showing donor day department code. Employees must have completed 90 days of employment with the Employer to be eligible for a Donor-Day-Off.

E. The Blood Donor day off with pay is considered a gift and not a reimbursement for services rendered or wages earned.

F. No shift differential will be paid on Blood Donor day off.

G. Participation is limited to the needs of the Employer, fulfilled by employees and their families.

H. Employees who are unable to meet the blood donor requirements may be participants via proxy donations by family or friends. However, Employees may not donate for another Employee's Blood Assurance Program except that Per Diem Employees may donate for other employees.

I. I. Except when requested by the Blood Donor Center, donations should be made during the nonworking hours, i.e., prior to or following the shift, on a day off, etc. Donations are scheduled by telephoning the Blood Donor Center.

## ARTICLE 29 - PAID TIME OFF (PTO) BENEFITS

A. Accrual:
Employee will accrue Paid Time Off (PTO) during the period of this contract according to the following grid:

| Level I Employees Non Exempt, Professional & Administrative | | | |
|---|---|---|---|
| Full & Part Time Years of Service | Days Per Year* | Hours Per Year* | Per Pay Period Accrual Rate* |
| 1 | 22.9 | 183.33 | 7.69 |
| 2 | 25 | 200 | 7.69 |
| 3 | 25 | 200 | 7.69 |
| 4 | 25 | 200 | 7.69 |
| 5 | 30 | 240 | 9.23 |
| 6 | 30 | 240 | 9.23 |
| 7 | 30 | 240 | 9.23 |
| 8 | 30 | 240 | 9.23 |
| 9 | 30 | 240 | 9.23 |
| 10 | 35 | 280 | 10.77 |
| 11 or more | 36 | 288 | 11.07 |
| * Accrual rates listed are for employees who are "paid" for eighty (80) hours in a given pay period. | | | |

28

B. **Administration.** All aspects of Paid Time Off will be administered in accordance with HR321, Paid Time Off Benefits Provisions, during the period of this contract.

C. Employees who are full-time and part-time benefit eligible employees who commit to work one year on the night shift, will earn up to forty (40) additional hours of PTO every twelve (12) months. These hours are prorated based upon hours "paid", and can be earned up to 1.538462 (40 divided by 26) hours each pay period.

## ARTICLE 30 – BENEFITS

A. The Employer shall maintain the same coverages and deductibles for bargaining unit employees as it provides for its non-bargaining unit employees.

B. The employee percentage of premiums for the employee medical plans shall be the same for bargaining unit employees as it provides for its non-bargaining unit employees.

C. The Employer agrees to maintain the following non-voluntary benefits: Long Term Disability, Life Insurance, Accidental Death and Dismemberment, and the EAP program.

D. In the event that during the term of this Agreement, any healthcare option or coverage offered by the Employer under this Agreement becomes insufficient or deficient pursuant to any federal, state or local health care legislation or any other regulation then in effect requiring a modification of the options or coverage, the Employer can take any steps or make any changes needed to comply with the law (including regulations issued under the law). However, to the degree that the law or regulation may require a decrease in employee healthcare benefits, the Employer will meet and confer with the Union regarding the change. The Union does not waive the right to bargain over changes to employee healthcare benefits.

## ARTICLE 31 – RETIREMENT PLAN

• The Employer will continue the Memorial Retirement Plan.
• It will continue to be a Defined Contribution Plan.
• The deposit will be based on W-2 earnings, not base pay.
• Employees only need to contribute 2% for the 1st year only.
• Vesting will be 5 years. All current bargaining unit employees shall receive vesting credit for all years of service with the Employer.
• All employees would be eligible but must have 1,000 hours to enroll and 1,000 hours in each plan year to be eligible for that year's deposit.
• The range of the deposit would be from 5% to 10% based on years of service.

| Years of Service | Overall 2006 Funding Percent |
|------------------|------------------------------|
| 0-4 | 5% |
| 5-9 | 6% |
| 10-14 | 7% |
| 15-19 | 8% |
| 20-24 | 9% |
| 25 or more | 10% |

- Special Funds will be made available for the employees to invest in Income Funds, e.g. T-Bills, Bonds, Money Market etc.
- Years of service with the Employer shall continue to count toward Memorial Retirement Plan vesting.
- The Retirement Plan in existence as of the initial date of this Agreement shall remain in full force and effect for the life of this Agreement. It may not be modified or discontinued without mutual agreement of the parties.

- The plan shall be subject to applicable ERISA and IRS regulations.

## ARTICLE 32 – CAREER ADVANCEMENT COMMITTEE

The Employer shall maintain career path guidelines for the various families of jobs covered by this Agreement. The Employer shall update these guidelines once per year. These guidelines shall be maintained in the Human Resources department and will be available for review during normal Human Resources business hours. The Union may appoint a committee of up to four employees to make recommendations to management about the career guidelines before they are updated every year. The Employees shall be compensated at their regular rates of pay for time spent meeting with management about the career path guidelines. The guidelines are intended to provide guidance to Employees as to how to advance in their careers at the Hospital. However, completion of any of the prerequisites does not guarantee advancement to the next level. Nothing stated in this Article is intended to limit any management right reserved to the Employer in Article 3 of this Agreement.

## ARTICLE 33 - LEAVE OF ABSENCE

A. Except as provided in paragraph B below, the Employer shall provide leaves of absence specified in the Employer's Policy #315. Such leaves shall be administered in accordance with the Employer's Policy #315.

B. Union Leave

1. If an Employee is elected or appointed to a position by the Union, the Employer will grant up to 11 such individuals, at one time, not from the same unit, or shift, a maximum of 3 months each for Union Leave. To be considered, requests for time off to attend executive board meetings and/or conventions must be requested thirty (30) days prior to the requested days off. Requests for time off to attend conferences, union meetings, trainings, seminars, and other union business must be made fifteen (15) days, or as soon as possible prior to the commencement of the leave.

2. No more than two Employees may be on union leave for up to a year for union business. The parties agree that if there is any additional time requested, beyond the one year, such a request will be made in writing.

3. Employees on Union Leave are not required to use PTO. They will not accrue PTO while on Union Leave. Employees will be responsible for COBRA premiums commencing the first day of the pay period following the start of the leave.

4. Employees will be guaranteed return to their existing Department position, status and shift following their Union Leave.

## ARTICLE 34 – STAFFING AND PATIENT CARE ASSIGNMENTS

All patient care personnel, including temporary staff shall be subject to the following:

1. Independent assignments shall include only those duties and responsibilities for which competency has been demonstrated.

2. Employees assigned to a unit for which their competencies have not been demonstrated, will be assigned a qualified person to assist them, who has demonstrated competency for the unit involved.

3. An Employee shall not be assigned responsibility for patient care which is beyond the Employee's certification or license, as provided by state and federal law.

4. The parties agree that in order to provide the highest standard of care, a list of current competencies for each job title and/or unit which performs patient care shall be provided in writing to the Union.

5. In the event the Employer decides to change the nursing skill mix of CNA's, PCA's, Unit Secretaries and monitor techs due to the implementation of government mandated staffing ratios, the Employer shall meet and confer with the Union before implementing such changes.

## ARTICLE 35 - UNIFORMS

The current policy regarding uniforms for Employees shall remain status quo in respect to the requirement of uniforms, the numbers and the cleaning policy, except as to style and color. If management desires to change or modify the uniform policy during the life of the agreement, the union shall be given a 60 day notice to meet and confer over the proposed changes.

## ARTICLE 36 – BARGAINING OBLIGATION

A. Obligation to Bargain

The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to all proper subjects of collective bargaining; that all such subjects were discussed and negotiated upon; and that the agreements contained herein were arrived at after the free exercise of such rights and opportunities. Accordingly, except as specifically provided in Section B of this Article, the Employer and the Union for the term of this Agreement each voluntarily and unqualifiedly waives the right to bargain collectively with respect to any subject or matter not specifically referred to or covered in this Agreement even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or executed this Agreement.

31

## B. Severability and Renegotiation

In the event that a provision of this Agreement is held to be unlawful by a court of final jurisdiction or is rendered unlawful by a state or federal statute, all other provisions of this Agreement shall remain in full force and effect. In the event that a provision of this Agreement becomes unlawful by such judicial or legislative action, the parties shall meet for the limited purpose of negotiating a substitute for said affected provision.

## C. Entire Agreement

This Agreement constitutes the full and entire agreement between the parties, and supersedes any prior agreement, commitments, understandings or practices, whether oral or written between the Employer and the Union or the employees covered hereunder, and except as specifically provided in Section B of this Article, expresses all obligations of and restrictions imposed upon the Employer.

## ARTICLE 37 – TERMS OF AGREEMENT

This Agreement shall become effective upon ratification and shall continue through midnight, March 31, 2017.

In witness whereof, the parties have executed this agreement effective October 28, 2012.

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union

Long Beach Memorial Medical Center
Miller Children's Hospital

Leo W. Gerard
USW International President

John Saavedra
Executive Director,
Human Resources

Stan Johnson
USW International Secretary-Treasurer

32

IN WITNESS WHEREOF, the parties hereto have set their hands.

