1

2

3                                                              O

4

5

6                                              JS - 6

7

8                UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   ELIZABETH CASTILLO and CHRIS  )  Case No. CV 15-04223 DDP (AGRx)
     MARKER, on behalf of          )
12   themselves and all others     )
     similarly situated and the    )
13   general public,               )
                                    )
14              Plaintiff,          )  **ORDER GRANTING MOTION TO REMAND**
                                    )
15        v.                        )
                                    )
16   LONG BEACH MEMORIAL MEDICAL    )
     CENTER, a California           )
17   corporation; MILLER            )
     CHILDREN'S HOSPITAL LONG       )
18   BEACH, a California            )
     corporation; MEMORIAL CARE     )  [Dkt. Nos. 16, 18]
19   HEALTH SYSTEM, a business      )
     entity unknown,                )
20                                  )
                Defendants.         )
21   _____)

22        Presently before the court is Plaintiffs' Motion to Remand.

23   Having considered the submissions of the parties and heard oral

24   argument, the court grants the motion and adopts the following

25   Order.

26   **I.   Background**

27        Defendants Long Beach Memorial Medical Center ("Long Beach

28   Memorial") and Miller Children's Hospital Long Beach ("Miller

1   Children's Hospital")(collectively "Defendant Hospitals"), jointly

2   employ Plaintiffs, Elizabeth Castillo ("Castillo") and Chris Marker

3   ("Marker").  (Compl. ¶ 8.)  Castillo and Marker are both members of

4   the California Nurses Association ("CNA").  (Notice of Removal ¶

5   4.)  Long Beach Memorial, Miller Children's Hospital, and the CNA

6   are parties to a collective bargaining agreement ("CBA").[1]  (Notice

7   of Removal, Ex. B.)

8        Article 25 of the CBA provides for alternative ten and twelve

9   hour workweek schedules for hourly employees.  (Notice of Removal,

10  Ex. B.)  For Registered Nurses on a ten hour schedule:

        [w]ork in excess of the (10) hours in a work day shall
        be paid at the rate of time and one-half the RN's
        regular rate up to twelve (12) hours, and double time
        after twelve (12) hours.  Time and one half their
        regular rate of pay will paid for all hours worked in
        excess of forty (40) hours in one week.

14  (Notice of Removal Ex. B, at 23.)  Twelve hour shift RNs "will be

15  paid the twelve (12) hour rate for all hours worked.  P(aid) T(ime)

16  O(ff), paid educational days, jury duty bereavement, and any

17  additional shifts scheduled for eight (8) hours or less will be

18  paid at the respective benefit rate."  (Id.)"  RNs working an

19  "[alternative workweek schedule] will receive an increase in their

20  12-hour base rate of pay."  (Id. at 25.)  "[T]o determine the new

21  12-hour shift straight time rate, the current 12-hour rates for

22

23

_____

24       [1] Plaintiffs' purported representation of a putative classes
25  comprised of "all California hourly non-exempt employees" also
    implicates a collective bargaining agreement between Defendant
26  Hospitals and the United Steel, Paper and Forestry, Rubber,
    Manufacturing Energy Union.  (Compl. ¶ 16; Notice of Removal, Ex.
27  C.)  Because a determination whether the CNA CBA requires
    interpretation is sufficient to determine the outcome of
28  Plaintiffs' Motion to Remand, the Court need not make a
    determination on the United Steel CBA.

each step level, as set forth on the wage grid appended to the [CBA], will be divided by .857." (Id.)

Article 25 also includes rest and lunch period provisions, including a provision that "[t]he Employer will provide meal periods in accordance with State law." (Notice of Removal Ex. B, at 23-24.) Article 25 further provides that:

> Authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4)hours . . . . However, a rest period need not be authorized for RNs whose total daily work time is less than three and one-half (3 1/2) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.

(Id. at 23.) "In the event an RN does not receive a break or meal period as described above, the RN will be paid for such missed break or meal period pursuant to any applicable [Industrial Welfare Commission] Regulation in effect at the time." Id. at 24.

Article 28 of the CBA covers pay for educational programs. (Notice of Removal Ex. B, at 32-33.) Section A explains how education leave accrues, and sections B and D explain the payment system for required certifications and mandatory classes/ meetings. Id. Section E provides that "[i]f an RN attends or participates in a particular educational or training program, in-service, class or other meeting to establish or maintain their RN II, RN III, or RNIV job status, no pay will be accorded." Id. at 33. The CNA and Defendant Hospitals have previously argued multiple grievances over these educational program provisions. (Opp. at 5.)

Castillo and Marker allege several violations of wage and hours laws. For example, Plaintiffs allege hourly employees at Defendant Hospitals worked twelve hour shifts without overtime compensation for hours worked in excess of eight hours per day.