Approved this _____ day of _____, 20_____ .

FOR THE COMPANY
Long Beach Memorial Medical Center,
Miller Children's Hospital


John Saavedra, Executive Director,
Human Resources



Dated:
_____

_____

FOR THE UNION
United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial
and Service Workers International Union


Leo W. Gerard, International President


Stanley W. Johnson, International
Secretary/Treasurer


Thomas M Conway, International Vice President
(Administration)


Fred Redmond, International Vice President
(Human Affairs)


Robert LaVenture, Director, District 12


Ron Espinoza, Sub-District Director


Dianne Kanish, USW Staff Representative


Flo Adaya, Negotiating Committee


Bobby De Leon, Negotiating Committee


Ed Gonzalez, Negotiating Committee


Bridgette Perry, Negotiating Committee


Alex Ramos, Negotiating Committee


Antonio Vargas, Negotiating Committee

33

# APPENDICES

## Appendix A: – Page 1 of 4

## United Steelworkers Classifications and Grades

| Job Code | Shift Diff. 2nd | Shift Diff. 3rd | Job Title | Grade | | Job Code | Shift Diff. 2nd | Shift Diff. 3rd | Job Title | Grade |
|---|---|---|---|---|---|---|---|---|---|---|
| UO5585 | 1.25 | 1.75 | Admitting Rep/Fin Couns/Bed Pl | 13 | | UM4072 | 1.25 | 1.75 | Lead, Biomedical Equip Tech | 25 |
| UO5580 | 1.25 | 1.75 | Admitting Representative | 11 | | UO6711 | 1.75 | 2.25 | Lead, Formula Room Technician | 7 |
| UO4510 | 1.25 | 1.75 | Anesthesia Aide | 5 | | UO6209 | 2.00 | 2.50 | Lead, Perioperative PatCareAst | 11 |
| UO4511 | 1.25 | 1.75 | Anesthesia Technician | 15 | | UO6922 | 1.75 | 2.25 | Lead, Phlebotomist Outreach | 14 |
| UM4070 | 1.25 | 1.75 | Biomedical Equipment Tech 1 | 22 | | UO4114 | 1.75 | 2.50 | Lead, Surgical Technician | 18 |
| UM4071 | 1.25 | 1.75 | Biomedical Equipment Tech II | 24 | | UM4380 | 1.75 | 2.25 | Locksmith | 20 |
| UO3135 | 2.00 | 2.75 | Cardiovascular Technician II | 22 | | UO5240 | 1.25 | 1.75 | Media Services Technician | 18 |
| UO4970 | 1.25 | 1.75 | Care Associate | 9 | | UO5340 | 1.25 | 1.75 | Medical Library Technician | 17 |
| UO5935 | 1.75 | 2.25 | Central Staffing Sched Coord | 12 | | UO6472 | 1.25 | 1.75 | MHS Telecom Technician | 20 |
| UO6390 | 1.25 | 1.75 | Central Supply Technician | 8 | | UO6212 | 2.00 | 2.50 | Monitor Technician | 12 |
| UO5640 | 1.25 | 1.75 | Clerk | 8 | | UO4150 | 1.75 | 2.50 | Orthopedic Technician | 14 |
| UO5639 | 1.25 | 1.75 | Clerk, Outreach | 8 | | UM4440 | 1.75 | 2.25 | Painter | 15 |
| UO6080 | 1.25 | 1.75 | Clerk, Shipping/Receiving | 13[1] | | UO6200 | 2.00 | 2.50 | Patient Care Assistant | 10 |
| UO5580 | 1.25 | 1.75 | Clerk, Sr | 10 | | UO6191 | 2.00 | 2.50 | Patient Services Technician | 10 |
| UO5246 | 1.25 | 1.75 | Client Service Rep (Path) | 10 | | UO5840 | 1.25 | 1.75 | PBX Operator | 7 |
| UO4270 | 1.25 | 1.75 | Community Health Worker | 11 | | UO6207 | 1.75 | 2.50 | Perioperative Patient Care Assi | 9 |
| UO5930 | 1.25 | 1.75 | Coord, Data/Scheduling | 8 | | UO5361 | 1.25 | 1.75 | Pharmacy Assistant I | 11 |
| UO5310 | 1.25 | 1.75 | Coord, Inventory Data | 14 | | UO6075 | 1.25 | 1.75 | Phlebotomist | 13 |
| UO6078 | 1.25 | 1.75 | Coord, Phlebotomy | 16 | | UO6076 | 1.25 | 1.75 | Phlebotomist Donor Center | 14 |
| UO6081 | 1.25 | 1.75 | Coord, Phlebotomy Outreach | 16 | | UM6400 | 1.75 | 2.25 | Plumber | 18 |
| UO5770 | 1.25 | 1.75 | Coord, Surgery Scheduling | 11 | | UO6610 | 2.00 | 2.50 | Pneumagram Technician | 9 |
| UO5662 | 1.25 | 1.75 | Customer Service Associate | 8[2] | | UO6311 | 1.25 | 1.75 | Rehabilitation Technician | 9 |
| UO5481 | 1.25 | 1.75 | Dispatcher/Material Services | 9 | | UO7022 | 1.25 | 1.75 | Sanitation Aide | 5 |
| UO6600 | 1.25 | 1.75 | EKG Technician | 12 | | UO7023 | 1.25 | 1.75 | Sanitation Aide, Lead | 6 |
| UM4430 | 1.75 | 2.25 | Electrician | 20 | | UO6380 | 1.25 | 1.75 | SPD Equipment Control Tech | 8 |
| UM4470 | 1.75 | 2.25 | Electronic Dept Technician | 21 | | UO6160 | 1.25 | 1.75 | SPD Technician I | 9 |
| UO6531 | 1.75 | 2.50 | Emergency Dept Tech Phleb | 12 | | UO6020 | 1.25 | 1.75 | SPD Technician II | 11 |
| UO6530 | 1.75 | 2.50 | Emergency Dept Technician | 11 | | UM4040 | 1.75 | 2.25 | Steam Engineer | 21 |
| UO6165 | 2.00 | 2.50 | Endoscopy Technician | 11 | | UO6700 | 1.25 | 1.75 | Supply Aide | 5 |
| UM2190 | 1.75 | 2.25 | Engineer Steam, Sr | 23 | | UO4110 | 1.75 | 2.50 | Surgery Technician I | 16 |
| UO6921 | 1.75 | 2.25 | Equipment Support Technician I | 9 | | UO4112 | 1.75 | 2.50 | Surgery Technician II | 17 |
| UO6022 | 1.75 | 2.25 | Equipment Support Technician II | 11 | | UO4114 | 1.75 | 2.50 | Surgical Technician, Lead | 18 |
| UO6710 | 1.75 | 2.25 | Formula Room Technician | 6 | | UO6360 | 1.25 | 1.75 | Technical Assistant | 7 |
| UM7050 | 1.75 | 2.25 | General Maint/Utility Worker | 9 | | UO5420 | 2.00 | 2.50 | Unit Secretary | 10 |
| UM4601 | 1.75 | 2.25 | General Maintenance Mechanic | 15 | | UO5440 | 2.00 | 2.50 | Unit Secy/Monitor Tech | 12 |
| UO4502 | 1.25 | 1.75 | Health Info Mgt Specialist | 11 | | | | | | |
| UO4501 | 1.25 | 1.75 | Health Info Mgt Technician | 10 | | | | | | |
| UO6615 | 2.00 | 2.50 | Hearing Technician | 9 | | | | | | |
| UM4410 | 1.75 | 2.25 | HVAC Technician A | 21 | | | | | | |
| UM6480 | 1.75 | 2.25 | HVAC Technician B | 15 | | | | | | |
| UO6070 | 1.25 | 1.75 | Laboratory/Triage Technician | 12 | | | | | | |

* Added Jobs

1    Beginning on the commencement date of this Agreement, any new hire or transfer into the Receiving Shipping Clerk position will enter at Grade 13. Any existing incumbent employees in the Receiving Shipping Clerk

position will be grandfathered in Grade 14 and receive pay in accordance with the provisions of Article 26.

²       Beginning on the commencement date of this Agreement, any new hire or transfer into the Customer Service Associate position will enter at Grade 8.  Any existing incumbent employees in the Customer Service Associate position will be grandfathered in Grade 9 and receive pay in accordance with the provisions of Article 26.