(Compl. ¶ 24.)  Defendant Hospitals compensated employees working an eight hour shift at a certain base pay rate, but if that same employee worked a twelve hour shift, then the employee received pay at a reduced base rate.  (Compl. ¶ 30.)  Plaintiffs also allege that hourly employees lost wages because of Defendant Hospitals' rounding policy.  (Compl. ¶ 38.)  Defendant Hospitals failed to provide employees with itemized wage statements specifying applicable hourly rates and the corresponding number of hours worked.  (Compl. ¶ 44.)  The Complaint also alleges meal and rest break violations, and that the Defendant Hospitals failed to pay for mandatory education and training programs, required reporting period of fifteen minutes prior to on-call shifts, and pre and post-shift work performed by hourly employees.  (Compl. ¶¶ 37, 42, 45.)

Castillo and Marker filed suit in California state court as private attorneys general on behalf of the general public, and also seek to represent six classes composed of: 1) all non-exempt hourly employees or 12-hour shift non-exempt employees who worked at least one day of more than eight hours in a day or more than forty hours in a week; 2) all non-exempt hourly employees who were not provided legally-compliant meal periods or who were paid for a missed meal period at a reduced rate; 3) all non-exempt hourly employees who were provided a paystub from Defendants; 4) all non-exempt hourly employees who were subject to Defendants' rounding policy and pay practice; 5) all non-exempt hourly employees who were no provided ten minute rest periods for each four hours of work; and 6) all hourly employees who suffered and/or permitted to work without compensation paid at minimum wage. (Compl. ¶¶  12-21.)  Plaintiffs'

Complaint alleges seven state law causes of action: 1) violation of California Business & Professions Code § 17200 for failure to pay proper wages and overtime compensation, violation of meal period provisions, failure to pay all wages due to illegal rounding, failure to permit and authorize rest period breaks, failure to provide accurate wage statements, and off the clock; 2) violation of California Labor Code §§ 218, 510, 511, 1194, and 1198 for recovery of unpaid wages and penalties; 3) violation of California Labor Code § 226 for failure to provide meal breaks; 4) violation of California Labor Code § 226 for failure to provide accurate itemized wage statements; 5) violation of California Labor Code § 226.7 for failure to permit and authorize rest period breaks; 6) violation of California Labor Code § 510(a) et seq. for failure to pay all wages due to illegal rounding; and 7) violation of California Labor Code 510(a) et seq. for failure to pay off-the-clock wages.

Long Beach Memorial and Miller Children's Hospital removed to this court, arguing that Section 301 of the Labor-Management Relations Act of 1947 ("LMRA") preempts Plaintiffs' state law claims. Castillo and Marker now move to remand to state court.

**II.  Discussion**

Under 28 U.S.C. § 1441, a district court has removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." District courts have original jurisdiction over "actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal

5

question is presented on the face of the plaintiff's properly

pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386,

392 (1987).  A plaintiff may rely exclusively on state law to avoid

federal jurisdiction, and a defendant may not base removal to

district court on a federal defense. Id. at 392-93.  Courts in

this circuit construe the removal statute strictly against removal

jurisdiction. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir.

1992).  Because of this "strong presumption" against removal, the

defendant bears the burden of establishing removal jurisdiction.

Id.

The "complete preemption corollary" to the well-pleaded

complaint rule establishes that a statute's preemptive force may be

so extraordinary that it completely preempts an ordinary state

common-law complaint, converting any claim based on that preempted

state law into a federal claim arising under federal law.

Caterpillar, 980 F.2d at 393.  The complete preemption doctrine is

construed narrowly, and applies only to federal statutes of

"extraordinary" preemptive effect. Holman v. Laulo-Rowe Agency,

994 F.2d 666, 668 (9th Cir. 1993).

The complete preemption doctrine is sometimes implicated in

"cases raising claims preempted by § 301 of the LMRA." Id.

Section 301 provides:

> [s]uits for violation of contracts between an employer
> and a labor organization representing employees in an
> industry affecting commerce as defined in this chapter,
> or between any such labor organization, may be brought
> in any district court of the United States having
> jurisdiction of the parties[.]

29 U.S.C. § 185(a).  Despite the limiting reference in § 301 to

"[s]uits for violation of contracts," courts construe the complete

preemption doctrine to also cover state law actions requiring

1  interpretation of a labor agreement.  Balcorta v. Twentieth
2  Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000).  The
3  Supreme Court, however, "has distinguished between claims that
4  require interpretation or construction of a labor agreement and
5  those that require a court simply to 'look at' the agreement."  Id.
6  Mere references to a CBA in a defense to a state law claim do not
7  result in preemption of state law claims.  Vasserman v. Henry Mayo
8  Newhall Memorial Hosp., 65 F. Supp. 3d 932, 952 (C.D. Cal. 2014).
9  Rather, a state law claim will only be preempted if it is so
10 "inextricably intertwined" with a CBA that resolution of the claim
11 will require judicial interpretation of the CBA's terms.  Id.