# United Steel Workers Salary Grids

Contract Rates Effective: 03/3/13, 03/2/14, 03/1/15, and 03/13/16

| Range | | | | | | | | | | | | | Step Progression | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Eff. | Min | Mid | Max | 0 (90) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |

**USO/USM GRADE: 3**

| 03/03/13 | 11.25 | 12.55 | 13.91 | 11.19 | 11.30 | 11.35 | 11.40 | 11.52 | 11.64 | 11.76 | 11.87 | 11.98 | 12.12 | 12.23 | 12.34 | 12.48 | 12.60 | 12.71 | 12.85 | 12.99 | 13.10 | 13.26 | 13.38 | 13.66 | 13.91 |
| 03/02/14 | 11.41 | 12.74 | 14.07 | 11.41 | 11.53 | 11.64 | 11.69 | 11.74 | 11.87 | 11.99 | 12.11 | 12.23 | 12.34 | 12.48 | 12.60 | 12.71 | 12.85 | 13.09 | 13.25 | 13.38 | 13.49 | 13.66 | 13.78 | 14.07 |

**USO/USM GRADE: 4**

**USO/USM GRADE: 5**

**USO/USM GRADE: 6**

**USO/USM GRADE: 7**

**USO/USM GRADE: 8**

**USO/USM GRADE: 9**

**USO/USM GRADE: 10**

**USO/USM GRADE: 11**

# United Steel Workers Salary Grids

**Contract Rates Effective: 03/03/13, 03/2/14, 03/1/15, and 03/13/16**

| Range Ref. | Min | Mid | Max | 0 (S99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | | Step Progression | | | | | |
| 03/03/13 | 17.19 | 19.03 | 20.97 | 17.19 | 17.36 | 17.53 | 17.71 | 17.79 | 17.88 | 18.05 | 18.24 | 18.42 | 18.51 | 18.80 | 18.97 | 19.18 | 19.35 | 19.56 | 19.75 | 19.95 | 20.15 | 20.35 | 20.55 | 20.75 | 20.99 |
| 03/13/16 | 17.53 | 19.45 | 21.37 | 17.53 | 17.88 | 18.26 | 18.24 | 18.32 | 18.42 | 18.79 | 18.97 | 19.17 | 19.36 | 19.56 | 19.76 | 19.93 | 20.15 | 20.34 | 20.55 | 20.75 | 20.96 | 21.17 | 21.37 | | |

**ORION/UM GRADE: 12**

| Range Ref. | Min | Mid | Max | 0 (S99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 17.34 | 19.46 | 21.57 | 17.34 | 17.51 | 17.69 | 17.85 | 18.05 | 18.21 | 18.41 | 18.58 | 18.77 | 18.95 | 19.15 | 19.34 | 19.53 | 19.73 | 19.93 | 20.14 | 20.35 | 20.73 | 21.15 | 21.57 |
| 03/02/14 | 17.69 | 19.74 | 21.78 | 17.69 | 17.86 | 18.04 | 18.33 | 18.30 | 18.59 | 18.76 | 18.96 | 19.14 | 19.33 | 19.53 | 19.72 | 19.92 | 20.12 | 20.32 | 20.53 | 20.74 | 20.94 | 21.15 | 21.78 |
| 03/01/15 | 18.04 | 20.02 | 21.99 | 18.04 | 18.21 | 18.60 | 18.58 | 18.67 | 18.77 | 18.94 | 19.15 | 19.32 | 19.51 | 19.71 | 19.91 | 20.12 | 20.31 | 20.52 | 20.72 | 20.93 | 21.15 | 21.36 | 21.99 |
| 03/13/16 | 18.40 | 20.42 | 22.43 | 18.40 | 18.58 | 18.77 | 18.95 | 19.14 | 19.23 | 19.31 | 19.72 | 19.92 | 20.12 | 20.30 | 20.51 | 20.72 | 20.92 | 21.14 | 21.34 | 21.56 | 21.78 | 22.00 | 22.21 | 22.43 |

**USW/UM GRADE: 13**

| Range Ref. | Min | Mid | Max | 0 (S99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 18.20 | 20.41 | 22.60 | 18.20 | 18.33 | 18.47 | 18.56 | 18.73 | 18.92 | 19.10 | 19.30 | 19.48 | 19.67 | 19.87 | 20.07 | 20.28 | 20.48 | 20.58 | 20.88 | 21.10 | 21.30 | 21.51 | 21.73 | 22.18 | 22.62 |
| 03/02/14 | 18.56 | 20.71 | 22.85 | 18.56 | 18.71 | 18.85 | 19.03 | 19.12 | 19.29 | 19.49 | 19.67 | 19.88 | 20.04 | 20.26 | 20.47 | 20.67 | 20.80 | 21.10 | 21.30 | 21.51 | 21.73 | 21.94 | 22.16 | 22.38 | 22.85 |
| 03/01/15 | 18.93 | 20.99 | 23.08 | 18.93 | 19.11 | 19.30 | 19.50 | 19.59 | 19.69 | 19.87 | 20.07 | 20.26 | 20.48 | 20.66 | 20.87 | 21.08 | 21.29 | 21.52 | 21.73 | 21.94 | 22.16 | 22.38 | 22.60 | 22.85 | 23.08 |
| 03/13/16 | 19.31 | 21.42 | 23.54 | 19.31 | 19.50 | 19.69 | 19.89 | 19.89 | 20.09 | 20.28 | 20.47 | 20.67 | 20.87 | 20.37 | 21.09 | 21.28 | 21.50 | 21.71 | 21.97 | 22.17 | 22.38 | 22.61 | 22.82 | 23.05 | 23.28 | 23.54 |

**USW/UM GRADE: 14**

| Range Ref. | Min | Mid | Max | 0 (S99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 19.10 | 21.43 | 23.76 | 19.10 | 19.25 | 19.38 | 19.48 | 19.67 | 19.87 | 20.07 | 20.28 | 20.49 | 20.68 | 20.88 | 21.10 | 21.30 | 21.53 | 21.72 | 21.99 | 22.21 | 22.40 | 22.62 | 22.86 | 23.31 | 23.76 |
| 03/02/14 | 19.48 | 21.75 | 24.01 | 19.48 | 19.57 | 19.87 | 19.96 | 20.06 | 20.26 | 20.47 | 20.67 | 20.89 | 21.10 | 21.30 | 21.51 | 21.73 | 21.94 | 22.18 | 22.36 | 22.61 | 22.85 | 23.07 | 23.30 | 23.55 | 24.01 |
| 03/01/15 | 19.87 | 22.07 | 24.26 | 19.87 | 20.06 | 20.26 | 20.47 | 20.56 | 20.66 | 20.83 | 21.06 | 21.29 | 21.52 | 21.73 | 21.94 | 22.16 | 22.39 | 22.60 | 22.83 | 23.05 | 23.29 | 23.74 | 23.76 | 24.06 | 24.26 |
| 03/13/16 | 20.27 | 22.50 | 24.72 | 20.27 | 20.47 | 20.66 | 20.87 | 21.08 | 21.16 | 21.28 | 21.50 | 21.71 | 21.94 | 22.17 | 22.38 | 22.60 | 22.82 | 23.05 | 23.28 | 23.54 | 23.99 | 24.25 | 24.47 | 24.72 |

**USW/UM GRADE: 15**

| Range Ref. | Min | Mid | Max | 0 (S99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 20.07 | 22.52 | 24.97 | 20.07 | 20.21 | 20.36 | 20.46 | 20.67 | 20.87 | 21.08 | 21.29 | 21.52 | 21.71 | 21.94 | 22.16 | 22.39 | 22.61 | 22.84 | 23.06 | 23.30 | 23.54 | 23.76 | 24.01 | 24.49 | 24.97 |
| 03/02/14 | 20.47 | 22.85 | 25.22 | 20.47 | 20.67 | 20.88 | 20.97 | 21.07 | 21.39 | 21.50 | 21.71 | 21.93 | 22.17 | 22.36 | 22.60 | 22.83 | 23.06 | 23.29 | 23.53 | 23.75 | 24.00 | 24.25 | 24.47 | 24.73 | 25.22 |
| 03/01/15 | 20.88 | 23.18 | 25.47 | 20.88 | 21.08 | 21.29 | 21.51 | 21.61 | 21.70 | 21.90 | 22.15 | 22.36 | 22.59 | 22.84 | 23.03 | 23.28 | 23.50 | 23.75 | 23.99 | 24.24 | 24.45 | 24.72 | 24.96 | 25.20 | 25.47 |
| 03/13/16 | 21.30 | 23.63 | 25.96 | 21.30 | 21.51 | 21.71 | 21.94 | 22.16 | 22.25 | 22.33 | 22.59 | 22.81 | 23.03 | 23.27 | 23.51 | 23.72 | 23.98 | 24.21 | 24.68 | 24.71 | 24.91 | 25.19 | 25.46 | 25.72 | 25.96 |

**USW/UM GRADE: 16**

| Range Ref. | Min | Mid | Max | 0 (S99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 21.09 | 23.66 | 26.23 | 21.09 | 21.40 | 21.51 | 21.70 | 21.63 | 22.13 | 22.37 | 22.60 | 22.82 | 23.04 | 23.28 | 23.50 | 23.74 | 23.99 | 24.21 | 24.46 | 24.72 | 24.85 | 25.20 | 25.70 | 26.23 |
| 03/02/14 | 21.51 | 23.99 | 26.47 | 21.51 | 21.72 | 21.94 | 22.04 | 22.16 | 22.36 | 22.59 | 22.81 | 23.05 | 23.78 | 23.50 | 23.75 | 23.98 | 24.21 | 24.44 | 24.70 | 24.94 | 25.18 | 25.43 | 25.69 | 25.94 | 26.47 |
| 03/01/15 | 21.94 | 24.34 | 26.74 | 21.94 | 22.16 | 22.37 | 22.60 | 22.70 | 22.81 | 23.02 | 23.27 | 23.49 | 23.73 | 23.98 | 24.21 | 24.44 | 24.70 | 24.94 | 25.18 | 25.45 | 25.69 | 25.95 | 26.21 | 26.47 | 26.74 |
| 03/13/16 | 22.38 | 24.82 | 27.26 | 22.38 | 22.60 | 22.82 | 23.04 | 23.28 | 23.38 | 23.50 | 23.71 | 23.97 | 24.19 | 24.40 | 24.70 | 24.94 | 25.17 | 25.44 | 25.69 | 25.94 | 26.21 | 26.46 | 26.73 | 27.01 | 27.26 |