12     This court must conduct a two-step analysis to determine
13 whether a state claim is preempted.  Burnside v. Kiewit Pac. Corp.
14 491 F.3d 1053, 1059 (9th Cir. 2007).  First, the court must
15 determine if the particular rights at issue inhere in state law or
16 are grounded in a CBA.  Id. at 1060.  If the right exists solely
17 because of a CBA, then the claim is preempted.  Id. at 1059.  If
18 the right derives from state law, the court must then determine
19 whether the right is "substantially dependent on analysis" of a
20 CBA.  Id.  If the court can merely "look to" the CBA, the claim is
21 not "substantially dependent" on a CBA, and the claim is not
22 preempted.  Id. at 1060.  If the court must "interpret" the CBA,
23 the claim is "substantially dependent" on the CBA, and is
24 preempted.  Id.

25     Plaintiffs assert, and the court agrees, that all claims in
26 the Complaint derive from violations of California state law, not
27
28

7

1  violations of the CBA.  (Mot. to Remand at 4.)[2]  Indeed,

2  Plaintiffs' First Amended Complaint ("FAC") makes no mention of the

3  CBA.  This conclusion does not, however, end the court's inquiry.

4  The court must proceed to determine whether Plaintiffs' claims are

5  preempted because they "substantially depend[] on" interpretation

6  of the CBA.  Burnside, 491 F.3d at 1070.

7      "[T]he 'look to'/'interpret' distinction 'is not always clear

8  or amenable to a bright line test."  Burnside at 1060.  A defendant

9  asserting § 301 preemption cannot simply allege hypothetical or

10 "creative" connections to a plaintiff's claim.  Vasserman, 65

11 F.Supp.3d at 952.  Rather, the plaintiff's claim itself is the

12 "touchstone" for the preemption analysis.  Cramer v. Consol.

13 Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001) (en banc).

14 Questions of state law based upon terms of a CBA that are not

15 actually in dispute do not provide a basis for preemption of a

16 state-law claim.  Livadas v. Bradshaw, 512 U.S. 107, 124-25 (1994).

17 Similarly, where analysis of a state law claim and a CBA implicate

18 the same factual questions, but do not turn on the meaning of any

19 provision of the CBA, then this purely factual inquiry does not

20 trigger § 301 preemption.  Lingle v. Norge Div. Of Magic Chef, 486

21 U.S. 399, 402-07 (1988).

22     In Burnside, the Ninth Circuit addressed a state-law action

23 for failure to compensate employees for travel time.  Burnside, 491

24 F.3d at 1055.  California Industrial Welfare Commission ("IWC")

25 Wage Order 16-2001 required employers to compensate employees for

26 _____

27     [2]Defendants' only argument challenging this proposition
   appears to be that federal law requires that pay structure
28 negotiation be completed collectively through a CBA.  (Opp. at 14.)

8

1  all employer-mandated travel unless a collective bargaining
2  agreement expressly provided otherwise.  Id. at 1062.  The court
3  concluded that only a cursory examination of the CBA was needed to
4  determine that the express waiver required by Wage Order 16-2001
5  was not included, and that such a cursory examination did not
6  trigger § 301 preemption.  Id. at 1071.  Even a collective
7  bargaining agreement involving "fairly complicated procedures and .
8  . . a hefty dose of industry jargon," however, does not necessarily
9  implicate § 301 preemption where the meaning of the provisions is
10 not ambiguous.  Balcorta v. Twentieth Century-Fox Film Corp., 208
11 F.3d 1102, 1109-10 (9th Cir. 2000).
12     IWC Wage Order 5-2001, applicable to RNs and this case,
13 requires that employers pay employees one and one-half times their
14 regular rate of pay for all hours worked in excess of eight (8)
15 hours in a workday or more than 40 hours in a workweek.  Cal. Code
16 Regs. tit. 8, § 11050.  Wage Order 5-2001 provides an employer
17 exemption to "any employee covered by a valid [CBA] if the
18 agreement expressly provides for the wages, hours of work, and
19 working conditions of the employees, and if the agreement provides
20 premium wage rates for all overtime hours worked."[3]  Id.  Although
21 it appears that Defendants intend to pursue an overtime exemption
22 defense, it is unclear to the court why resolution of any of
23 Plaintiffs' claims requires interpretation, as opposed to mere
24 application of, the terms of the CBA.  Defendants' Notice of
25 Removal, which spans approximately five pages, repeatedly asserts
26 _____
27     [3] Plaintiffs acknowledge that because "Wage Order 5-2001[]
   provides the same provisions as California Labor Code § 514, the
   same analysis applies to any claim of exemption under [both]."
28 (Mot. to Remand at 12.)