**USW/UM GRADE: 17**

| Range Ref. | Min | Mid | Max | 0 (S99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 22.16 | 24.86 | 27.55 | 22.16 | 22.38 | 22.60 | 22.81 | 23.06 | 23.27 | 23.49 | 23.73 | 23.98 | 24.19 | 24.44 | 24.69 | 24.94 | 25.19 | 25.43 | 25.69 | 25.98 | 26.19 | 26.46 | 26.23 | 26.67 | 27.02 | 27.55 |
| 03/02/14 | 22.60 | 25.22 | 27.93 | 22.60 | 22.82 | 23.03 | 23.15 | 23.28 | 23.49 | 23.72 | 23.97 | 24.19 | 24.92 | 25.17 | 25.44 | 25.67 | 25.93 | 26.19 | 26.46 | 26.74 | 27.02 | 27.26 | 27.83 | 28.00 |
| 03/01/15 | 23.05 | 25.77 | 28.08 | 23.05 | 23.28 | 23.50 | 23.74 | 23.84 | 23.98 | 24.19 | 24.43 | 24.69 | 24.92 | 25.17 | 25.44 | 25.67 | 25.93 | 26.19 | 26.46 | 26.73 | 26.98 | 27.25 | 27.54 | 27.83 | 28.08 |
| 03/13/16 | 23.51 | 26.09 | 28.65 | 23.51 | 23.74 | 23.98 | 24.21 | 24.45 | 24.55 | 24.70 | 24.92 | 25.16 | 25.43 | 25.67 | 25.93 | 26.19 | 26.46 | 26.71 | 26.98 | 27.25 | 27.33 | 27.79 | 28.07 | 28.37 | 28.68 |

**USW/UM GRADE: 18**

| Range Ref. | Min | Mid | Max | 0 (S99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 23.26 | 26.08 | 28.90 | 23.26 | 23.60 | 23.71 | 23.94 | 24.16 | 24.41 | 24.65 | 24.91 | 25.16 | 25.39 | 25.65 | 25.91 | 26.18 | 26.44 | 26.70 | 26.98 | 27.22 | 27.51 | 27.78 | 28.33 | 28.90 |
| 03/02/14 | 23.73 | 26.46 | 29.18 | 23.73 | 23.96 | 24.18 | 24.31 | 24.42 | 24.66 | 24.88 | 25.14 | 25.39 | 25.62 | 26.80 | 26.85 | 27.02 | 27.50 | 27.77 | 28.04 | 28.33 | 28.60 | 28.88 | 29.18 | 29.47 |
| 03/01/15 | 24.20 | 26.84 | 29.47 | 24.20 | 24.44 | 24.68 | 24.91 | 25.04 | 25.15 | 25.40 | 25.65 | 25.89 | 26.13 | 26.43 | 26.69 | 26.93 | 27.21 | 27.50 | 27.74 | 28.04 | 28.33 | 28.60 | 28.88 | 29.15 | 29.47 |
| 03/13/16 | 24.68 | 27.17 | 30.07 | 24.68 | 24.93 | 25.17 | 25.42 | 25.66 | 25.79 | 25.90 | 26.16 | 26.42 | 26.69 | 26.93 | 27.21 | 27.74 | 28.04 | 28.33 | 28.61 | 28.78 | 29.18 | 29.46 | 29.75 | 30.07 |

**USW/UM GRADE: 19**

| Range Ref. | Min | Mid | Max | 0 (S99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 24.42 | 27.51 | 30.54 | 24.42 | 24.66 | 24.91 | 25.15 | 25.38 | 25.64 | 25.90 | 26.14 | 26.92 | 26.69 | 26.94 | 27.21 | 27.50 | 27.77 | 28.03 | 28.31 | 28.61 | 28.90 | 29.17 | 29.75 | 30.54 |
| 03/02/14 | 24.91 | 27.87 | 30.84 | 24.91 | 25.15 | 25.40 | 25.64 | 25.82 | 25.86 | 26.14 | 26.42 | 26.92 | 27.49 | 27.75 | 28.05 | 28.31 | 28.60 | 28.89 | 29.47 | 29.75 | 30.03 | 30.54 | 30.84 |
| 03/01/15 | 25.41 | 28.18 | 30.95 | 25.41 | 25.66 | 25.90 | 26.16 | 26.26 | 26.43 | 26.68 | 26.92 | 27.20 | 27.48 | 27.73 | 28.00 | 28.31 | 28.58 | 28.87 | 29.16 | 29.47 | 29.74 | 30.03 | 30.34 | 30.64 | 30.95 |
| 03/13/16 | 25.92 | 28.74 | 31.56 | 25.92 | 26.17 | 26.43 | 26.68 | 26.94 | 27.08 | 27.21 | 27.48 | 27.73 | 28.02 | 28.30 | 28.56 | 28.87 | 29.16 | 29.74 | 30.06 | 30.34 | 30.63 | 30.93 | 31.28 | 31.56 |

# United Steel Workers Salary Grids

Contract Rates Effective: 03/3/13, 03/2/14, 03/1/15, and 03/13/16

**USO/USW GRADE: 20**

| Rate | Min | Mid | Max | 0 (99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 25.66 | 28.72 | 31.85 | 25.66 | 25.66 | 25.96 | 26.10 | 26.36 | 26.64 | 26.88 | 27.16 | 27.44 | 27.71 | 27.97 | 28.26 | 28.55 | 28.83 | 29.11 | 29.42 | 29.71 | 29.99 | 30.30 | 30.62 | 31.22 | 31.85 |
| 03/02/14 | 26.10 | 29.13 | 32.16 | 26.10 | 26.36 | 26.52 | 26.76 | 26.88 | 27.15 | 27.44 | 27.69 | 27.97 | 28.26 | 28.54 | 28.81 | 29.11 | 29.41 | 29.69 | 29.98 | 30.30 | 30.60 | 30.89 | 31.21 | 31.52 | 32.16 |
| 03/01/15 | 26.62 | 29.55 | 32.47 | 26.62 | 26.88 | 27.15 | 27.42 | 27.56 | 27.49 | 27.96 | 28.52 | 28.81 | 29.11 | 29.40 | 29.67 | 29.98 | 30.29 | 30.58 | 30.88 | 31.21 | 31.52 | 31.82 | 32.15 | 32.47 |
| 03/13/16 | 27.15 | 30.13 | 33.11 | 27.15 | 27.42 | 27.69 | 27.96 | 28.24 | 28.36 | 28.52 | 28.80 | 29.11 | 29.38 | 29.67 | 29.98 | 30.28 | 30.56 | 30.88 | 31.20 | 31.50 | 31.81 | 32.15 | 32.47 | 32.77 | 33.11 |

**USO/USW GRADE: 21**

| Rate | Min | Mid | Max | 0 (99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 26.91 | 30.18 | 33.44 | 26.91 | 27.17 | 27.31 | 27.45 | 27.71 | 27.97 | 28.26 | 28.55 | 28.83 | 29.11 | 29.42 | 29.71 | 29.99 | 30.30 | 30.50 | 30.90 | 31.22 | 31.53 | 31.85 | 32.17 | 32.81 | 33.44 |
| 03/02/14 | 27.45 | 30.62 | 33.79 | 27.45 | 27.72 | 27.99 | 28.15 | 28.25 | 28.54 | 28.83 | 29.11 | 29.41 | 29.69 | 29.98 | 30.30 | 30.60 | 30.89 | 31.21 | 31.52 | 31.83 | 32.16 | 32.48 | 32.81 | 33.14 | 33.79 |
| 03/01/15 | 28.00 | 31.07 | 34.13 | 28.00 | 28.27 | 28.55 | 28.83 | 28.97 | 29.10 | 29.40 | 29.67 | 29.98 | 30.29 | 30.58 | 30.88 | 31.21 | 31.52 | 31.82 | 32.15 | 32.47 | 32.78 | 33.22 | 33.49 | 34.13 |
| 03/13/16 | 28.56 | 31.68 | 34.80 | 28.56 | 28.84 | 29.12 | 29.41 | 29.69 | 29.84 | 29.97 | 30.28 | 30.56 | 30.88 | 31.20 | 31.50 | 31.81 | 32.15 | 32.47 | 32.77 | 33.11 | 33.44 | 33.76 | 34.11 | 34.45 | 34.80 |