1   that Plaintiffs' claims "are governed by" the CBA.  The Notice of
2   Removal makes similar unsupported assertions that "it is clear that
3   the lawsuit concerns the alleged violations of the CBA."  Whether
4   Plaintiffs' claims are governed by or involve application of the
5   CBA, however, are different questions than whether Plaintiffs'
6   claims arise from the CBA, of which Plaintiffs' FAC makes no
7   mention, or state law.  See Allis-Chalmers Corp. v. Lueck, 471 U.S.
8   202, 211 (1985) ("[N]ot every dispute concerning employment, or
9   tangentially involving a provision of a collective-bargaining
10  agreement, is preempted by § 301 . . . . Such a rule of law would
11  delegate to unions and unionized employers the power to exempt
12  themselves from whatever state labor standards they disfavored.").
13  Defendants' conclusory Notice of Removal does not establish that §
14  301 preemption applies.

15      Nor does Defendants' Opposition further illuminate the
16  supposedly clear connections between the CBA and Plaintiffs' wage
17  and hour claims.  Defendants focus on Plaintiffs' claim for unpaid
18  time spent in mandatory training and education programs and for
19  unpaid overtime.  (Opp. at 11-12.)  Defendants emphasize that the
20  CNA has filed multiple grievances related to the CBA's education
21  compensation provisions.  (Opp. at 11.)  The import of this
22  assertion is unclear to the court.  The fact that "CNA and
23  Defendants are engaged in ongoing discussion about these and other
24  CBA interpretation disputes" seems to have little bearing on the
25  state law question whether hours spent on mandatory training
26  qualify as compensable hours worked under state wage and hour laws.
27      The court is not persuaded by Defendants' characterization of
28  Plaintiffs' overtime claim.  While again asserting that Plaintiffs'

1   overtime claim requires interpretation of the CBA, Defendants'
2   Opposition makes no specific reference to the FAC.   Nevertheless,
3   Defendants contend that this case is akin to <u>Firestone v. Southern</u>
4   <u>California Gas Co.</u>, 219 F.3d 1063 (9th Cir. 2000).   In <u>Firestone</u>,
5   the plaintiffs' union and the defendant employer reached a
6   compensation agreement that paid a flat sum calculated by
7   multiplying workers' hourly base rate by the expected time to
8   complete a gas meter reading route.   <u>Id.</u> at 1065.   Employees who
9   worked more than eight hours in one day received an adjustment to
10  the flat sum normally paid.   <u>Id.</u>   The parties disputed, however,
11  what adjustment method was actually used.   <u>Id.</u>   The court concluded
12  that the parties' resulting dispute over what constituted a
13  "regular rate" of pay constituted "disagree[ment] on the meaning of
14  terms in the collective bargaining agreement for purposes of
15  California law."   <u>Id.</u>   The court agreed with the district court
16  "that one could not determine whether plaintiffs were receiving a
17  'premium wage rate' for overtime under the collective bargaining
18  agreement . . . without interpreting that agreement to determine .
19  . . what the regular rate was."   <u>Id.</u>   The claim was not, therefore,
20  independent of the collective bargaining agreement, and was
21  preempted.   <u>Id.</u>

22      Here, unlike in <u>Firestone</u>, "the parties' dispute is not over
23  how premium wage rates are calculated under the CBA, but whether
24  [Plaintiffs are] paid premium pay for all the time for which [they]
25  are entitled to premium pay under California law.   This dispute
26  does not require interpretation of the CBA." <u>Gregory v. SCIE</u>, 317
27  F.3d 1050, 1054 n.3 (9th Cir. 2003).   The dispute here is not
28  whether Plaintiffs' or Defendants' preferred method of base pay

1  calculation is proper, but rather whether the overtime rates

2  described in the CBA satisfy state law.  Defendants have not

3  demonstrated that the answer to that question would require

4  interpretation, as opposed to application, of the CBA.  <u>See</u>

5  <u>Vasserman</u>, 65 F.Supp.3d at 957; <u>See also</u> <u>Burnside</u>, 491 F.3d at

6  1073-1074.  Accordingly, § 301 preemption does not apply.

7  **IV.   Conclusion**

8        For the reasons stated above, Plaintiffs' Motion to Remand is

9  GRANTED.  Defendants' Motion to Strike (Dkt. 18) is VACATED.

10

11

12  IT IS SO ORDERED.

13

14

15  Dated: September 21, 2015

16                                  DEAN D. PREGERSON
                                    United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28