**USO/USW GRADE: 22**

| Rate | Min | Mid | Max | 0 (99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 28.24 | 31.69 | 35.15 | 28.24 | 28.52 | 28.66 | 28.81 | 28.99 | 29.40 | 29.68 | 29.98 | 30.27 | 30.58 | 30.88 | 31.20 | 31.51 | 31.83 | 32.16 | 32.46 | 32.78 | 33.11 | 33.43 | 33.76 | 34.10 | 35.48 |
| 03/02/14 | 28.80 | 32.14 | 35.61 | 28.80 | 29.09 | 29.38 | 29.52 | 29.67 | 29.98 | 30.28 | 30.57 | 30.87 | 31.18 | 31.50 | 31.81 | 32.12 | 32.45 | 32.76 | 33.10 | 33.43 | 33.76 | 34.10 | 34.43 | 34.78 | 35.48 |
| 03/01/15 | 29.38 | 32.66 | 36.52 | 29.38 | 29.66 | 29.96 | 30.26 | 30.41 | 30.56 | 31.19 | 31.49 | 31.80 | 32.12 | 32.45 | 32.76 | 33.10 | 33.43 | 33.76 | 34.10 | 34.43 | 34.77 | 35.12 | 35.46 | 35.82 |
| 03/13/16 | 29.97 | 33.23 | 36.52 | 29.97 | 30.26 | 30.55 | 30.86 | 31.17 | 31.32 | 31.48 | 31.79 | 32.13 | 32.43 | 32.75 | 33.08 | 33.42 | 33.74 | 34.09 | 34.43 | 34.77 | 35.12 | 35.46 | 35.83 | 36.17 | 34.92 |

**USO/USW GRADE: 23**

| Rate | Min | Mid | Max | 0 (99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 29.66 | 33.27 | 36.88 | 29.66 | 29.95 | 30.10 | 30.25 | 30.54 | 30.85 | 31.16 | 31.48 | 31.79 | 32.09 | 32.42 | 32.74 | 33.06 | 33.40 | 33.74 | 34.08 | 34.41 | 34.74 | 35.11 | 35.46 | 36.12 | 36.88 |
| 03/02/14 | 30.25 | 33.76 | 37.27 | 30.25 | 30.55 | 30.85 | 31.00 | 31.16 | 31.46 | 31.78 | 32.09 | 32.42 | 32.74 | 33.09 | 33.39 | 33.73 | 34.05 | 34.40 | 34.75 | 35.10 | 35.46 | 35.80 | 36.16 | 36.52 | 37.27 |
| 03/01/15 | 30.86 | 34.26 | 37.62 | 30.86 | 31.16 | 31.47 | 31.78 | 31.95 | 32.09 | 32.40 | 32.75 | 33.05 | 33.38 | 33.72 | 34.04 | 34.39 | 34.74 | 35.00 | 35.42 | 35.78 | 36.12 | 36.49 | 36.84 | 37.23 | 37.62 |
| 03/13/16 | 31.48 | 34.92 | 38.36 | 31.48 | 31.79 | 32.09 | 32.41 | 32.73 | 32.89 | 33.05 | 33.37 | 33.71 | 34.04 | 34.39 | 35.05 | 35.42 | 35.78 | 36.12 | 36.49 | 36.84 | 37.23 | 37.62 | 37.98 | 38.36 |

**USO/USW GRADE: 24**

| Rate | Min | Mid | Max | 0 (99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 31.15 | 34.94 | 38.73 | 31.15 | 31.44 | 31.61 | 31.76 | 32.06 | 32.39 | 32.70 | 33.03 | 33.37 | 33.05 | 34.05 | 34.38 | 34.72 | 35.07 | 35.43 | 35.79 | 36.17 | 36.49 | 36.62 | 37.22 | 38.73 |
| 03/02/14 | 31.77 | 35.45 | 39.12 | 31.77 | 32.08 | 32.40 | 32.56 | 32.70 | 33.02 | 33.36 | 33.68 | 34.02 | 34.37 | 34.72 | 35.07 | 35.41 | 35.78 | 36.12 | 36.49 | 36.86 | 37.21 | 37.58 | 37.97 | 38.34 | 39.12 |
| 03/01/15 | 32.41 | 35.95 | 39.49 | 32.41 | 32.72 | 33.04 | 33.37 | 33.54 | 34.01 | 34.36 | 34.69 | 35.04 | 35.23 | 35.75 | 36.12 | 36.47 | 36.83 | 37.20 | 37.58 | 37.97 | 38.35 | 38.71 | 39.11 | 39.49 |
| 03/13/16 | 33.06 | 36.67 | 40.28 | 33.06 | 33.38 | 33.70 | 34.03 | 34.37 | 34.55 | 34.69 | 35.03 | 35.39 | 35.73 | 36.09 | 36.46 | 36.83 | 37.20 | 37.56 | 37.93 | 38.32 | 38.71 | 39.11 | 39.48 | 39.87 | 40.28 |

**USO/USW GRADE: 25**

| Rate | Min | Mid | Max | 0 (99) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/03/13 | 32.71 | 36.69 | 40.66 | 32.71 | 33.15 | 33.20 | 33.35 | 33.69 | 34.03 | 34.35 | 34.70 | 35.03 | 35.36 | 36.11 | 36.47 | 36.83 | 37.20 | 37.57 | 37.96 | 38.34 | 38.71 | 39.10 | 39.87 | 40.66 |
| 03/02/14 | 33.36 | 37.22 | 41.07 | 33.36 | 33.69 | 34.02 | 34.20 | 34.35 | 34.70 | 35.05 | 35.38 | 35.74 | 36.47 | 36.83 | 37.19 | 37.56 | 37.93 | 38.32 | 38.72 | 39.10 | 39.49 | 39.87 | 40.27 | 41.07 |
| 03/01/15 | 34.03 | 37.16 | 41.48 | 34.03 | 34.36 | 34.70 | 35.04 | 35.23 | 35.38 | 35.74 | 36.10 | 36.44 | 36.81 | 37.18 | 37.56 | 37.93 | 34.31 | 34.69 | 39.07 | 39.47 | 39.86 | 40.22 | 40.67 | 41.07 | 41.48 |

## Appendix B: Professional Years of Experience – Methodology & Computation

### *"Professional Years" of Experience*
### Computation Methodology

1. Positions to be tracked are Lab/Triage Tech, Phlebotomist, Phlebotomist Outreach, EDT Phlebotomist, Surgical Tech, Ortho Tech and Emergency Department Tech.
   - Review application for corresponding experience required/desired for the position.

2. Review Work History
   - Review the employment application and/or resume
     - Identify and record the date of the first employer/employment, which corresponds, to the position to be tracked.
       - This date will determine the initial entry into the profession of the position to be tracked. All future dates/lengths of service will be calculated using this initial "start" date, excluding foreign experience.

   - Review all subsequent employment periods, in the United States, which correspond to this same position. Positions/jobs that do not require the same type of job duties of the position being tracked will not be counted in the years of experience (e.g. a Surgical Tech who quits working as a Surgical Tech to do business as a real estate agent).
     - The computation of professional experience will include only those periods (years) of work within that specific position of which the candidate is offered employment and that are gained while working in the United States.
       - For example, Tom graduated from the California Paramedical College in 1980 and worked in Texas as a Surgical Tech for six years (1980 – 1986). He then moved to California and began working for LBMMC as a Surgical Tech in 1986. To date he has since functioned in the role as a Surgical Tech (1986 – 2003 = 17).

         - The calculation of experience equals twenty-three (23) years:
           $$6 + 17 = 23$$

   - Each period will be recorded as total time (years) worked.
     - If an employee works more than one job during the same time period (i.e. overlap years) the time will be counted only once.
     - Also, the applicant/employee is credited for only whole years of experience.
       - If an applicant's experience is calculated at 23.5 years then the recorded years of prior experience is 23.

3. Review breaks in employment history.
   - Any periods/times that indicate a break in employment will be excluded from the calculation.
     - For example, Tom, after graduating from the California Paramedical College in 1980 and working in Texas as a Surgical Tech for six years (1980 – 1986) decided to move to Hawaii and take two years (1986 – 1988) off from work. He then moved to California and began working for LBMMC as a Surgical Tech in 1988. To date he has since functioned in the role as a Surgical Tech (1988 – 2003 = 15).
       - The calculation of experience equals twenty-one (21) years:
         $$6 + 15 = 21$$

4. Recording

- Document total years of experience on the "Prior Years of Experience Worksheet."

  For purposes of determining "years" of experience for tracking in the HRIS system (PeopleSoft) a "date" will be entered. If an "actual date" is not recorded on the application, but only "years" of experience are identified as a whole number then the first day of the current "contract year" as outlined in the Collective Bargaining Agreement will be used as the "initial" date.

  For example, Tom indicated on his application that he graduated from his Surgical Tech program in 1980 but only worked six (6) years as a Surgical Tech in Texas and two (2) years in Las Vegas as a Surgical Tech before coming to LBMMC this year (2003) for a total work history as a Surgical Tech of eight (8) years. The date entered into the HRIS system would be eight years from the start of the current "contract year."

-                                                  October 28, 2003

  (example date) minus 8 years =                 October 28, 1995



**MEMORIALCARE**
LONG BEACH MEMORIAL MEDICAL CENTER
MILLER CHILDREN'S HOSPITAL

## "Professional Years" of Experience Computation Worksheet

Dear Employee,

In an effort to determine your correct years of Professional Experience, please fill out the information requested below:

Name:                                    Position Hired for:

List any degree(s), and dates obtained, that are required for this position:
(example: Began Surgical Tech experience May 10, 1981)

_____          _____
_____          _____

List any Professional license/certification and date issued:
(example: Obtain Phlebotomy certification June 1, 1992)

_____          _____
_____          _____

List any breaks (dates) in Professional Years of Experience:
(example: full time student 9/86 – 5/88)

| To be completed by a Human Resources Representative: | | |
|---|---|---|
| Years of Experience for position being hired for: | _____ years | _____ months |

I HEREBY CERTIFY that the information contained on this form is true and correct and agree to have any of the statements checked by the Medical Center.

_____          _____
Signature of Applicant                   Date

*viii*

## Appendix C: Side Letter Agreements

A. Leaves of Absence (Article 33)

The parties agree that in consideration for Long Beach Memorial Medical Center, and Miller Children's Hospital's agreement to allow Employee's to take Association Leave as outlined in the collective bargaining agreement between the parties dated October 28, 2006, "USW" on it's behalf and on behalf of the Employees who are granted such leave, agrees that Employee's on such leave shall not engage in or be involved, in any way, with any efforts to organize any Employees of any Memorial Health Services entities while on such leave.

B. Terms of Agreement (Article 37)

   a.  Contracting: Should the Employer decide to permanently contract out work presently performed by a bargaining unit employee, it shall first give the Union sixty (60) days notice, and upon request, meet and confer regarding its decision and the effect on the employees. The Employer will consider alternatives proposed by the Union. In the event the Employer decides to contract out the work after meeting with the Union, the Employer shall use its best efforts to have the contractor hire the employees who would be displaced by the subcontracting.

   b.  Sodexo: In the event the Employer decides to not renew its contract with Sodexo and to employ said employees directly, the Employer agrees to meet and confer with the Union to discuss whether the employees are an accretion to the service and maintenance unit. In the event the parties cannot agree as to the accretion issue, the parties shall have any rights afforded them by the National Labor Relations Act to have the accretion issue resolved by the National Labor Relations Board.

In the event the parties agree that such employees are accreted to the service and maintenance unit, the parties agree to meet and confer concerning the wages and terms and condition of employment of said employees. Notwithstanding any of the foregoing, the work stoppages clause shall remain in effect during the term of the Agreement.

   c.  Letter of Agreement

      1.  The Employer shall provide facilities on campus for Union ratification votes and committee meetings upon request.
      2.  The Union Bargaining team shall be released from work during the ratification vote.
      3.  Employees who serve on the Union bargaining team shall not be required to use PTO to attend bargaining sessions but may do so at their option.
      4.  The Union access article shall be implemented immediately upon ratification of the collective bargaining agreement.
      5.  All tentative agreements reached during the bargaining process shall be incorporated into the contract.
      6.  The employer and the Union agree to split the cost of the printing of the contract.

C. MHS Policies: 315, 332, 321, 319

These policies may be modified to reflect changes in the law. The Employer and Union will meet to discuss any changes to said policies.

# Appendix D: Side Letter

A. Side Letter of Agreement for Schedule Patient Service Center Employees:

With respect to Article 20 Scheduling, the parties agree that Article 20 shall apply except that Patient Service Center employees may be rescheduled to prevent the disruption of hours of operation or closure of any Patient Service Center on any particular day without mutual agreement between the Employer and the affected Employee.

*x*

## Appendix E: Index

### A

Agreement (Article 1)                                                              4
Alternative Work Schedules (Article 25 - Hours of Work)                           19
Alternative Work Week Elections (Article 25 - Hours of Work)                       19
Arbitration (Article 10)                                                          11
Association Membership (Article 11)                                               11

### B

Bargaining Obligation (Article 37)                                                32
Bargaining Unit Information (Article 12)                                          12
Benefits (Article 31)                                                            29
Blood Assurance Program Participation (Article 29)                               28
Bulletin Boards (Article 13)                                                      13

### C

Call Offs (Article 21)                                                           15
Career Advancement Committee (Article 33)                                        30
Change of Ownership (Article 5)                                                    7
Compensation (Article 26)                                                        23
Compensatory Time Off (Article 25 - Hours of Work)                               20
Continuous Work Day                                                               19
Contracting (Appendix C - Side Letter Agreements)                                ix

### D

Discharge and Discipline (Article 8)                                               9
Double Time Payment (Article 25 - Hours of Work)                                 20

### E

Educational Programs (Article 28)                                                27
Employee Health and Safety (Article 18)                                          14
Experience Pay Steps (Article 26 - Compensation)                                 24

### F

Floating (Article 22)                                                            16

# G

Grievance Procedure (Article 9)                                                            9

# H

Holiday Pay (Article 25 - Hours of Work)                                                  22
Holidays (Article 25 - Hours of Work)                                                     22
Hours of Work (Article 25)                                                                19

# J

Job Postings, Transfers and Promotions (Article 24)                                       18

# L

Lead Differential (Article 26 - Compensation)                                             24
Leaves of Absence (Appendix C - Side Letter Agreements)                                   ix
Leaves of Absence (Article 34)                                                            31
Letter of Agreement (Appendix C - Side Letter Agreements)                                 ix

# M

Management Rights (Article 3)                                                              5
Meal Periods (Article 25 - Hours of Work)                                                 20
MHS Policies (Appendix C – Side Letter Agreements)                                        ix

# N

No Discrimination (Article 7)                                                             9
Non-Productive Pay (Article 25 - Hours of Work)                                           20

# P

Paid Time Off (PTO) Benefits (Article 30)                                                 29
Patient Care Assistants (Appendix C – Side Letter Agreements)                             ix
Pay Increases (Article 26 - Compensation)                                                 23
Payment of Overtime (Article 25 - Hours of Work)                                          20
Personnel Categories (Article 19)                                                         15
Personnel Files (Article 17)                                                              14
Preamble and Recognition (Article 2)                                                      4
Professional Practice Committee (Article 16)                                              14
Professional Years of Experience – Computation Methodology (Appendix B)                   vi
Professional Years of Experience – Computation Worksheet                                  viii

# R

Regular Rate                                                                    19

Reporting Pay (Article 25 - Hours of Work)                                      22

Per diem Job Codes & Title—Table 26.2 (Article 26 - Compensation)               26

Per diem Wage Grid—Table 26.2 (Article 26 - Compensation)                       26

Per diem Wages, Categories and Requirements (Article 26 - Compensation)         24

Rest Periods (Article 25 - Hours of Work)                                       21

Retirement Plan (Article 32)                                                    30

# S

Scheduled and Unscheduled Working Time Beyond Scheduled Commitments (Article 4)  7

Scheduling (Article 20)                                                         15

Seniority, Layoff, Recall (Article 23)                                          16

Shift Differential (Article 26 - Compensation)                                  24

Side Letter Agreements (Appendix C)                                             ix

Sodexo (Appendix C - Side Letter Agreements)                                    ix

Staffing and Patient Care Assignments (Article 35)                              31

Standby and Call Back Pay (Article 26 - Compensation)                           25

Standby Rates Grid — Table 26.1 (Article 26 - Compensation)                     25

# T

Terms of Agreement (Article 38)                                                 32

Time and One Half Payment (Article 25 - Hours of Work)                          19

Transfers and Promotions (Article 24 – Job Postings, Transfers and Promotions)  18

# U

Uniforms (Article 36)                                                           31

Union Dues or Service Fee (Article 11 – Association Membership)                  12

Union Representative Visitation (Article 15)                                     13

Union Representatives (Article 14)                                              13

USW Journeyman Card Documentation (Article 27)                                   27

# V

Vacation Scheduling (Article 25 - Hours of Work)                                22

# W

Wage Grids (Appendix A)                                                         i-v

    •      Classifications and Grades               i-v

    •      Wage Grids                              iii-v

Work Period (8/80, 8/40) (Article 25 - Hours of Work)                           19

Work Stoppage (Article 6)                                                       8

# NOTES

# EXHIBIT D

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Joseph Antonelli, Janelle Carney     (Bar # 137039; 201570) <br> Law Office of Joseph Antonelli <br> 14758 Pipeline Ave., Suite E, 2nd Fl. <br> Chino Hills, CA 91709 <br>    TELEPHONE NO.: (909) 393-0223      FAX NO. *(Optional):* (909) 393-0471 <br> E-MAIL ADDRESS *(Optional):* jantonelli@antonellilaw.com <br> ATTORNEY FOR *(Name):* Elizabeth Castillo and Chris Marker, Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
   STREET ADDRESS: 600 S. Commonwealth Ave.
   MAILING ADDRESS:
   CITY AND ZIP CODE: Los Angeles 90005
   BRANCH NAME: Central Civil West

PLAINTIFF/PETITIONER: Elizabeth Castillo, et al.

DEFENDANT/RESPONDENT: Long Beach Memorial Medical Center, a California corporation, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: <br> BC576936 |
|---|---|

TO *(insert name of party being served):* Long Beach Memorial Medical Center

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 6, 2015

Janelle Carney
(TYPE OR PRINT NAME)

► *(Signature)* (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☒ A copy of the summons and of the complaint.
2. ☒ Other *(specify):*

    Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment

*(To be completed by recipient):*

Date this form is signed: MAY 6, 2015

TRAVIS GEMOETS
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

► *(Signature)* (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, <br> §§ 415.30, 417.10 <br> www.courtinfo.ca.gov |
|---|---|---|

*LexisNexis® Automated California Judicial Council Forms*

## PROOF OF SERVICE

### STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067.

On May 6, 2015 I served the document(s) described as **NOTICE AND ACKNOWLEDGMENT OF RECEIPT – LONG BEACH MEMORIAL MEDICAL CENTER** in this action addressed as follows:

### SEE ATTACHED LIST

☒ (BY MAIL) I am "readily familiar" with the business' practice for collection and processing correspondence for mailing. Under that practice true and correct copies of the aforementioned document(s) was deposited, in a sealed envelope with postage thereon fully prepaid, with the U.S. Postal Service on that same day to be mailed via first class mail at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY FAX) Pursuant to Rule 2.306, the parties have agreed to service by fax, and a written confirmation of that agreement has been made. On        , I transmitted, pursuant to Rule 2.306, the above-described document by facsimile machine, to the above-listed fax number(s). The transmission originated from facsimile phone number (310) 203-0567 and was reported as complete and without error. The facsimile machine properly issued a transmission report, a copy of which is attached.

☒ (BY ELECTRONIC SERVICE) On May 6, 2015, I transmitted the aforementioned document(s) directly, through an agent, or through a designated electronic filing service provider to the aforementioned electronic notification address(es). The transmission originated from my electronic notification address, which is lx1@JMBM.com, and was reported as complete and without error. Pursuant to Rule 2.260(f)(4), I will maintain a printed form of this document bearing my original signature and will make the document available for inspection and copying on the request of the court or any party to the action or proceeding in which it is filed, in the manner provided in rule 2.257(a).

☐ (BY PERSONAL SERVICE) I placed the aforementioned document(s) in a sealed envelope and I delivered such envelope by hand to the offices of the addressee.

Executed on May 6, 2015 at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Lorna M. Hatch
LORNA M. HATCH

## SERVICE LIST

Joseph Antonelli
jantonelli@antonellilaw.com
Janelle Carney
jcarney@antonellilaw.com
Law Offices of Joseph Antonelli
14758 Pipeline Avenue
Suite E, 2nd Floor
Chino Hills, California 91709

2

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Joseph Antonelli; Janelle Carney    (Bar # 137039; 201570)<br>Law Office of Joseph Antonelli<br>14758 Pipeline Ave., Suite E, 2nd Fl.<br>Chino Hills, CA 91709 | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO: (909) 393-0223        FAX NO. *(Optional)*: (909) 393-0471
E-MAIL ADDRESS *(Optional)*: jantonelli@antonellilaw.com
ATTORNEY FOR *(Name)*: Elizabeth Castillo and Chris Marker, Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 600 S. Commonwealth Ave.
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles  90005
BRANCH NAME: Central Civil West

PLAINTIFF/PETITIONER: Elizabeth Castillo, et al.

DEFENDANT/RESPONDENT: Long Beach Memorial Medical Center, a California corporation, et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>BC576936 |
|---|---|

TO *(insert name of party being served)*: Miller Children's Hospital Long Beach

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 6, 2015

Janelle Carney
(TYPE OR PRINT NAME)                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [X]   A copy of the summons and of the complaint.
2. [X]   Other *(specify)*:

Civil Case Cover Sheet; Civil Case Cover Sheet Addendum and Statement of Location; Notice of Case Assignment

*(To be completed by recipient):*

Date this form is signed: MAY 6, 2015

TRAVIS   GEMOETS
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                    ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]        **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**        Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

*LexisNexis® Automated California Judicial Council Forms*

## PROOF OF SERVICE

### STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067.

On May 6, 2015 I served the document(s) described as **NOTICE AND ACKNOWLEDGMENT OF RECEIPT – MILLER CHILDREN'S HOSPITAL LONG BEACH** in this action addressed as follows:

### SEE ATTACHED LIST

☒ (BY MAIL) I am "readily familiar" with the business' practice for collection and processing correspondence for mailing. Under that practice true and correct copies of the aforementioned document(s) was deposited, in a sealed envelope with postage thereon fully prepaid, with the U.S. Postal Service on that same day to be mailed via first class mail at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY FAX) Pursuant to Rule 2.306, the parties have agreed to service by fax, and a written confirmation of that agreement has been made. On        , I transmitted, pursuant to Rule 2.306, the above-described document by facsimile machine, to the above-listed fax number(s). The transmission originated from facsimile phone number (310) 203-0567 and was reported as complete and without error. The facsimile machine properly issued a transmission report, a copy of which is attached.

☒ (BY ELECTRONIC SERVICE) On May 6, 2015, I transmitted the aforementioned document(s) directly, through an agent, or through a designated electronic filing service provider to the aforementioned electronic notification address(es). The transmission originated from my electronic notification address, which is lx1@JMBM.com, and was reported as complete and without error. Pursuant to Rule 2.260(f)(4), I will maintain a printed form of this document bearing my original signature and will make the document available for inspection and copying on the request of the court or any party to the action or proceeding in which it is filed, in the manner provided in rule 2.257(a).

☐ (BY PERSONAL SERVICE) I placed the aforementioned document(s) in a sealed envelope and I delivered such envelope by hand to the offices of the addressee.

Executed on May 6, 2015 at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

LORNA M. HATCH

## SERVICE LIST

Joseph Antonelli
jantonelli@antonellilaw.com
Janelle Carney
jcarney@antonellilaw.com
Law Offices of Joseph Antonelli
14758 Pipeline Avenue
Suite E, 2nd Floor
Chino Hills, California 91709

2

# EXHIBIT E

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

COPY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Long Beach Memorial Medical Center, a California corporation; Miller
Children's Hospital Long Beach, a California corporation;
      Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Elizabeth Castillo and Chris Marker, on behalf of themselves and all
others similarly situated and the general public

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 26 2015

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>Stanley Mosk Courthouse<br>111 N. Hill Street, Los Angeles, CA 90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br>BC 5 7 6 9 3 6 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joseph Antonelli; Janelle Carney   (Bar #137039; 201570)   Fax No.: (909) 393-0471
Law Office of Joseph Antonelli   Phone No.: (909) 393-0223
14758 Pipeline Ave., Suite E, 2nd Fl., Chino Hills, CA 91709

DATE:           SHERRI R. CARTER         Clerk, by    Judi Lara    , Deputy
*(Fecha)*                              *(Secretario)*                *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010)*.)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

[SEAL]

MAR 26 2015

3. ☐ on behalf of *(specify)*:

  under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
        ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
**SUMMONS**
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
*LexisNexis® Automated California Judicial Council Forms*

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Long Beach Memorial Medical Center, a California corporation; Miller
Children's Hospital Long Beach, a California corporation;
        Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
Elizabeth Castillo and Chris Marker, on behalf of themselves and all
others similarly situated and the general public

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES<br>Stanley Mosk Courthouse<br>111 N. Hill Street, Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):* |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joseph Antonelli; Janelle Carney   (Bar # 137039; 201570)       Fax No.: (909) 393-0471
Law Office of Joseph Antonelli                       Phone No.: (909) 393-0223
14758 Pipeline Ave., Suite E, 2nd Fl., Chino Hills, CA 91709

| DATE:<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

| [SEAL] | **NOTICE TO THE PERSON SERVED:** You are served<br>1. ☐ as an individual defendant.<br>2. ☐ as the person sued under the fictitious name of *(specify)*:<br><br>3. ☐ on behalf of *(specify)*:<br><br>   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)<br>          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)<br>          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)<br>          ☐ other *(specify)*:<br>4. ☐ by personal delivery on *(date)*: |
|---|---|

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>*LexisNexis® Automated California Judicial Council Forms* |
|---|---|---|

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Castillo, et al. v. Long Beach Memorial Medical Center, et al. | |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (*Check only one box. Use a separate page for each type of party.*):

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

Memorial Care Health System, a business entity unknown and and Does 1 to 100, inclusive

Page __2__ of __2__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

*LexisNexis® Automated California Judicial Council Forms*

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Joseph Antonelli; Janelle Carney    (Bar # 137039; 201520)
Law Office of Joseph Antonelli
14758 Pipeline Ave., Suite E, 2nd Fl.
Chino Hills, CA 91709
TELEPHONE NO.: (909) 393-0223        FAX NO.: (909) 393-0471
ATTORNEY FOR *(Name):* Elizabeth Castillo and Chris Marker, Plaintiffs

**ORIGINAL**

**FILED**
Superior Court Of California
County Of Los Angeles

MAR 2 6 2015

Sherri _____ Executive Officer/Clerk
By _____, Deputy
Judi Lara

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Castillo, et al. v. Long Beach Memorial Medical Center, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BC 5 7 6 9 3 6 |
|---|---|---|---|---|
| [X] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter    [ ] Joinder   Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | [ ] Antitrust/Trade regulation (03) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Insurance coverage (18) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Other contract (37) | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | **Real Property** | [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| [ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | [ ] Enforcement of judgment (20) |
| [ ] Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| [ ] Defamation (13) | [ ] Commercial (31) | [ ] RICO (27) |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | **Miscellaneous Civil Petition** |
| [ ] Professional negligence (25) | **Judicial Review** | [ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Other petition *(not specified above)* (43) |
| **Employment** | [ ] Petition re: arbitration award (11) | |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [X] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [X] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties      d. [X] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve      e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [X] Substantial amount of documentary evidence      f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[X] monetary   b.[X] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action *(specify):* SEVEN (7)
5. This case [X] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 20, 2015

Janelle Carney
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 *www.courtinfo.ca.gov* |
|---|---|---|

*LexisNexis® Automated California Judicial Council Forms*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

CM-010 [Rev. July 1, 2007]               **CIVIL CASE COVER SHEET**               *LexisNexis® Automated California Judicial Council Forms*

| SHORT TITLE: Castillo, et al. v. Long Beach Memorial Medical Center | CASE NUMBER: BC 5 7 6 0 3 6 |
|---|---|

**ORIGINAL**

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES   CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 10-15 ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check <u>one</u> Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> **Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

| SHORT TITLE: Castillo, et al. v. Long Beach Memorial Medical Center | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☑ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: Castillo, et al. v. Long Beach Memorial Medical Center | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

| SHORT TITLE: Castillo, et al. v. Long Beach Memorial Medical Center | CASE NUMBER |
|---|---|

Item III. *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | ADDRESS: 2801 Atlantic Ave. |
|---|---|
| ☑1. ☑2. ☑3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | |

| CITY: Long Beach | STATE: CA | ZIP CODE: 90808 |
|---|---|---|

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: March 20, 2015 _____

_____
(SIGNATURE OR ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT – CLASS ACTION CASES**
Case Number _____

BC576986

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|
| Judge Elihu M. Berle | 323 | 1707 |
| Judge William F. Highberger | 322 | 1702 |
| Judge John Shepard Wiley, Jr. | 311 | 1408 |
| Judge Kenneth Freeman | 310 | 1412 |
| Judge Jane Johnson | 308 | 1415 |
| Judge Amy D. Hogue | 307 | 1402 |
| OTHER | | |

RECEIVE

MAR 3 0 2015

BY: _____

## Instructions for handling Class Action Civil Cases

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION
The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on  MAR 2 6 2015   SHERRI R. CARTER, Executive Officer/Clerk

LACIV CCW 190 (Rev09/13)
LASC Approved 05-06
For Optical Use

By  _____, Deputy Clerk

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

# EXHIBIT F

1  JEFFER, MANGELS, BUTLER & MITCHELL LLP
   MARTA FERNANDEZ (Bar No. 120540)
2  TRAVIS GEMOETS (Bar No. 174365)
   BARBRA A. ARNOLD (Bar No. 235898)
3  TARANEH FARD (Bar No. 268117)
   1900 Avenue of the Stars, Seventh Floor
4  Los Angeles, California 90067-4308
   Telephone:    (310) 203-8080
5  Facsimile:    (310) 203-0567

6  Attorneys for Defendants
   LONG BEACH MEMORIAL MEDICAL CENTER and
7  MILLER CHILDREN'S HOSPITAL LONG BEACH

8

9
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
                           COUNTY OF LOS ANGELES
11

12
   ELIZABETH CASTILLO and CHRIS          CASE NO. BC576936
13 MARKER on behalf of themselves and all
   others similarly situated and the general   NOTICE TO SUPERIOR COURT OF
14 public,                                 REMOVAL OF CIVIL ACTION TO FEDERAL
                                           COURT BY DEFENDANTS LONG BEACH
15             Plaintiffs,                 MEMORIAL MEDICAL CENTER AND
                                           MILLER CHILDREN'S HOSPITAL LONG
16        v.                               BEACH

17 LONG BEACH MEMORIAL MEDICAL
   CENTER, a California corporation;
18 MILLER CHILDREN'S HOSPITAL
   LONG BEACH, a California corporation;
19 MEMORIAL CARE HEALTH SYSTEM, a
   business entity unknown and DOES 1 to
20 100, inclusive,

21             Defendants.

22

23

24

25

26

27

28

NOTICE TO SUPERIOR COURT OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
BY DEFENDANTS LONG BEACH MEMORIAL MEDICAL CENTER AND MILLER
CHILDREN'S HOSPITAL LONG BEACH

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

1   TO THE CLERK OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE

2   COUNTY OF LOS ANGELES:

3

4          Attached hereto as Exhibit "1" is a true and correct copy of the Notice of Removal of

5   Civil Action to the United States District Court, the original of which was filed with the United

6   States District Court for the Central District of California on June 4, 2015.

7

8          The filing of said Notice of Removal effects the removal of the above-entitled action

9   from this court.

10

11  DATED: June 5, 2014          JEFFER, MANGELS, BUTLER & MITCHELL
                                  LLP
12                               MARTA FERNANDEZ
                                 TRAVIS GEMOETS
13                               BARBRA A. ARNOLD
                                 TARANEH FARD
14

15

16                               By:
                                    TRAVIS GEMOETS
17                               Attorneys for Defendants LONG BEACH
                                 MEMORIAL MEDICAL CENTER and MILLER
                                 CHILDREN'S HOSPITAL LONG BEACH
18

19

20

21

22

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER
LA 11994593v1

NOTICE TO SUPERIOR COURT OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
BY DEFENDANTS LONG BEACH MEMORIAL MEDICAL CENTER AND MILLER
CHILDREN'S HOSPITAL LONG BEACH

# EXHIBIT G

1    JEFFER, MANGELS, BUTLER & MITCHELL LLP
     MARTA FERNANDEZ (Bar No. 120540)
2    TRAVIS GEMOETS (Bar No. 174365)
     BARBRA A. ARNOLD (Bar No. 235898)
3    TARANEH FARD (Bar No. 268117)
     1900 Avenue of the Stars, Seventh Floor
4    Los Angeles, California 90067-4308
     Telephone:   (310) 203-8080
5    Facsimile:   (310) 203-0567

6    Attorneys for Defendants
     LONG BEACH MEMORIAL MEDICAL CENTER and
7    MILLER CHILDREN'S HOSPITAL LONG BEACH

8

9
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
                             COUNTY OF LOS ANGELES
11

12

13   ELIZABETH CASTILLO and CHRIS          CASE NO. BC576936
     MARKER on behalf of themselves and
14   all others similarly situated and the   NOTICE TO ADVERSE PARTY OF
     general public,                         REMOVAL OF CIVIL ACTION TO
15                                           FEDERAL COURT BY DEFENDANTS
                    Plaintiffs,              LONG BEACH MEMORIAL MEDICAL
16                                           CENTER AND MILLER CHILDREN'S
             v.                              HOSPITAL LONG BEACH
17
     LONG BEACH MEMORIAL
18   MEDICAL CENTER, a California
     corporation; MILLER CHILDREN'S
19   HOSPITAL LONG BEACH, a
     California corporation; MEMORIAL
20   CARE HEALTH SYSTEM, a business
     entity unknown and DOES 1 to 100,
21   inclusive,

22                  Defendants.

23

24

25

26

27

28

NOTICE TO ADVERSE PARTY OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
BY DEFENDANTS LONG BEACH MEMORIAL MEDICAL CENTER AND MILLER
CHILDREN'S HOSPITAL LONG BEACH

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

1    TO PLAINTIFFS ELIZABETH CASTILLO AND CHRIS MARKER AND THEIR

2    ATTORNEYS OF RECORD, THE LAW OFFICE OF JOSEPH ANTONELLI:

3            PLEASE TAKE NOTICE THAT a Notice of Removal of this action was

4    filed in the United States District Court for the Central District of California on June

5    4, 2015.  A copy of the Notice of Removal is attached to this Notice as Exhibit 1, and

6    is served and filed herewith.  Copies of the Civil Case Coversheet, Notice of Related

7    Cases, Notice of Interested Parties and Corporate Disclosure Statement filed with the

8    Notice of Removal, are attached hereto as Exhibits 2, 3, and 4 and 5 respectively.

9

10   DATED:  June 5, 2015                    JEFFER, MANGELS, BUTLER &
                                             MITCHELL LLP
11                                           MARTA FERNANDEZ
                                             TRAVIS GEMOETS
12                                           BARBRA A. ARNOLD
                                             TARANEH FARD
13

14

15                                           By:
                                                TRAVIS GEMOETS
16                                           Attorneys for Defendants LONG BEACH
                                             MEMORIAL MEDICAL CENTER and
17                                           MILLER CHILDREN'S HOSPITAL LONG
                                             BEACH

18

19

20

21

22

23

24

25

26

27

28

NOTICE TO ADVERSE PARTY OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
BY DEFENDANTS LONG BEACH MEMORIAL MEDICAL CENTER AND MILLER
CHILDREN'S HOSPITAL LONG BEACH

PRINTED ON
RECYCLED PAPER
LA 11994587v1